FILED
2011 JAN 26  A 11: 10
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  SEAN REIS (sreis@edelson.com) - SBN 184044
   EDELSON MCGUIRE, LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
3  Telephone: (949) 459-2124
   Fax: (949) 459-2123
4
5  JAY EDELSON* (jedelson@edelson.com)
   RAFEY S. BALABANIAN* (rbalabanian@edelson.com)
6  WILLIAM C. GRAY* (wgray@edelson.com)
   BENJAMIN H. RICHMAN* (brichman@edelson.com)
7  EDELSON MCGUIRE, LLC
   350 North LaSalle Street, Suite 1300
8  Chicago, Illinois 60654
   Telephone: (312) 589-6370
9  Fax: (312) 589-6378
   *Pro hac vice admission to be sought
10

E-filing

11  ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15  JEFF MILANS, individually and on behalf
    of all others similarly situated,              Case No.    CV 11    0379
16                                                                              HRL
                       Plaintiff,               CLASS ACTION
17
    v.                                          COMPLAINT FOR:
18
19  NETFLIX, INC., a Delaware corporation,      (1) Violations of the Video Privacy
                                                    Protection Act, 18 U.S.C. § 2710;
20                     Defendant.               (2) Violations of California's Customer
                                                    Records Act, Cal. Civ. Code § 1798.80;
21                                              (3) Violations of California's Unfair
                                                    Competition Law, Cal. Bus. & Prof.
22                                                  Code § 17200;
                                                (4) Unjust Enrichment; and
23                                              (5) Breach of Fiduciary Duty.
24
                                                DEMAND FOR JURY TRIAL
25

26

27

28

COMPLAINT

FAXED
FIRST LEGAL SUPPORT SERVICES

1        Plaintiff Jeff Milans, by and through his attorneys, upon personal knowledge as to

2   himself and his own acts, and upon information and belief as to all other matters, complains and

3   alleges as follows:

## NATURE OF THE ACTION

4

5       1.     Plaintiff Jeff Milans brings this Class Action Complaint against Defendant

6   Netflix, Inc. ("Netflix") for Defendant's unlawful retention of his personally identifiable

7   information ("PII") and video programming viewing history after cancellation of his membership

8   services with Netflix.

9       2.     Netflix owns and operates the website www.Netflix.com, which provides

10  streaming video via the Internet and online video rental services to over 10 million subscribers.

11      3.     Netflix maintains a digital record system that details every streaming video or

12  video rental that its subscribers have ordered during the course of their membership.  In addition,

13  Netflix stores and analyzes the movie preferences of its subscribers based upon a user-inputted

14  ranking system.

15      4.     Netflix maintains records containing its users' billing and contact information on

16  its server computers.

17      5.     Netflix retains, stores, and utilizes the information described in Paragraphs three

18  (3) and four (4) *supra*, for a period of at least two (2) years after a subscriber cancels his or her

19  account with Netflix.

20      6.     As a result, Netflix maintains a veritable digital dossier on thousands, if not

21  millions, of former subscribers.  These records contain not only the former subscriber's credit

22  card number, username and password, as well as billing/contact information, but also a highly

23  detailed account of the individual's video programming viewing history.

24      7.     Accordingly, Netflix has knowingly retained the PII and sensitive video

25  programming viewing histories of former subscribers in violation of state and federal laws.

26

27

28

COMPLAINT

**PARTIES**

8.      Plaintiff Jeff Milans is a natural person and citizen of the state Virginia.

9.      Defendant Netflix, Inc., is a corporation organized and existing under the laws of the state of Delaware with its headquarters and principal place of business located at 100 Winchester, Los Gatos, California 95032.  Netflix does business throughout the State of California, the United States, and Canada.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over Plaintiff's claims arising under the laws of the United States pursuant to 28 U.S.C. § 1331, and, as to all other claims, pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Netflix because it maintains its corporate headquarters in this District and the improper conduct alleged in the Complaint occurred in, was directed and/or emanated from California.

12.     This Court is an appropriate venue for the adjudication of this controversy because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**INTRADISTRICT ASSIGNMENT**

13.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division.

**FACTUAL BACKGROUND**

**A Brief Overview of Netflix**

14.     On its website, Netflix boasts that, "[w]ith more than 16 million members in the United States and Canada, Netflix, Inc. is the world's leading Internet subscription service for enjoying movies and TV shows."  Netflix Press Info., http://www.netflix.com/MediaCenter (last visited January 5, 2011).

15.     Netflix has developed an extensive and complex online system to provide cataloged video programming to its subscribers.  Using this system, subscribers are offered the

COMPLAINT

1   opportunity to rank in order of preference a wide variety of viewing selections.  Netflix uses

2   these user-inputted rankings to recommend video programming to the subscriber based upon his

3   or her preferences.

4        16.     Subscribers of Netflix's services may also rent DVD's from Defendant's website,

5   which are then physically shipped to the individual.

6        17.     Netflix subscribers are able to cancel their subscription to Netflix's services at any

7   time through its website.

8                    **The Information that Netflix Stores About its Subscribers**

9        18.     According to its website, Netflix collects, stores, and analyzes data from its

10  subscribers in the following manner:

> We keep track of your interactions with us and
> collect information related to your use of our
> service, including but not limited to your online
> activity, title selections and ratings, payment history
> and correspondence as well as Internet protocol
> addresses, device types, operating systems, any
> instant watching of movies, TV shows and related
> activity. We use this information for such purposes
> as providing recommendations on movies and TV
> shows we think will be enjoyable, personalizing the
> service to better reflect particular interests, tracking
> your instant-watching hours, helping us quickly and
> efficiently respond to inquiries and requests and
> otherwise enhancing or administering our service
> offering for our customers.

21  Netflix Privacy Policy, http://www.netflix.com/PrivacyPolicy (last visited January 5, 2011).

22       19.     In addition to their programming preferences, Defendant allows subscribers to

23  keep track of movies and television shows they would like to watch in the future, in what is

24  known as a "queue."

25       20.     A queue is essentially a list of video programming, selected and organized by the

26  subscriber for later viewing.

27

28

COMPLAINT

1   21. Defendant continues to store its former subscribers' queues, along with their

2 contact, billing and viewing preference information, even after subscribers cancel their

3 memberships.

4   22. The video programming that Netflix stores includes, but is not necessarily limited

5 to, every streaming video that the consumer has watched, every DVD the consumer has ever

6 rented, and the video rankings that the consumer has assigned to other videos, which in turn

7 reveals that individual's preferences.

8   23. Former subscribers who log-in to their cancelled Netflix account are greeted with

9 previously inputted credit card numbers and contact information, as well as a detailed history of

10 what video programming they ordered from Defendant throughout the duration of their

11 subscription.  Defendant retains video programming history beyond the time that the customer

12 has terminated their service with Netflix.

13   24. Indeed, Defendant's privacy policy goes on to state that Netflix uses that

14 information to "provide analysis of our users in the aggregate to prospective partners, advertisers

15 and other third parties." *See supra,* Netflix Privacy Policy.  Armed with the knowledge that

16 Netflix indefinitely retains its subscribers' data, it becomes clear that inherent in this statement is

17 the fact that Defendant continues to profit from the use of its former subscribers' personal

18 information, including their video programming viewing histories, even though these individuals

19 have cancelled their subscriptions.

20      **The Video Privacy Protection Act and Digital Dossiers**

21   25. The desire to keep video programming viewing history records private led

22 Congress to enact the Video Privacy Protection Act in 1988 (the "Act" or "VPPA").  Inspired by

23 the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his

24 family, Congress promulgated the Act to explicitly preserve United States citizens' right to

25 privacy in their video viewing histories.

26   26. When the VPPA was introduced, the late Senator Paul Simon noted that,

27

28

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11

> There is no denying that the computer age has
> revolutionized our world.  Over the past 20 years
> we have seen remarkable changes in the way each
> one of us goes about our lives.  Our children learn
> through computers.  We bank by machine.  We
> watch movies in our living rooms.  These
> technological innovations are exciting and as a
> nation we should be proud of the accomplishments
> we have made. Yet, as we continue to move ahead,
> we must protect time honored values that are so
> central to this society, particularly our right to
> privacy.  The advent of the computer means not
> only that we can be more efficient than ever before,
> but that we have the ability to be more intrusive
> than ever before. *Every day Americans are forced
> to provide to businesses and others personal
> information without having any control over where
> that information goes. These records are a window
> into our loves, likes, and dislikes.*

12   S.Rep. No. 100-599 at 7-8 (1988) (emphasis added).

13        27.    In another strikingly accurate forward-looking statement, Senator Patrick Leahy

14   remarked that "the trail of information generated by every transaction that is now recorded and

15   stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of

16   surveillance." S.Rep. No. 100-599 at 8 (1988).

17        28.    Although in 1988 these Senators could not possibly forecast the amount of data

18   collected on consumers today by large video-programming providers such as Netflix, both Sen.

19   Simon's and Sen. Leahy's comments would prove prescient.

20        29.    Many glaring and dangerous privacy issues are implicated by Netflix's practice of

21   retaining customer information indefinitely after cancellation of Defendant's services—the exact

22   type of dangers that the VPPA was enacted to thwart.

23        30.    As a practical matter, a former subscriber who cancels his or her Netflix account

24   logically believes that the Defendant has purged its system of that individual's private

25   information. Most, if not all consumers, would feel extremely uncomfortable with the prospect

26
27
28

COMPLAINT

6

1    that Defendant continues to store their credit card numbers and a detailed record of their video

2    programming viewing histories.

3         31.    Furthermore, Netflix's practices are indicative of a larger problem that is

4    beginning to plague Internet users—the development and maintenance of digital dossiers on

5    consumers by online companies.

6         32.    Prof. Daniel Solove, an expert in privacy law at the George Washington

7    University Law School has written extensively on this topic, and explains the crux of the

8    problem as follows:

9                        While life in the Information Age has brought us a
                         dizzying amount of information, it has also placed a
10                       profound amount of information about our lives in
                         the hands of numerous entities. These digital
11                       dossiers   are   increasingly   becoming   digital
                         biographies,  a  horde  of  aggregated  bits  of
12                       information combined to reveal a portrait of who we
                         are based upon what we buy, the organizations we
13                       belong to, how we navigate the Internet, and which
14                       shows and videos we watch. This information is not
                         held by trusted friends or family members, but by
15                       large bureaucracies that we do not know very well
                         or sometimes do not even know at all.
16

17   Daniel J. Solove, Digital Dossiers and the Dissipation of Fourth Amendment Privacy, 75 S. Cal.

18   L. Rev. 1083, 1095 (2002).

19        33.    The retention of subscriber data is not the first privacy concern that has raised

20   eyebrows about Netflix's business practices.  In March of 2010, Associate Director Maneesha

21   Mithal of the Division of Privacy and Identity Protection at the Federal Trade Commission

22   issued a public letter to Netflix cautioning Defendant about the release of data regarding the

23   video programming viewing history of its subscribers.  FTC Netflix Letter,

24   http://www.ftc.gov/os/closings/100312netflixletter.pdf (last visited January 5, 2011).

25        34.    It follows then from the discussion above, as well as the unlawful behavior

26   described in this Complaint, that Netflix has continuously struggled to fully grasp its duty both to

27

28

COMPLAINT

7

1  uphold the privacy rights of its current and former subscribers, as well as to comply with federal

2  and state laws regarding the destruction of PII.

### FACTS RELATING TO PLAINTIFF

35.     Plaintiff Jeff Milans is a former Netflix subscriber who cancelled his account with

Defendant over one (1) year ago.

### CLASS ALLEGATIONS

36.     **Definition of the Class:**  Plaintiff Jeff Milans brings this action pursuant to Fed.

R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals,

defined as follows:

> All individuals and entities in the United States and its territories that have
> cancelled their subscriptions to Netflix's services.

Excluded from the Class are 1) Defendant, Defendant's agents, subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or their parents have a

controlling interest and their current and former employees, officers, and directors, 2) the

Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate

Judge's immediate family, 3) persons who execute and file a timely request for exclusion,

and 4) the legal representatives, successors, or assigns of any such excluded person.

37.     **Numerosity:**  The exact number of the members of the Class is unknown and is

not available to Plaintiff at this time, but individual joinder in this case is impracticable.  The

Class consists of millions of individuals and other entities. Class members can be easily

identified through Defendant's records and public records.

38.     **Commonality:**  There are many questions of law and fact common to the claims

of Plaintiff and the other members of the Class, and those questions predominate over any

questions that may affect individual members of the Class.  Common questions for the Class

include but are not limited to the following:

COMPLAINT

8

1       (a)     whether Netflix unlawfully retained its former subscribers' PII and video

2    programming viewing histories;

3       (b)     whether Netflix continues to benefit from the use of data relating to its

4    former subscribers' video programming viewing histories;

5       (c)     whether Netflix's conduct described herein violated the Video Privacy

6    Protection Act (18 U.S.C. §§ 2710, *et seq.*);

7       (d)     whether Netflix's conduct described herein violated the California

8    Customer Records Act, (Cal. Civ. Code § 1798.80);

9       (e)     whether Netflix's conduct described herein violated California's Unfair

10   Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

11      (f)     whether Netflix has been unjustly enriched by Plaintiff and the Class;

12      (g)     whether Netflix has breached its fiduciary duty to Plaintiff and the Class.

13    39.    **Typicality:** The factual and legal bases of Netflix's liability to Plaintiff and to the

14 other members of the Class are the same and resulted in injury to Plaintiff and all of the other

15 members of the Class. Plaintiff and the other members of the Class have all suffered harm as a

16 result of Netflix's wrongful conduct.

17    40.    **Adequate Representation:** Plaintiff will fairly and adequately represent and

18 protect the interests of the Class members, and has retained counsel competent and experienced

19 in complex class actions.  Plaintiff has no interest antagonistic to those of the Class and

20 Defendant has no defenses unique to Plaintiff.

21    41.    **Predominance and Superiority:** This class action is appropriate for certification

22 because class proceedings are superior to all other available methods for the fair and efficient

23 adjudication of this controversy, since joinder of all members is impracticable.  The damages

24 suffered by the individual members of the Class will likely be relatively small, especially given

25 the burden and expense of individual prosecution of the complex litigation necessitated by the

26 actions of Defendant.  It would be virtually impossible for the individual members of the Class to

27

28

COMPLAINT

1    obtain effective relief from the misconduct of Defendant.  Even if members of the Class

2    themselves could sustain such individual litigation, it would still not be preferable to a class

3    action, because individual litigation would increase the delay and expense to all parties due to the

4    complex legal and factual controversies presented in this Complaint.  By contrast, a class action

5    presents far fewer management difficulties and provides the benefits of single adjudication,

6    economy of scale, and comprehensive supervision by a single court.  Economies of time, effort,

7    and expense will be fostered and uniformity of decisions will be ensured.

8         42.    **Policies Generally Applicable to the Class:**  This class action is also appropriate

9    for certification because Defendant has acted or refused to act on grounds generally applicable to

10   the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief

11   with respect to the Class as a whole.  Defendant's policies challenged herein apply to and affect

12   all members of the Class uniformly, and Plaintiff's challenge of these policies hinges on

13   Defendant's conduct, not on facts or law applicable only to Plaintiff.

14   **FIRST CAUSE OF ACTION**

15   **Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710**
**(On Behalf of Plaintiff and the Class)**

16        43.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

17        44.    Netflix qualifies now and has qualified in the past as a "video tape service

18   provider" under the Video Privacy Protection Act ("VPPA"), because Defendant is "engaged in

19   the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of

20   prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

21        45.    The VPPA mandates, among other things, that a service provider "shall destroy

22   personally identifiable information as soon as practicable, but no later than one year from the

23   date the information is no longer necessary for the purpose for which it was collected."  18

24   U.S.C. § 2710(e).

25

26

27

28

46.     Netflix has violated 18 U.S.C. § 2710(e) because Defendant failed to destroy former subscribers' personally identifiable information as soon as practicable from the date the information was no longer necessary for the purpose for which it was collected.

47.     As a result of Defendant's conduct described herein and its violation of § 2710, Plaintiff and the Class have suffered injuries.  Plaintiff, on his own behalf and on behalf of the Class, seeks an order enjoining Defendant's conduct described herein and awarding himself and the Class the maximum statutory and punitive damages available under 18 U.S.C. § 2710(c).

**SECOND CAUSE OF ACTION**
**Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80**
**(On Behalf of Plaintiff and the Class)**

48.     Plaintiff incorporates paragraphs 1 through 42 above as though fully set forth herein.

49.     The California Customer Records Act mandates, among other things, that a business take all reasonable steps to destroy or arrange for the destruction of a customer's records within its custody or control which contain personal information which is no longer to be retained by the business. Cal. Civ. Code § 1798.81.

50.     A business may destroy customer records by erasing the information, or modifying the personal information in those records to make it unreadable or undecipherable through any means. Cal. Civ. Code § 1798.81(b), (c).

51.     Defendant has violated Cal. Civ. Code § 1798.81 by failing to erase or otherwise destroy its former subscribers customer records after cancellation of membership services.

52.     Pursuant to Cal. Civ. Code § 1798.84, Plaintiff and the Class seek damages, including statutory damages of $3,000 per violation and injunctive relief.  Plaintiff and the Class also seek attorney's fees pursuant to Cal. Code Civ. Proc. § 1021.5, as well as such other and further relief as the Court deems just and proper.

COMPLAINT

11

### THIRD CAUSE OF ACTION
#### Violation of California's Unfair Competition Law
#### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
#### (On Behalf of Plaintiff and the Class)

53.    Plaintiff incorporates paragraphs 1 through 52 above as though fully set forth herein.

54.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

55.    The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

56.    Netflix has violated the fraudulent prong of the UCL in that Defendant failed to inform Plaintiff and the Class that it would indefinitely retain their personally identifiable information and video programming viewing histories.

57.    Netflix has violated the unfair prong of the UCL in that, Defendant continues to profit from selling Plaintiff and the Class's information to third-parties, even though they have cancelled their membership with Defendant.

58.    Netflix has violated the unlawful prong of the UCL in that Defendant's conduct violated the Video Privacy Protection Act, (18 U.S.C. §§ 2710, *et seq.*), and the California Customer Records Act, (Cal. Civ. Code § 1798.80).

59.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Netflix from continuing to engage in the unfair and unlawful conduct described herein.  Plaintiff seeks an order requiring Defendant to (1) immediately cease the unlawful practices stated in this Complaint, and (2) pay attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

60.     Plaintiff incorporates paragraphs 1 through 42 above as though fully set forth herein.

61.     Plaintiff and members of the Class conferred a monetary benefit on Defendant. Defendant received and retained money by continuing to sell data to third parties that was retained about Plaintiff and the Class as a result of the unlawful and/or wrongful conduct alleged herein.

62.     Defendant appreciates or has knowledge of such benefit.

63.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained by selling information about Plaintiff and members of the Class, which Defendant has unjustly received as a result of its unlawful actions.

64.     Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any amounts Netflix has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

65.     Plaintiff incorporates paragraphs 1 through 42 above as though fully set forth herein.

66.     Because Netflix was entrusted to store Plaintiff's and the Class's PII and video programming viewing histories ("the data"), Defendant owed a fiduciary duty to Plaintiff and the Class to (a) store the data in compliance with state and federal laws, and (b) only use the data for proper purposes.

67.     Defendant breached its fiduciary duty to Plaintiff and Class members by:

   a)     Failing to destroy Plaintiff's and the Class's confidential information within a timely manner upon cancellation of membership services; and

b)     Failing to store the data in compliance with the Video Privacy Protection Act (18 U.S.C. §§ 2710, *et seq.*), and California's Customer Records Act (Cal. Civ. Code § 1798.80).

68.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained by selling information about Plaintiff and members of the Class to third parties, which Defendant has received as a result of breaching its fiduciary duties.

69.     Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any amounts Netflix has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeff Milans, individually and on behalf of the Class, prays for the following relief:

A.     Certify this case as a class action on behalf of the Class defined above, appoint Jeff Milans as Class Representative, and appoint his counsel as Class Counsel;

B.     Declare that Netflix's actions, as described herein, violate the Video Privacy Protection Act, (18 U.S.C. §§ 2710, *et seq.*), the California Customer Records Act, (Cal. Civ. Code § 1798.80), and the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

C.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*: (i) an order prohibiting Netflix from engaging in the wrongful and unlawful acts described herein, and (ii) requiring Netflix to destroy its former subscribers' personally identifiable information and video program viewing histories—except as strictly necessary for contact information;

D.     Award damages, including statutory damages of $2,500 per violation under the Video Privacy Protection Act, 18 U.S.C. § 2710(c); $3,000 per violation under the California Consumer Records Act, Cal. Civ. Code § 1798.84(c); and, punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

COMPLAINT

14

1    E.    Award Plaintiff and the Class their reasonable litigation expenses and attorneys'

2    fees;

3    F.    Award Plaintiff and the Class pre- and post-judgment interest, to the extent

4    allowable; and

5    G.    Award such other and further relief as equity and justice may require.

6                              **JURY TRIAL**

7    Plaintiff demands a trial by jury for all issues so triable.

8                                    Respectfully submitted,

9    Dated: January 24, 2011

10

11   By:_____
         Sean Reis
12       One of Plaintiff's Attorneys

13   SEAN REIS (sreis@edelson.com) - SBN 184044
     30021 Tomas Street, Suite 300
14   Rancho Santa Margarita, California 92688
     Telephone: (949) 459-2124
15   Fax: (949) 459-2123

16
     JAY EDELSON* (jedelson@edelson.com)
17   RAFEY S. BALABANIAN* (rbalabanian@edelson.com)
     WILLIAM C. GRAY* (wgray@edelson.com)
18   BENJAMIN H. RICHMAN* (brichman@edelson.com)
     EDELSON MCGUIRE, LLC
19   350 North LaSalle Street, Suite 1300
     Chicago, Illinois 60654
20   Telephone: (312) 589-6370
     Fax: (312) 589-6378
21   *Pro hac vice admission to be sought

22
     ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS
23

24

25

26

27

28
     COMPLAINT
                                      15