SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Fax: (949) 459-2123

JAY EDELSON* (jedelson@edelson.com)
RAFEY S. BALABANIAN* (rbalabanian@edelson.com)
WILLIAM C. GRAY* (wgray@edelson.com)
BENJAMIN H. RICHMAN* (brichman@edelson.com)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378
*Pro hac vice admission to be sought

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF MILANS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV11 0379 HRL<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>(1) Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710;<br>(2) Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80;<br>(3) Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;<br>(4) Unjust Enrichment; and<br>(5) Breach of Fiduciary Duty.<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff Jeff Milans, by and through his attorneys, upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, complains and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Jeff Milans brings this Class Action Complaint against Defendant Netflix, Inc. ("Netflix") for Defendant's unlawful retention of his personally identifiable information ("PII") and video programming viewing history after cancellation of his membership services with Netflix.

2. Netflix owns and operates the website www.Netflix.com, which provides streaming video via the Internet and online video rental services to over 10 million subscribers.

3. Netflix maintains a digital record system that details every streaming video or video rental that its subscribers have ordered during the course of their membership. In addition, Netflix stores and analyzes the movie preferences of its subscribers based upon a user-inputted ranking system.

4. Netflix maintains records containing its users' billing and contact information on its server computers.

5. Netflix retains, stores, and utilizes the information described in Paragraphs three (3) and four (4) *supra*, for a period of at least two (2) years after a subscriber cancels his or her account with Netflix.

6. As a result, Netflix maintains a veritable digital dossier on thousands, if not millions, of former subscribers. These records contain not only the former subscriber's credit card number, username and password, as well as billing/contact information, but also a highly detailed account of the individual's video programming viewing history.

7. Accordingly, Netflix has knowingly retained the PII and sensitive video programming viewing histories of former subscribers in violation of state and federal laws.

COMPLAINT

2

## PARTIES

8. Plaintiff Jeff Milans is a natural person and citizen of the state Virginia.

9. Defendant Netflix, Inc., is a corporation organized and existing under the laws of the state of Delaware with its headquarters and principal place of business located at 100 Winchester, Los Gatos, California 95032. Netflix does business throughout the State of California, the United States, and Canada.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's claims arising under the laws of the United States pursuant to 28 U.S.C. § 1331, and, as to all other claims, pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Netflix because it maintains its corporate headquarters in this District and the improper conduct alleged in the Complaint occurred in, was directed and/or emanated from California.

12. This Court is an appropriate venue for the adjudication of this controversy because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

13. Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division.

## FACTUAL BACKGROUND

### A Brief Overview of Netflix

14. On its website, Netflix boasts that, "[w]ith more than 16 million members in the United States and Canada, Netflix, Inc. is the world's leading Internet subscription service for enjoying movies and TV shows." Netflix Press Info., http://www.netflix.com/MediaCenter (last visited January 5, 2011).

15. Netflix has developed an extensive and complex online system to provide cataloged video programming to its subscribers. Using this system, subscribers are offered the

COMPLAINT

3

1  opportunity to rank in order of preference a wide variety of viewing selections. Netflix uses
2  these user-inputted rankings to recommend video programming to the subscriber based upon his
3  or her preferences.
4      16.    Subscribers of Netflix's services may also rent DVD's from Defendant's website,
5  which are then physically shipped to the individual.
6      17.    Netflix subscribers are able to cancel their subscription to Netflix's services at any
7  time through its website.

### The Information that Netflix Stores About its Subscribers

8      18.    According to its website, Netflix collects, stores, and analyzes data from its
9  subscribers in the following manner:

> We keep track of your interactions with us and collect information related to your use of our service, including but not limited to your online activity, title selections and ratings, payment history and correspondence as well as Internet protocol addresses, device types, operating systems, any instant watching of movies, TV shows and related activity. We use this information for such purposes as providing recommendations on movies and TV shows we think will be enjoyable, personalizing the service to better reflect particular interests, tracking your instant-watching hours, helping us quickly and efficiently respond to inquiries and requests and otherwise enhancing or administering our service offering for our customers.

Netflix Privacy Policy, http://www.netflix.com/PrivacyPolicy (last visited January 5, 2011).

   19.   In addition to their programming preferences, Defendant allows subscribers to keep track of movies and television shows they would like to watch in the future, in what is known as a "queue."

   20.   A queue is essentially a list of video programming, selected and organized by the subscriber for later viewing.

COMPLAINT

4

21. Defendant continues to store its former subscribers' queues, along with their contact, billing and viewing preference information, even after subscribers cancel their memberships.

22. The video programming that Netflix stores includes, but is not necessarily limited to, every streaming video that the consumer has watched, every DVD the consumer has ever rented, and the video rankings that the consumer has assigned to other videos, which in turn reveals that individual's preferences.

23. Former subscribers who log-in to their cancelled Netflix account are greeted with previously inputted credit card numbers and contact information, as well as a detailed history of what video programming they ordered from Defendant throughout the duration of their subscription. Defendant retains video programming history beyond the time that the customer has terminated their service with Neflix.

24. Indeed, Defendant's privacy policy goes on to state that Netflix uses that information to "provide analysis of our users in the aggregate to prospective partners, advertisers and other third parties." *See supra,* Netflix Privacy Policy. Armed with the knowledge that Netflix indefinitely retains its subscribers' data, it becomes clear that inherent in this statement is the fact that Defendant continues to profit from the use of its former subscribers' personal information, including their video programming viewing histories, even though these individuals have cancelled their subscriptions.

### The Video Privacy Protection Act and Digital Dossiers

25. The desire to keep video programming viewing history records private led Congress to enact the Video Privacy Protection Act in 1988 (the "Act" or "VPPA"). Inspired by the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video viewing histories.

26. When the VPPA was introduced, the late Senator Paul Simon noted that,

COMPLAINT

5

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S.Rep. No. 100-599 at 7-8 (1988) (emphasis added).

27. In another strikingly accurate forward-looking statement, Senator Patrick Leahy remarked that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S.Rep. No. 100-599 at 8 (1988).

28. Although in 1988 these Senators could not possibly forecast the amount of data collected on consumers today by large video-programming providers such as Netflix, both Sen. Simon's and Sen. Leahy's comments would prove prescient.

29. Many glaring and dangerous privacy issues are implicated by Netflix's practice of retaining customer information indefinitely after cancellation of Defendant's services—the exact type of dangers that the VPPA was enacted to thwart.

30. As a practical matter, a former subscriber who cancels his or her Netflix account logically believes that the Defendant has purged its system of that individual's private information. Most, if not all consumers, would feel extremely uncomfortable with the prospect

COMPLAINT
6

that Defendant continues to store their credit card numbers and a detailed record of their video programming viewing histories.

31.  Furthermore, Netflix's practices are indicative of a larger problem that is beginning to plague Internet users—the development and maintenance of digital dossiers on consumers by online companies.

32.  Prof. Daniel Solove, an expert in privacy law at the George Washington University Law School has written extensively on this topic, and explains the crux of the problem as follows:

> While life in the Information Age has brought us a dizzying amount of information, it has also placed a profound amount of information about our lives in the hands of numerous entities. These digital dossiers are increasingly becoming digital biographies, a horde of aggregated bits of information combined to reveal a portrait of who we are based upon what we buy, the organizations we belong to, how we navigate the Internet, and which shows and videos we watch. This information is not held by trusted friends or family members, but by large bureaucracies that we do not know very well or sometimes do not even know at all.

Daniel J. Solove, <u>Digital Dossiers and the Dissipation of Fourth Amendment Privacy</u>, 75 S. Cal. L. Rev. 1083, 1095 (2002).

33.  The retention of subscriber data is not the first privacy concern that has raised eyebrows about Netflix's business practices. In March of 2010, Associate Director Maneesha Mithal of the Division of Privacy and Identity Protection at the Federal Trade Commission issued a public letter to Netflix cautioning Defendant about the release of data regarding the video programming viewing history of its subscribers. FTC Netflix Letter, http://www.ftc.gov/os/closings/100312netflixletter.pdf (last visited January 5, 2011).

34.  It follows then from the discussion above, as well as the unlawful behavior described in this Complaint, that Netflix has continuously struggled to fully grasp its duty both to

COMPLAINT

uphold the privacy rights of its current and former subscribers, as well as to comply with federal and state laws regarding the destruction of PII.

## FACTS RELATING TO PLAINTIFF

35. Plaintiff Jeff Milans is a former Netflix subscriber who cancelled his account with Defendant over one (1) year ago.

## CLASS ALLEGATIONS

36. **Definition of the Class:** Plaintiff Jeff Milans brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All individuals and entities in the United States and its territories that have cancelled their subscriptions to Netflix's services.

Excluded from the Class are 1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion, and 4) the legal representatives, successors, or assigns of any such excluded person.

37. **Numerosity:** The exact number of the members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class consists of millions of individuals and other entities. Class members can be easily identified through Defendant's records and public records.

38. **Commonality:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

(a) whether Netflix unlawfully retained its former subscribers' PII and video programming viewing histories;

(b) whether Netflix continues to benefit from the use of data relating to its former subscribers' video programming viewing histories;

(c) whether Netflix's conduct described herein violated the Video Privacy Protection Act (18 U.S.C. §§ 2710, *et seq.*);

(d) whether Netflix's conduct described herein violated the California Customer Records Act, (Cal. Civ. Code § 1798.80);

(e) whether Netflix's conduct described herein violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

(f) whether Netflix has been unjustly enriched by Plaintiff and the Class;

(g) whether Netflix has breached its fiduciary duty to Plaintiff and the Class.

39. **Typicality:** The factual and legal bases of Netflix's liability to Plaintiff and to the other members of the Class are the same and resulted in injury to Plaintiff and all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm as a result of Netflix's wrongful conduct.

40. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Defendant has no defenses unique to Plaintiff.

41. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the individual members of the Class to

COMPLAINT

1  obtain effective relief from the misconduct of Defendant. Even if members of the Class
2  themselves could sustain such individual litigation, it would still not be preferable to a class
3  action, because individual litigation would increase the delay and expense to all parties due to the
4  complex legal and factual controversies presented in this Complaint. By contrast, a class action
5  presents far fewer management difficulties and provides the benefits of single adjudication,
6  economy of scale, and comprehensive supervision by a single court. Economies of time, effort,
7  and expense will be fostered and uniformity of decisions will be ensured.

8  42.  **Policies Generally Applicable to the Class:** This class action is also appropriate
9  for certification because Defendant has acted or refused to act on grounds generally applicable to
10  the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief
11  with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect
12  all members of the Class uniformly, and Plaintiff's challenge of these policies hinges on
13  Defendant's conduct, not on facts or law applicable only to Plaintiff.

## FIRST CAUSE OF ACTION
### Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710
### (On Behalf of Plaintiff and the Class)

16  43.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.
17  44.  Netflix qualifies now and has qualified in the past as a "video tape service
18  provider" under the Video Privacy Protection Act ("VPPA"), because Defendant is "engaged in
19  the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of
20  prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).
21  45.  The VPPA mandates, among other things, that a service provider "shall destroy
22  personally identifiable information as soon as practicable, but no later than one year from the
23  date the information is no longer necessary for the purpose for which it was collected." 18
24  U.S.C. § 2710(e).

COMPLAINT
10

46. Netflix has violated 18 U.S.C. § 2710(e) because Defendant failed to destroy former subscribers' personally identifiable information as soon as practicable from the date the information was no longer necessary for the purpose for which it was collected.

47. As a result of Defendant's conduct described herein and its violation of § 2710, Plaintiff and the Class have suffered injuries. Plaintiff, on his own behalf and on behalf of the Class, seeks an order enjoining Defendant's conduct described herein and awarding himself and the Class the maximum statutory and punitive damages available under 18 U.S.C. § 2710(c).

## SECOND CAUSE OF ACTION
**Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80**
**(On Behalf of Plaintiff and the Class)**

48. Plaintiff incorporates paragraphs 1 through 42 above as though fully set forth herein.

49. The California Customer Records Act mandates, among other things, that a business take all reasonable steps to destroy or arrange for the destruction of a customer's records within its custody or control which contain personal information which is no longer to be retained by the business. Cal. Civ. Code § 1798.81.

50. A business may destroy customer records by erasing the information, or modifying the personal information in those records to make it unreadable or undecipherable through any means. Cal. Civ. Code § 1798.81(b), (c).

51. Defendant has violated Cal. Civ. Code § 1798.81 by failing to erase or otherwise destroy its former subscribers customer records after cancellation of membership services.

52. Pursuant to Cal. Civ. Code § 1798.84, Plaintiff and the Class seek damages, including statutory damages of $3,000 per violation and injunctive relief. Plaintiff and the Class also seek attorney's fees pursuant to Cal. Code Civ. Proc. § 1021.5, as well as such other and further relief as the Court deems just and proper.

COMPLAINT

11

### THIRD CAUSE OF ACTION
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff and the Class)

53. Plaintiff incorporates paragraphs 1 through 52 above as though fully set forth herein.

54. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

55. The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

56. Netflix has violated the fraudulent prong of the UCL in that Defendant failed to inform Plaintiff and the Class that it would indefinitely retain their personally identifiable information and video programming viewing histories.

57. Netflix has violated the unfair prong of the UCL in that, Defendant continues to profit from selling Plaintiff and the Class's information to third-parties, even though they have cancelled their membership with Defendant.

58. Netflix has violated the unlawful prong of the UCL in that Defendant's conduct violated the Video Privacy Protection Act, (18 U.S.C. §§ 2710, *et seq.*), and the California Customer Records Act, (Cal. Civ. Code § 1798.80).

59. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Netflix from continuing to engage in the unfair and unlawful conduct described herein. Plaintiff seeks an order requiring Defendant to (1) immediately cease the unlawful practices stated in this Complaint, and (2) pay attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

60. Plaintiff incorporates paragraphs 1 through 42 above as though fully set forth herein.

61. Plaintiff and members of the Class conferred a monetary benefit on Defendant. Defendant received and retained money by continuing to sell data to third parties that was retained about Plaintiff and the Class as a result of the unlawful and/or wrongful conduct alleged herein.

62. Defendant appreciates or has knowledge of such benefit.

63. Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained by selling information about Plaintiff and members of the Class, which Defendant has unjustly received as a result of its unlawful actions.

64. Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any amounts Netflix has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**FIFTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

65. Plaintiff incorporates paragraphs 1 through 42 above as though fully set forth herein.

66. Because Netflix was entrusted to store Plaintiff's and the Class's PII and video programming viewing histories ("the data"), Defendant owed a fiduciary duty to Plaintiff and the Class to (a) store the data in compliance with state and federal laws, and (b) only use the data for proper purposes.

67. Defendant breached its fiduciary duty to Plaintiff and Class members by:

    a) Failing to destroy Plaintiff's and the Class's confidential information within a timely manner upon cancellation of membership services; and

b)   Failing to store the data in compliance with the Video Privacy Protection Act (18 U.S.C. §§ 2710, *et seq.*), and California's Customer Records Act (Cal. Civ. Code § 1798.80).

68.   Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained by selling information about Plaintiff and members of the Class to third parties, which Defendant has received as a result of breaching its fiduciary duties.

69.   Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any amounts Netflix has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeff Milans, individually and on behalf of the Class, prays for the following relief:

A.   Certify this case as a class action on behalf of the Class defined above, appoint Jeff Milans as Class Representative, and appoint his counsel as Class Counsel;

B.   Declare that Netflix's actions, as described herein, violate the Video Privacy Protection Act, (18 U.S.C. §§ 2710, *et seq.*), the California Customer Records Act, (Cal. Civ. Code § 1798.80), and the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

C.   Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*: (i) an order prohibiting Netflix from engaging in the wrongful and unlawful acts described herein, and (ii) requiring Netflix to destroy its former subscribers' personally identifiable information and video program viewing histories—except as strictly necessary for contact information;

D.   Award damages, including statutory damages of $2,500 per violation under the Video Privacy Protection Act, 18 U.S.C. § 2710(c); $3,000 per violation under the California Consumer Records Act, Cal. Civ. Code § 1798.84(c); and, punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

| | | |
|---|---|---|
| 1 | E. | Award Plaintiff and the Class their reasonable litigation expenses and attorneys' |
| 2 | fees; | |
| 3 | F. | Award Plaintiff and the Class pre- and post-judgment interest, to the extent |
| 4 | allowable; and | |
| 5 | G. | Award such other and further relief as equity and justice may require. |

### JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: January 24, 2011

By: _____
Sean Reis
One of Plaintiff's Attorneys

SEAN REIS (sreis@edelson.com) - SBN 184044
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Fax: (949) 459-2123

JAY EDELSON* (jedelson@edelson.com)
RAFEY S. BALABANIAN* (rbalabanian@edelson.com)
WILLIAM C. GRAY* (wgray@edelson.com)
BENJAMIN H. RICHMAN* (brichman@edelson.com)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378
*Pro hac vice admission to be sought

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS

COMPLAINT