1

2

3

4

SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

5

6

7

8

9

JAY EDELSON (jedelson@edelson.com)
RAFEY S. BALABANIAN (rbalabanian@edelson.com)
WILLIAM C. GRAY (wgray@edelson.com)
ARI J. SCHARG (ascharg@edelson.com)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

10

*Attorneys for Plaintiffs and the Putative Class*

11

12

## UNITED STATES DISTRICT COURT

13

## NORTHERN DISTRICT OF CALIFORNIA

14

15

16

17

18

19

20

21

22

23

24

25

IN RE: NETFLIX PRIVACY LITIGATION

Case No. 5:11-cv-00379-EJD

**CONSOLIDATED CLASS ACTION
COMPLAINT FOR:**

**(1) Violations of the Video Privacy
Protection Act, 18 U.S.C. § 2710;**

**(2) Violations of California's Customer
Records Act, Cal. Civ. Code § 1798.80;**

**(3) Violation of California's Unfair
Competition Law, Cal. Bus. & Prof.
Code §§ 17200, *et seq*.**

**DEMAND FOR JURY TRIAL**

26

27

28

Plaintiffs Jeff Milans and Peter Comstock (collectively the "Plaintiffs"), by and through their attorneys, upon personal knowledge as to themselves and their own acts and experiences, and upon information and belief as to all other matters, complain and allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this Consolidated Class Action Complaint against Defendant Netflix, Inc. ("Netflix") for Defendant's unlawful retention and disclosure of their personally identifiable information ("PII"), including their names, addresses, credit information, billing addresses, and video programming viewing histories after cancellation of their membership services with Netflix.

2.     Netflix owns and operates the website www.Netflix.com, which provides streaming video via the Internet and online video rental services to over 10 million subscribers.

3.     Netflix maintains a digital record system that details every streaming video or video rental that its subscribers have ordered during the course of their membership. In addition, Netflix stores and analyzes the movie preferences of its subscribers based upon a user-inputted ranking system.

4.     Netflix maintains records containing its users' credit card numbers, billing and contact information, and most importantly, sensitive video programming viewing histories on its server computers.

5.     Netflix retains, stores, and utilizes the information described in Paragraphs three (3) and four (4) *supra*, for a period of at least two (2) years after a subscriber cancels his or her account with Netflix.

6.     As a result, Netflix maintains a veritable digital dossier on thousands, if not millions, of former subscribers. These records contain not only the former subscribers' credit card numbers, usernames and passwords, as well as billing/contact information, but also a highly detailed account of each individual's video programming viewing history.

7.     Worse yet, Netflix uses the information identified in Paragraph 4 for, among other things, marketing and advertising, without obtaining the "informed, written consent of the consumer at the time disclosure is sought," 18 U.S.C. § 2710(b)(2)(b), and without providing its customers "with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." § 2710(b)(2)(D)(i).

8.     Accordingly, Netflix has knowingly retained and disclosed the PII and sensitive video programming viewing histories of former subscribers in violation of state and federal laws.

## PARTIES

9.     Plaintiff Jeff Milans is a natural person and citizen of the state of Virginia.

10.    Plaintiff Peter Comstock is a natural person and citizen of the state of Virginia.

11.    Defendant Netflix, Inc., is a corporation incorporated and existing under the laws of the state of Delaware with its headquarters and principal place of business located at 100 Winchester, Los Gatos, California 95032. Netflix does business throughout the state of California, the United States, and Canada.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over Plaintiffs' claims arising under the laws of the United States pursuant to 28 U.S.C. § 1331, and, as to all other claims, pursuant to 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over Netflix because it maintains its corporate headquarters in this District and the improper conduct alleged in this Consolidated Class Action Complaint occurred in, was directed and/or emanated from California.

14.    This Court is an appropriate venue for the adjudication of this controversy because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

15.    Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division.

## FACTUAL BACKGROUND

### A Brief Overview of Netflix

16.     On its website, Netflix boasts that, "[w]ith more than 25 million members in the United States and Canada, Netflix, Inc. is the world's leading Internet subscription service for enjoying movies and TV shows." Netflix Press Info., http://www.netflix.com/MediaCenter (last visited September 9, 2011).

17.     Netflix has developed an extensive and complex online system to provide cataloged video programming to its subscribers. Using this system, subscribers are offered the opportunity to rank in order of preference a wide variety of viewing selections. Netflix utilizes these user-inputted rankings to recommend video programming to the subscriber based upon his or her preferences.

18.     Subscribers of Netflix's services may also rent DVD's from Defendant's website, which are then physically shipped to the individual.

19.     Netflix subscribers are able to cancel their subscription to Netflix's services at any time through its website.

### The Information that Netflix Stores About its Subscribers

20.     According to its website, Netflix collects, stores, and analyzes data from its subscribers in the following manner:

> We keep track of your interactions with us and collect information related to your use of our service, including but not limited to your online activity, title selections and ratings, payment history and correspondence as well as Internet protocol addresses, device types, unique device data, such as device identifiers, operating systems, any instant watching of movies, TV shows and related activity. We use this information for such purposes as determining in which country you are located so that we may provide localized content, enforcing our terms (such as using device identifiers to determine your eligibility for a free trial), providing recommendations on movies and TV shows we

think will be enjoyable, personalizing the service to better reflect particular interests, tracking your instant-watching hours, determining your Internet service provider, helping us quickly and efficiently respond to inquiries and requests and otherwise enhancing or administering our service offering.

Netflix Privacy Policy, http://www.netflix.com/PrivacyPolicy (last visited September 12, 2011).

21.    In addition to their programming preferences, Defendant allows subscribers to keep track of movies and television shows they would like to watch in the future, in what is known as a "queue."

22.    A queue is essentially a list of video programming, selected and organized by the subscriber for later viewing.

23.    Defendant continues to store its former subscribers' queues, along with their contact, billing and viewing preference information, even after subscribers cancel their memberships.

24.    The video programming that Netflix stores includes, but is not necessarily limited to, every streaming video that the consumer has watched, every DVD the consumer has ever rented, and the video rankings that the consumer has assigned to other videos, which in turn reveals that individual's preferences.

25.    Former subscribers who log-in to their cancelled Netflix accounts are greeted with previously inputted credit card numbers and contact information, as well as a detailed history of what video programming they ordered from Netflix throughout the duration of their subscription. Netflix retains video programming history beyond the time that the customer has closed their account and terminated service with Neflix.

26.    Indeed, Netflix's privacy policy goes on to state that it uses that information to "provide analysis of our users in the aggregate to prospective partners, advertisers and other third parties." *See supra,* Netflix Privacy Policy.  Armed with the knowledge that Netflix indefinitely retains its subscribers' data, inherent in and the logical inference of this statement is that Netflix

continues to profit from the use of its former subscribers' personal information, including their video programming viewing histories, even though these individuals have closed their accounts and cancelled their subscriptions with Netflix.

**The Video Privacy Protection Act and Digital Dossiers**

27. The desire to keep video programming viewing history records private led Congress to enact the Video Privacy Protection Act in 1988 (the "Act" or "VPPA"). Inspired by the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video viewing histories.

28. When the VPPA was introduced, the late Senator Paul Simon noted that,

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S.Rep. No. 100-599 at 7-8 (1988) (emphasis added).

29. In this regard, Senator Patrick Leahy remarked that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S.Rep. No. 100-599 at 8 (1988).

30.     Although in 1988 these Senators could not possibly forecast the amount of data collected on consumers today by large video-programming providers such as Netflix, both Sen. Simon's and Sen. Leahy's comments would prove prescient.

31.     Many glaring and dangerous privacy issues are implicated by Netflix's practice of retaining customer information indefinitely after cancellation of Defendant's services—the exact type of dangers that the VPPA was enacted to thwart.

32.     Accordingly, the VPPA affords consumers significant protections with respect to the storage, confidentiality, and ultimate destruction of any records concerning the names and titles of any movies they have rented or purchased.

33.     Specifically, the VPPA requires video-programming providers to destroy "personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected…." 18 U.S.C. § 2710(e).

34.     Under the VPPA, the term "personally identifiable information" means names, addresses, and "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(4); 18 U.S.C. § 2710(b)(2)(D).

35.     The VPPA also requires "video tape service providers" to keep all "personally identifiable information" strictly confidential. In fact, names, addresses, and subject matter cannot even be used for marketing purposes unless the customer has been provided with "the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D)(i)-(ii).

36.     As a practical matter, a former subscriber who cancels his or her Netflix account logically believes that Netflix has purged its system of that individual's private information. Most, if not all consumers, would feel extremely uncomfortable with the prospect that Netflix

1    continues to store their credit card numbers and a detailed record of their video programming

2    viewing histories.

3         37.    Furthermore, Netflix's practices are indicative of a larger problem that is

4    beginning to plague Internet users—the development and maintenance of digital dossiers on

5    consumers by online companies.

6         38.    Prof. Daniel Solove, an expert in privacy law at the George Washington

7    University Law School has written extensively on this topic, and explains the crux of the

8    problem as follows:

9                        While life in the Information Age has brought us a
10                       dizzying amount of information, it has also placed a
                         profound amount of information about our lives in
11                       the hands of numerous entities. These digital
                         dossiers are increasingly becoming digital
12                       biographies, a horde of aggregated bits of
13                       information combined to reveal a portrait of who we
                         are based upon what we buy, the organizations we
14                       belong to, how we navigate the Internet, and which
                         shows and videos we watch. This information is not
15                       held by trusted friends or family members, but by
                         large bureaucracies that we do not know very well
16                       or sometimes do not even know at all.

17   Daniel J. Solove, Digital Dossiers and the Dissipation of Fourth Amendment Privacy, 75 S. Cal.

18   L. Rev. 1083, 1095 (2002).

19        39.    The retention of subscriber data is not the first privacy concern that has raised

20   eyebrows about Netflix's business practices. In March of 2010, Associate Director Maneesha

21   Mithal of the Division of Privacy and Identity Protection at the Federal Trade Commission

22   issued a public letter to Netflix cautioning it about the release of data regarding the video

23   programming viewing histories of its subscribers. FTC Netflix Letter,

24   http://www.ftc.gov/os/closings/100312netflixletter.pdf (last visited September 9, 2011).

25

26

27

28

40.     Netflix has failed uphold its duty to protect the privacy rights of its current and former subscribers, and in the course, has violated federal and state laws regarding the destruction of PII.

41.     Similarly, Netflix uses the "personally identifiable information" collected from its customers for marketing and advertising purposes, after its customers have closed their accounts and terminated their services with Netflix and without its customers' consent.

### FACTS RELATING TO PLAINTIFFS

42.     Plaintiff Jeff Milans is a former Netflix subscriber who cancelled his account with Netflix over one (1) year ago.

43.     Plaintiff Peter Comstock is a former Netflix subscriber who cancelled his account with Netflix over one (1) year ago.

44.     Additionally, Netflix disclosed Plaintiffs' "personally identifiable information" for marketing purposes without their informed, written consent, and without providing them a clear and conspicuous opportunity to prevent such disclosures, since Plaintiffs' had already closed their accounts and terminated service with Netflix.

### CLASS ALLEGATIONS

45.     **Definition of the Class:** Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All individuals and entities in the United States and its territories that have cancelled their subscriptions to Netflix's services.

Excluded from the Class are 1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion,

4) the legal representatives, successors, or assigns of any such excluded person, and 5) all persons or entities who have had their claims fully and finally adjudicated or otherwise released.

46.   **Numerosity:** The exact number of the members of the Class is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class consists of millions of individuals and other entities. Class members can be easily identified through Netflix's and public records.

47.   **Commonality:** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

> (a)   whether Netflix unlawfully retained its former subscribers' PII and video programming viewing histories;
>
> (b)   whether Netflix continues to benefit from the use of data relating to its former subscribers' video programming viewing histories;
>
> (c)   whether Netflix's conduct described herein violated the Video Privacy Protection Act (18 U.S.C. §§ 2710, *et seq.*);
>
> (d)   whether Netflix's conduct described herein violated the California Customer Records Act, (Cal. Civ. Code § 1798.80); and
>
> (e)   whether Netflix's conduct described herein violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

48.   **Typicality:** The factual and legal bases of Netflix's liability to Plaintiffs and to the other members of the Class are the same and resulted in injury to Plaintiffs and all of the other members of the Class. Plaintiffs and the other members of the Class have all suffered harm as a result of Netflix's wrongful conduct.

49.     **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class members, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class and Defendant has no defenses unique to Plaintiffs.

50.     **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Netflix's action. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Consolidated Class Action Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

51.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Netflix has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Netflix's policies challenged herein apply to and affect all members of the Class uniformly, and Plaintiffs' challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiffs.

## FIRST CAUSE OF ACTION
### Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710
### (On Behalf of Plaintiffs and the Class)

52.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

53.     Netflix qualifies now and has qualified in the past as a "video tape service provider" under the Video Privacy Protection Act ("VPPA"), because Netflix is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

54.     The VPPA mandates, among other things, that a video tape service provider "shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected." 18 U.S.C. § 2710(e).

55.     Despite the fact that it has been more than one year from the date that Plaintiffs' PII was no longer necessary for the purpose for which Netflix collected it, Netflix failed to destroy Plaintiffs' PII as soon as practicable.

56.     Netflix has violated 18 U.S.C. § 2710(e) because it has failed to destroy its former subscribers', including the Plaintiffs', personally identifiable information as soon as practicable from the date the information was no longer necessary for the purpose for which it was collected.

57.     The VPPA also requires Netflix to keep its customers' PII confidential. 18 U.S.C. § 2710(b)(1). "Personally identifiable information" cannot be disclosed to "any person without the informed, written consent of the consumer given at the time the disclosure is sought." 18 U.S.C. § 2710(b)(2)(B).

58.     Plaintiffs' PII was disclosed for marketing and advertising purposes without their informed, written consent, or an opportunity to prohibit such disclosures, after they had closed their accounts and terminated service with Netflix.

59.     As a result of Netflix's conduct described herein and its violation of § 2710, Plaintiffs and the Class have suffered injuries. Plaintiffs, on their own behalf and on behalf of the Class, seek an order enjoining Netflix's conduct described herein and awarding themselves and the Class the maximum statutory and punitive damages available under 18 U.S.C. § 2710(c), an

award of attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5, as well as such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80
### (On Behalf of Plaintiffs and the Class)

60.     Plaintiffs incorporate paragraphs 1 through 48 above as though fully set forth herein.

61.     The California Customer Records Act mandates, among other things, that a business take all reasonable steps to destroy or arrange for the destruction of a customer's records within its custody or control, which contain personal information that is no longer to be retained by the business. Cal. Civ. Code § 1798.81.

62.      A business may destroy customer records by erasing the information, or modifying the personal information in those records to make it unreadable or undecipherable through any means. Cal. Civ. Code § 1798.81(b), (c).

63.     Netflix has violated Cal. Civ. Code § 1798.81 by failing to erase or otherwise destroy its former subscribers' customer records or making their customers' personal information unreadable or undecipherable after their cancellation of membership services.

64.     Pursuant to Cal. Civ. Code § 1798.84, Plaintiffs, on their own behalf and on behalf of the Class, seek an order enjoining Netflix's conduct described herein, an award of attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5, as well as such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq*.
### (On Behalf of Plaintiffs and the Class)

65.     Plaintiffs incorporate paragraphs 1 through 59 above as though fully set forth herein.

66.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

§§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

67.     The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

68.     Netflix has violated the fraudulent prong of the UCL in that it failed to inform Plaintiffs and the Class that it would indefinitely retain their personally identifiable information and video programming viewing histories.

69.     Netflix has violated the unfair prong of the UCL in that it continues to profit from selling Plaintiffs' and the Class's personally identifiable information to third parties, even though they have cancelled their subscriptions with Netflix.

70.     Netflix has violated the unlawful prong of the UCL in that its conduct violated the Video Privacy Protection Act, (18 U.S.C. §§ 2710, *et seq.*), and the California Customer Records Act, (Cal. Civ. Code § 1798.80).

71.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs, on their own behalf and on behalf of the Class, seek an order enjoining Netflix from continuing to engage in the unfair and unlawful conduct described herein, an award of attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5, as well as such other and further relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jeff Milans and Peter Comstock, individually and on behalf of the Class, pray for the following relief:

A.     Certify this case as a class action on behalf of the Class defined above, appoint Plaintiffs Jeff Milans and Peter Comstock as Class Representatives, and appoint their counsel as Class Counsel;

B.      Declare that Netflix's actions, as described herein, violate the Video Privacy Protection Act, (18 U.S.C. §§ 2710, *et seq.*), the California Customer Records Act, (Cal. Civ. Code § 1798.80), and the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

C.      Award injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*: (i) an order prohibiting Netflix from engaging in the wrongful and unlawful acts described herein, and (ii) requiring Netflix to destroy its former subscribers' personally identifiable information and video program viewing histories;

D.      Award damages to Plaintiffs and the Class, including statutory damages of $2,500 per violation under the Video Privacy Protection Act, 18 U.S.C. § 2710(c); and, punitive damages where applicable, in an amount to be determined at trial;

E.      Award Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

F.      Award Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Award such other and further relief as equity and justice may require.

### JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated: September 12, 2011            **JEFF MILANS and PETER COMSTOCK**
                                      individually and on behalf of all others similarly
                                      situated,

                                      By:    /s/ Sean Reis
                                                One of Plaintiffs' Attorneys

SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

JAY EDELSON (jedelson@edelson.com)
RAFEY S. BALABANIAN (rbalabanian@edelson.com)
WILLIAM C. GRAY (wgray@edelson.com)
ARI J. SCHARG (ascharg@edelson.com)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

1

## CERTIFICATE OF SERVICE

2

3        I, Sean Reis, an attorney, certify that on September 12, 2011, I served the above
*Plaintiffs' Consolidated Class Action Complaint* by causing true and accurate copies of such
4 paper to be transmitted to all counsel of record via CM/ECF electronic filing system on this the
12th day of September 2011.

5

6

7                                /s/ Sean Reis _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28