SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

JAY EDELSON
(jedelson@edelson.com)
RAFEY S. BALABANIAN
(rbalabanian@edelson.com)
ARI J. SCHARG
(ascharg@edelson.com)
CHANDLER R. GIVENS
(cgivens@edelson.com)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Attorneys for Plaintiffs and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: NETFLIX PRIVACY LITIGATION | Case No. 5:11-cv-00379-EJD<br><br>**DECLARATION OF SHANNON R. WHEATMAN, PH.D. ON ADEQUACY OF NOTICE PLAN** |

I, Shannon R. Wheatman, declare as follows:

1. My name is Shannon Wheatman. I am over the age of twenty-one (21) years, have never been convicted of a felony, and am fully competent to make this declaration. I am a Vice President of Kinsella Media, LLC ("KM"), an advertising and notification firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs. My business address is 2120 L Street NW, Suite 860, Washington, D.C. 20037. My telephone number is (202) 686-4111. The facts in this declaration are true and correct and based on my personal knowledge.

2. This report will describe my experiences in designing and implementing notices and notice plans, and my credentials to opine on the overall adequacy of the notice effort, as well as describe the notices (the "Notice" or "Notices") and the notice plan (the "Notice Plan") proposed here for the *In re: Netflix Privacy Litigation*, including why I believe the notice program will be effective. My c.v. is attached as **Exhibit A**.

## RELEVANT EXPERIENCE

3. I have served as a qualified class action notice expert in many class actions. State and federal courts have accepted my analyses and expert testimony on whether information is effectively communicated to people.

4. I have been involved in some of the largest and most complex national notification programs in the country, including: *In re: Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.); *In re Lawn Mower Engine Horsepower Mkt'g & Sales Pract. Litig.* (consumer fraud settlement involving tens of millions of lawnmower owners), MDL No. 1999 (E.D. Wis.); *In Re: Enfamil LIPIL Mkt'g & Sales Pract. Litig.* (consumer fraud settlement involving millions of infant formula purchasers), No. 11-MD-02222 (S.D. Fla.); *Fogel v. Farmers Group, Inc* ($455 million settlement involving tens of millions of insureds), No. BC300142 (Cal. Super. Ct., LA County); *In re Katrina Canal Breaches Consolidated Litig.* (settlement obtained for Hurricane Katrina and Rita survivors),

DECLARATION OF
SHANNON R. WHEATMAN, PH.D.

Case No. 5:11-cv-00379-EJD

1

No. 05-4182 (E.D. La.); *Lockwood v. Certegy Check Services, Inc.* (data theft settlement involving over 37 million consumers), No. 8:07CV-1434, M.D. Fla.; *Grays Harbor Adventist Christian School v. Carrier Corp.* (defective product settlement involving high efficiency furnaces), No. 05-05437 (W.D. Wash.); and many others.

5.       Courts have admitted expert testimony from me on quantitative and qualitative evaluations of the effectiveness of class action notice programs and several courts have commented favorably, on the record, regarding the effectiveness of notice plans I have designed and implemented. Selected judicial comments are included in the attached c.v.

6.       My qualifications include expertise in the form and content of notice.  For example, while serving with the Federal Judicial Center ("FJC"), I played an integral part in the development of the illustrative, "model" forms of notice, designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).  This research formed the basis for my doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia).  To assist judges and attorneys, in state as well as federal courts, the FJC has posted the notices at www.fjc.gov.

7.       I have authored and co-authored numerous articles on notice and due process.  The central premise of these articles is that notice and due process depends upon clear communication with the people affected.  *See, e.g.,* Shannon R. Wheatman & Terri R. LeClercq, *Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011); Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language:  A desire to actually inform*.  GEO J. LEGAL ETHICS, 18 (4), 1359-1382 (2005); and Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process:  The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

DECLARATION OF                                                    Case No. 5:11-cv-00379-EJD
SHANNON R. WHEATMAN, PH.D.

**OVERVIEW**

8.     The proposed Notice Plan has been designed to effectively reach Settlement Class Members.

9.     In developing the Notice Plan, it was determined that it would be most practicable to implement an individual notification effort to reach known Settlement Class Members through available e-mail addresses ("Direct Notice").

10.     A large number of Settlement Class Members no longer have a business relationship with Netflix because they are former subscribers.  Assuming that e-mail addresses for some former subscribers may no longer be valid, it is reasonable and appropriate to also publish a Summary Notice in a consumer magazine.  The paid media efforts will also include Internet advertising.

11.     Coverage and exposure will be further enhanced by an informational press release and efforts to make Notice available through a dedicated website.

12.     We have worked with the parties to develop forms of Notice for Court approval as described below.  All forms of Notice are noticeable, clear, concise, and in plain, easily understood language.

13.     As detailed below, in my opinion, the Notice Plan represents the best notice practicable under the circumstances.

**NOTICE PLAN SUMMARY**

14.     In this case, the Notice Program was designed to reach the greatest practicable number of Settlement Class Members ensuring that they will be exposed to the Notice—to see, review, and understand it—and all of their options.

15.     Settlement Class Members will receive Notice via e-mail, publication in a national consumer magazine, and through the Internet.

***Individual Notice***

20.     A Summary Notice will be e-mailed by Netflix to the last known email addresses for any

DECLARATION OF                                             Case No. 5:11-cv-00379-EJD
SHANNON R. WHEATMAN, PH.D.

3

1  and all reasonably identifiable Settlement Class Members.

2  21.  The delivery status of all e-mails will be monitored.  Any e-mail that is returned as a soft

3  bounce[1] will be resent a second time during the E-mail Period.

4  ***Publication Notice***

5  22.  My current estimate is that the Email Notice will reach at least 70% of Class Members.

6  23.  KM designed a paid media program to reach Settlement Class Members who do not

7  receive direct notice via mail.

8  24.  To design the paid media segment of the notice program, KM analyzed syndicated data

9  available from the 2011 Doublebase Survey[2] from GfK MediaMark Research, Inc. ("GfK MRI").  GfK

10  MRI is a nationally accredited media and marketing research firm that provides syndicated data on

11  audience size, composition, and other relevant factors pertaining to major media including broadcast,

12  magazines, newspapers, and outdoor advertising.  MRI provides a single-source measurement of major

13  media, products, services, and in-depth consumer demographic and lifestyle/psychographic

14  characteristics.

15  25.  Using GfK MRI, KM selected demographics that encompass the characteristics of Class

16  Members.  Media vehicles were then analyzed and selected for their strength and efficiency in reaching

17  these demographic targets.

18  26.  KM chose adults who have rented, purchased, or downloaded a movie from Netflix.com

19

20  [1]  A soft bounce is an e-mail that receives a reply that indicates the e-mail was not delivered.  This non-

21  deliverability may be a result of a full inbox or an out-of-office message.  This non-deliverability is not the result of an invalid e-mail address.

22  [2]  GfK MRI produces an annual Doublebase, a study of 50,000+ adults consisting of two full years of data.

23  The MediaMark sample consists of 26,000+ respondents.  Fieldwork is done in two waves per year, each lasting six months and consisting of 13,000 interviews.  At the end of the interview, the fieldworker presents a self-

24  administered questionnaire that measures approximately 500 product/service categories, 6,000 brands, and various lifestyle activities.  Resulting data is weighted to reflect the probabilities of selection inherent in the

25  sample design and then balanced so that major study demographics match the most recent independent estimates.

26

27  DECLARATION OF                                                    Case No. 5:11-cv-00379-EJD
   SHANNON R. WHEATMAN, PH.D.
                                                  4

28

("Netflix Customers") as the primary target audience.  GfK MRI provides specific data on this target audience.

27.    To effectively reach this Class, KM recommends a notice program that utilizes a consumer magazine and Internet ads.

28.    KM chose *People Magazine* because it provides good coverage of Netflix Customers. The Summary notice will appear as a half page ad in *People Magazine*.

29.    Internet advertising will include the following placement: Text advertisement with an image measuring 100 x 100 pixels will appear, on a rotating basis, on Facebook.com, for a total estimated 60,000,000 impressions.[3]

30.    A copy of the Text advertisement is attached as **Exhibit**   .

31.    For the purpose of evaluating the strength and efficiency of the media, the consumer magazines and the planned impressions on Internet networks were measured against the target audience to establish the estimated *reach*[4] of the media program and the estimated *frequency*[5] of exposure to the media vehicles.[6]

32.    At least 80% of the Settlement Class will be reached through Publication Notice and

---

[3]   This is the number of times the ad will be shown to Internet visitors.

[4]   Reach is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles.

[5]   Frequency is the estimated average number of opportunities an audience member has to see the notice.

[6]   KM used the GfK MRI (2011 Net/GfK MRI Media + Fusion (12-11/S11)) to calculate the reach and frequency of this plan.  Net/MRI combines GfK MRI's "Survey of the American Consumer™ multimedia consumer database with Nielsen//NetRatings, which reports page-view click-stream data, 30-day net reach and traffic source for approximately 2,300 Internet sites.  Fusion takes place at the respondent level, ensuring sound and reliable data.   Net//MRI reports are updated monthly, shortly after the regular release of Nielsen//NetRatings.  Net//MRI:Media+ reports on the following: media, demographic, product, and category consumption metrics.  ComScore, Inc. ("ComScore") is a source of Internet audience measurement for advertising agencies, publishers, marketers, and financial analysts.  ComScore measures Internet usage and other activity through monitoring software installed on the computers of a panel of approximately 2,000,000 people.  Active in 170 countries, ComScore tracks more than three million unique websites.  Panel-based surveys are subject to minimum reporting standards and not all surveyed websites will meet these minimums.

DECLARATION OF                                         Case No. 5:11-cv-00379-EJD
SHANNON R. WHEATMAN, PH.D.
5

1 Individual Notice. The paid media has an average estimated frequency of 1.63.

2     33.    All print advertising will carry a toll-free number and a website address for potential

3 Settlement Class Members to request or access the full Long Form Notice.

4 ### *Earned Media*

5     34.    An Earned Media Program will be implemented in order to amplify the paid media

6 program and provide additional notice to Class Members.  The Earned Media Program will feature a

7 press release distributed on PR Newswire's US1 Newsline, reaching almost 6,000 print and broadcast

8 outlets, as well as more than 5,500 online media outlets.  The press release will provide information

9 about the Settlement and highlight the toll-free telephone number and website address so that

10 Settlement Class Members can obtain complete information.

11 ### *Online Media*

12     35.    A website will be established at the URL www.VideoPrivacyClass.com to enable

13 potential Settlement Class Members to get information on the litigation.  Additionally, KM will

14 contract with Google AdWords, Yahoo! Search Marketing, and Bing Microsoft Advertising to have

15 sponsored links appear on the results page of keyword/phrase searches on the Google, Yahoo!, and

16 Bing search engine pages.

17     36.    The website will provide Settlement Class Members with information about the

18 Settlement, as well as access to the Settlement Agreement, and Long Form Notice.

19

20 **THE FORM AND CONTENT OF THE NOTICES**

21     37.    Attached as **Exhibits**  ,  , and **E** are copies of the Summary Notice for Email, Summary

22 Notice for Publication, and the Long Form Notice.

23     38.    The Notices effectively communicate information about the Settlement.

24     39.    Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be

25 written in "plain, easily understood language."  KM applies the plain language requirement in drafting

26

27 DECLARATION OF                         Case No. 5:11-cv-00379-EJD
SHANNON R. WHEATMAN, PH.D.

28

notices in federal and state class actions.  The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Settlement Class Members.

40.   The Summary Notice for e-mail is designed to capture the Settlement Class Member's attention with clear, concise, plain language.  It directs readers to the case website for more information. The plain language text provides important information regarding the subject of the Settlement, the Class definition, and the legal rights available to Settlement Class Members.

41.   The Summary Notice for publication is designed to get the reader's attention.  No important or required information is missing or omitted.  In fact, this Notice concisely and clearly states, in plain easily understandable language, all required information, without omitting significant facts that Settlement Class Members need to understand their rights.  The Notice refers readers to the availability of a Long Form Notice which is available to those who call or visit the website.

42.   The Long Form Notice will be made available in English and Spanish at the website or by calling the toll-free number.  The Long Form Notice provides substantial information, including all specific instructions Settlement Class Members need to follow to properly exercise their rights, and background on the issues in the case.  It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.

43.   In preparing the Notices in *Netflix*, I have employed communications methods that are well-established in my field.   I have embraced the high standards embodied in the Advisory Committee's notes accompanying the 2003 changes to Rule 23(c)(2):

> *The direction that the class-certification notice be couched in plain easily understood language is added as a reminder of the need to work unremittingly at the difficult task of communicating with class members.*

## CONCLUSIONS

44.   In my opinion, the Notices and Notice Plan comport with Rule 23 of the Federal Rules of Civil Procedure, California Code of Civil Procedure section 382, and also the guidance for effective

DECLARATION OF                                                     Case No. 5:11-cv-00379-EJD
SHANNON R. WHEATMAN, PH.D.

7

notice as articulated in the FJC's *Manual for Complex Litigation, 4th*.

45.     Many courts have accepted and understood, based on evidence that we have provided, that a 75 to 80 percent "reach" is more than adequate under the circumstances of analogous cases. The proposed Notice Plan is estimated to reach 80% of the Settlement Class.

46.     The Notice Plan will provide members of the Settlement Class the best notice practicable under the circumstances.

I declare under penalty of perjury and the laws of the United States and the District of Columbia that the foregoing is true and correct and that this declaration was executed on May 24, 2012, in Washington, D.C.

_____

Dr. Shannon R. Wheatman

# EXHIBIT A



# Shannon R. Wheatman, Ph.D.

Vice-President

Kinsella Media, LLC

2120 L Street NW, Suite 860

Washington, DC 20037

2010 – Present

Dr. Wheatman began her class action career in 2000 at the Federal Judicial Center where she was instrumental in the development of model notices to satisfy the plain language amendment to Rule 23. Dr. Wheatman has been involved in over 200 class actions and has been recognized as a notice expert in state and federal courts across the U.S. and in Canada. Dr. Wheatman specializes in designing, developing, analyzing, and implementing large-scale legal notification plans. She provides testimony on the best notice practicable. Her plain language expertise was advanced by her education, including her doctoral dissertation on plain language drafting of class action notice and her master's thesis on comprehension of jury instructions. Dr. Wheatman's selected case experience includes:

*Antitrust*

*Brookshire Bros. v. Chiquita*, No. 05-CIV-21962 (S.D. Fla.).

*Friedman v. Microsoft Corp*., No. 2000-000722 (Ariz. Super. Ct.).

*Gordon v. Microsoft Corp*., No. 00-5994 (4th Jud. D. Ct. Minn.).

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.).

*In re: Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.).

*Peek v. Microsoft Corp*., No. CV-2006-2612 (Cir. Ct. Ark.).

*Spence v. Microsoft Corp*., No. 00-CV-003042 (Cir. Ct. Wis.).

*Sweetwater Valley Farm, Inc. v. Dean Foods*, No. 2:07-CV-208 (E.D. Tenn.).

*Consumer and Product Liability*

*Beringer v. Certegy Check Servs., Inc*., No. 8:07-cv-1434-T-23TGW (M.D. Fla.) (data breach).

*Carnegie v. Household Int'l*, No. 98-C-2178 (N.D. Ill.) (rapid tax refund loan).

*Ciabattari v. Toyota Motor Sales, U.S.A., Inc.*, No. C-05-04289 (N.D. Cal.) (run flat tires).

*Cotton v. Ferman Mgmt. Servs. Corp*., No. 02-08115 (13th Jud. Cir. Ct. Fla.) (automotive products).

*CSS Inc. v. FiberNet, L.L.C.*, No. 07-C-401 (Cir. Ct. W. Va.) (telecommunications).

*Davis v. Am. Home Prods. Corp.*, No. 94-11684 (Civ. D. Ct. La.) (Norplant contraceptive).

*Defrates v. Hollywood Video*, No. 02L707 (Cir. Ct. Ill.) (video rentals).

*FIA Card Services, N.A. v. Camastro*, No. 09-C-233 (Cir. Ct. W. Va) (credit card arbitration).

*Ford Explorer Cases*, JCCP Nos. 4226 & 4270 (Cal. Super. Ct.) (consumer fraud).

*Gardner v. Stimson Lumber Co.*, No. 00-2-17633 (Wash. Super. Ct.) (hardboard siding product).

*Grays Harbor v. Carrier Corp.*, No. 05-CIV-21962 (W.D. Wash.) (high efficiency furnace).

*In re Educ. Testing Servs. PLT 7-12 Test Scoring Litig.*, MDL No. 1643 (E.D. La.) (teacher's testing).

*In Re: Enfamil LIPIL Mktg. & Sales Practs. Litig.*, No. 11-MD-02222 (S.D. Fla.) (infant formula).

*In re High Sulfur Content Gasoline Prods. Liability Litig.*, MDL No. 1632 (E.D. La.) (tainted gas).

*In re Lupron Mktg. & Sales Practices Litig.*, MDL No. 1430 (D. Mass.) (pharmaceutical).

*In Re: Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fla.) (overdraft fees).

*In re: SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc.,* No. 04-12515 (Bankr. W.D. Mich.) (bullet proof vest).

*In re Serzone Prods. Liability Litig.*, MDL No. 1477 (S.D. W. Va.) (pharmaceutical).

*In re TJX Comp. Retail Sec. Breach Litig.*, MDL No. 1838 (D. Mass.) (data breach).

*In re Trans Union Corp. Privacy Litig.*, MDL No. 1350 (N.D. Ill.) (credit report privacy).

*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Mktg. & Sales Practs. Litig.*, No. M:09-CV-2015 (N.D. Cal.) (negative amortization).

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.) (gas fireplaces).

*Kramer v. B2Mobile, LLC*, No. 10-cv-02722 (N.D. Cal.) (text messaging).

*Mantzouris v. Scarritt Motor Group, Inc.*, No. 8:03cv0015 (M.D. Fla) (automotive products).

*Meckstroth v. Toyota Motor Sales, U.S.A., Inc.*, No. 583-318 (24th Jud. D. Ct. La.) (oil gel).

*Nichols v. SmithKline Beecham Corp.*, No. 00-6222 (E.D. Pa.) (Paxil pharmaceutical).

*Palace v. DaimlerChrysler*, No. 01-CH-13168 (Cir. Ct. Ill.) (defective head gasket).

*Rowe v. UniCare Life & Health Ins. Co.*, No. 09-CV-02286 (N.D. Ill.) (data breach).

## Environmental

*Allen v. Monsanto Co.*, No. 041465 and Carter v. Monsanto Co., No. 00-C-300 (Cir. Ct. W.Va.) (dioxin release).

*Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.Va.) (tire fire).



*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish) (vinyl chloride water contamination).

*In Re Katrina Canal Breaches Litig.*, No. 05-4182 (E.D. La.). (Hurricanes Katrina and Rita).

*Morrow v. Conoco Inc.*, No. 2002-3860 G and *Thibodeaux v. Conoco Phillips C*o., No. 2003-481 F (14th J.D. Ct. La.) (air contaminant release).

### Government

Tobacco Farmer Transition Program, U.S. Dept. of Agriculture (tobacco buyout).

Homeless Shelter Compensation Program, City of New York.

*In re Residential Schools Class Action Litig.*, No. 00-cv-192059 (Ont. S.C.J.) (Canadian government, aboriginal abuse).

### Insurance

*Beasley v. Hartford Ins. Co. of the Midwest*, No. CV-2005-58-1 (Cir. Ct. Ark.) (homeowners insurance).

*Bond v. Am. Family Ins. Co.*, No. CV06-01249 (D. Ariz) (property insurance).

*Burgess v. Farmers Ins. Co.*, No. 2001-292 (Dist. Ct. Okla.) (home owners insurance).

*Desportes v. Am. General Assurance Co.*, No. SU-04-CV-3637 and *Carter v. North Central Life Ins.* Co. (Ga. Super. Ct.) (credit premium insurance).

*Fogel v. Farmers Group, Inc.*, No. BC300142 (Super. Ct. Cal.)(management exchange fees).

*First State Orthopaedics v. Concentra, Inc.*, No. 2.05-CV-04951-NS (E.D. Pa.) (PPO).

*Froeber v. Liberty Mutual Fire Ins. Co.*, No. 00C15234 (Cir. Ct. Ore.) (PPO).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.) (cancer insurance).

*Gunderson v. AIG Claim Services, Inc.*, No. 2004-002417 (14th Jud. D. Ct. La.) (PPO).

*Gunderson v. F.A. Richard & Associates, Inc.*, No. 2004-2417-D. (Cir. Ct. 14th Jud. D. Ct. La.) (PPO).

*Hunsucker v. Am. Standard Ins. Co. of Wisc.*, No. CV-2007-155-3 (Cir. Ct. Ark) (bodily injury claims).

*Johnson v. Progressive Casualty Ins., Co.*, No. CV-2003-513 (Cir. Ct. Ark.) (automobile insurance).

*Morris v. Liberty Mutual Fire Ins. Co.*, No. CJ-03-714 (D. Okla.) (homeowners insurance).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co.*, No. 06-5530 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Reynolds v. The Hartford Fin. Servs. Group, Inc.*, No. CV-01-1529-BR (D. Ore) (homeowners insurance).



*Shaffer v. Continental Casualty Co.*, No. 06-2235 (C.D. Cal.) (long term care insurance).

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.) (automotive premiums).

*Soto v. Progressive Mountain Ins. Co.*, No. 2002CV47 (Dist. Ct. Mont.) (personal injury insurance).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark) (bodily injury claims).

*Zarebski v. Hartford Ins. Co. of the Midwest*, No. CV-2006-409-3 (Cir. Ct. Ark.) (bodily injury claims).

### Securities

*In re Mutual Funds Investment Litigation,* MDL No. 1586 (Allianz Sub-Track, D. Md.).

*In re Parmalat Securities Litig.*, MDL No. 1653-LAK (S.D. N.Y.).

*In re Royal Ahold Securities and "ERISA" Litig.*, MDL No. 1539 (D. Md.).

### Warnings/Product Recall

*Bardessono v. Ford Motor Co.*, No. 32494 (Wash. Super. Ct.) (15-passenger van rollover warning).

Kerosene Recall, Pittsburgh Terminals Corp. (tainted Kerosene).

## Articles and Presentations

Shannon R. Wheatman & Katherine K. Kinsella, *International Class Action Notice*, *in* WORLD CLASS ACTION (Paul Karlsgodt ed., forthcoming 2012).

Shannon R. Wheatman, Webinar Speaker, *How to Craft Plain Language Privacy Notices*, Int'l Assoc. of Privacy Professionals (October 2011).

Shannon R. Wheatman, Speaker, *Improving Take-Up Rates in Class Actions*, The Canadian Institute's 12th Annual National Forum on Class Actions, Ontario, Canada (September 2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, *in* THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010).

Shannon R. Wheatman, Speaker, *Majority of Publication Class Action Notices Fail to Satisfy Plain*



*Language Requirements*, Clarity International Conference, Lisbon, Portugal (October 2010).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notification With Electronic Media: Emerging Legal Issues*, Stratford Publications (September 2010).

Shannon R. Wheatman & Thomas, E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVES SUITS 1 (2007).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* NOTRE DAME L. REV., 81 (2), 101, 161 (2006).

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform*. GEO. J. LEGAL ETHICS, 18 (4), 1359-1382 (2005).

Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation*. FEDERAL JUDICIAL CENTER (2005).

Elizabeth C. Wiggins & Shannon R. Wheatman, *So what's a concerned psychologist to do? Translating the research on interrogations, confessions, and entrapment into policy*, in INTERROGATIONS, CONFESSIONS AND ENTRAPMENT 265–280 (G. Daniel Lassiter ed., 2004).

Thomas E. Willging & Shannon R. Wheatman, *Attorneys' Experiences and Perceptions of Class Action Litigation in Federal and State Courts. A Report to the Advisory Committee on Civil Rules Regarding a Case Based Survey*. FEDERAL JUDICIAL CENTER (2003).

Shannon R. Wheatman, *Survey of Bankruptcy Judges on Effectiveness of Case-Weights*. FEDERAL JUDICIAL CENTER (2003).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Judicial Evaluation of Bankruptcy Judges*. FEDERAL JUDICIAL CENTER (2003).

Robert Niemic, Thomas Willging, & Shannon Wheatman, *Effects of Amchem/Ortiz on Filing of Federal Class Actions: Report to the Advisory Committee on Civil Rules*. FEDERAL JUDICIAL CENTER (2002).



Shannon Wheatman, Robert Niemic & Thomas Willging, *Report to the Advisory Committee on Civil Rules: Class Action Notices*. FEDERAL JUDICIAL CENTER (2002).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Implementation of Selected Amendments to Federal Rule of Civil Procedure 26 by United States Bankruptcy Courts*. FEDERAL JUDICIAL CENTER (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate*. LAW & HUM. BEH., 25(2), 165, 181(2001).

Shannon R. Wheatman, *Distance Learning in the Courts*. FEDERAL JUDICIAL CENTER (2000).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?* PSYCHOL. PUB. POL'Y & L., 6, 655, 676 (2000).

## Court Testimony

*PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.).

*Guidry v. American Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark).

*Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

## Depositions

*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

## Judicial Comments

*Kramer v. B2Mobile, LLC*, No. 10-cv-02722 (N.D. Cal.).
"The Court approved Notice Plan to the Settlement Classes . . . was the best notice practicable under the circumstances, including comprehensive nationwide newspaper and magazine publication, website publication, and extensive online advertising. The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process." - Hon. Claudia A. Wilken (2012).

*Fogel v. Farmers Group, Inc.*, No. BC300142 (Super. Ct. Cal.).
"The Court further finds and confirms that the Individual Notice (including the Proof of Claim), the Summary Notice, the reminder postcard, and the notice methodology: (a) constituted the best practicable notice . . . ; (b) constituted noticed that was reasonably calculated under the circumstances



to apprise potential Class Members . . .; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice, and (d) met all applicable requirements of California law . . . ." - Hon. Laura Evans (2011).


*In re: M3Power Razor System Marketing & Sales Pract. Litig.*, MDL 1704 (D. Mass).
"The form, content, and method of dissemination of the notice given to the Settlement Class was adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Amended Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." - Hon. Douglas P. Woodlock (2011).


*Soto v. Progressive Mountain Ins. Co.*, No. 2002CV47 (Dist. Ct. Colo.).
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process . . . Finally, the Notice also contained a clear and concise Claim Form, and described a clear deadline and procedure for filing of claims. . . . Notice reached a large majority of the Class Members. The Court finds that such notice constitutes the best notice practicable." - Hon. J. Steven Patrick (2010).


*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co.*, No. 06-5530 (Civ. Dist. Ct., Orleans Parish).
"This notice methodology . . . constitutes reasonable and best practicable notice . . . constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and . . . meets the requirements of the United States Constitution, Louisiana law, the Federal Rules of Civil Procedure and any other applicable rules of the Court . . . "- Hon. Sidney H. Cates, IV (2010).


*In Re Katrina Canal Breaches*, No. 05-4182 (E.D. La.).
"The notice here was crafted by Shannon Wheatman, Ph.D., whose affidavit was received as evidence . . . . The entire notice was drafted in plain, comprehensible language . . . The Court finds this notice adequately reached the potential class. "- Hon. Stanwood R. DuVal, Jr. (2009).


*Jones v. Dominion Transmission Inc.*, No. 2.06-cv-00671 (S.D. W. Va.).
"The Parties' notice expert Shannon R. Wheatman, Ph.D. . . . testified that in this case . . . that the mailed notices reached approximately 95.4 percent of the potential class . . . I HOLD that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out." - Hon. Joseph R. Goodwin (2009).


*Guidry v. American Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.).



"The facts show that the notice plan . . . as adequate to design and implementation . . . Dr. Shannon R. Wheatman, a notice expert, also testified at the fairness hearing as to the sufficiency of the notice plan. Dr. Wheatman testified that the notice form, content, and dissemination was adequate and reasonable, and was the best notice practicable." - Hon. G. Michael Canaday (2008).

*Webb v. Liberty Mutual Ins. Co.*, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark).
"Ms. Wheatman's presentation today was very concise and straight to the point . . . that's the way the notices were . . . So, I appreciate that . . . Having admitted and reviewed the Affidavit of Shannon Wheatman and her testimony concerning the success of the notice campaign, including the fact that written notice reached 92.5% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class members who had an earlier opportunity to request exclusion but failed to do so . . . The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members." - Hon. Kirk D. Johnson (2008).

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.).
"Dr. Wheatman's affidavit was very informative, and very educational, and very complete and thorough about the process that was undertaken here. . .  So I have reviewed all of these documents and the affidavit of Dr. Wheatman and based upon the information that is provided . . . and the significant number of persons who are contacted here, 90 percent, the Court will issue the order." - Hon. Mike Salvagni (2008).

*Shaffer v. Continental Casualty Co.*, No. 06-2235 (C.D. Cal.).
"The Class Notice and the notice methodology implemented pursuant to the Settlement Agreement, as described in part in the Declarations of . . . Shannon Wheatman... constituted the best practicable notice. . . was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law." - Hon. Philip S. Gutierrez (2008).

*Gray's Harbor v. Carrier Corp.*, No. 05-05437(W.D. Wash.).
"The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process." - Hon. Ronald B. Leighton (2008).

*Beringer v. Certegy Check Servs., Inc.*, No. 8.07-cv-1434-T-23TGW (M.D. Fla.).
"The proposed form of notice and plan for publishing are reasonable and designed to advise members of the Settlement class of their rights . . . A nationally recognized notice specialist, Hilsoft Notifications,



has developed the comprehensive Notice Plan. Here, Notice is reasonably calculated to reach the maximum number of potential Settlement Class Members and, thus, qualifies as the best notice practicable. The Notice Plan here is designed to reach the maximum number of Class Members, and it is Plaintiffs' goal to reach at least 80% of the Class—an extraordinary result in consumer class action litigation." - Hon. Steven D. Merryday (2008).

*Palace v. DaimlerChrysler Corp.*, No. 01-CH-13168 (Cir. Ct. Ill.).
"The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process . . ." – Hon. Mary Anne Mason(2008).

*Johnson v. Progressive Casualty Ins., Co.*, No. CV-2003-513 (Cir. Ct. Ark.).
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated . . . Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable . . . The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process." - Hon. Carol Crafton Anthony (2007).

*Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).
"[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process . . . So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter." - Hon. Joe Griffin (2007).

## Education and Experience

*Education*

Ph.D., Social Psychology, 2001; The University of Georgia, Athens, GA
Dissertation Title: *The effects of plain language drafting on layperson's comprehension of class action notices.*

M.S., Social Psychology, 1999; The University of Georgia, Athens, GA



Thesis Title: *Effects of verdict choice, dispositional instructions, opportunity to deliberate, and locus of control on juror decisions in an insanity case.*

M.L.S., Legal Studies, 1996; The University of Nebraska-Lincoln, Lincoln, NE

B.A., Psychology, 1993; Millersville University of Pennsylvania, Millersville, PA
Honor's Thesis Title: *The effects of inadmissible evidence and judicial admonishment in individual versus group decisions in a mock jury simulation.*

*Related Experience*

Vice President, Notice Director, Hilsoft Notifications
Souderton, PA
2004-2009

Prior to joining Kinsella Media, Dr. Wheatman was the Vice President and Notice Director at Hilsoft Notifications, a legal notification firm.

Research Associate, Federal Judicial Center
Washington, DC
2000-2004

The Federal Judicial Center is the education and research agency for the Federal Courts. The Research Division performs empirical and explanatory research on federal judicial processes and court management. Dr. Wheatman worked with the Civil Rules Advisory Committee on a number of class action studies and with the Bankruptcy Administration Committee on judicial evaluations.

*Supplementary Background*

Dr. Wheatman has a strong statistical background, having completed nine graduate level courses as well as teaching undergraduate statistics at the University of Georgia.  She is also a member of several plain language organizations, including the Center for Plain Language, Clarity, and Scribes.



# EXHIBIT B

*IN RE: NETFLIX PRIVACY LITIGATION*

## Facebook Ad

**[www.VideoPrivacyClass.com](http://www.VideoPrivacyClass.com)**



**Are you a Current
or Former Netflix
Subscriber?
A Class Action
Settlement Could
Affect You.**

# EXHIBIT C

To:
From: Online DVD Class Action Administrator
Subject:  Video Privacy Lawsuit – Current and Former Netflix Subscribers

## If You Are a Current or Former Netflix Subscriber
## A Class Action Settlement Could Affect You

*Para una notificación en Español, llamar 1-800-000-0000 o visitar www.VideoPrivacyClass.com*

Records show that you were a Netflix subscriber as of Month 00, 2011.  We are emailing to tell you about a Settlement that may affect your legal rights.  Please read this email carefully.   Go to www.VideoPrivacyClass.com for more information.

A Settlement has been reached in a class action lawsuit that claims Netflix unlawfully kept and disclosed information, including records on the movies and TV shows its customers' viewed.  Netflix denies that it has done anything wrong.

### What does the Settlement provide?

Netflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History (that is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix for at least 365 days, with some exceptions.

In addition, Netflix will pay $9 million into a Settlement Fund to:

- Make donations to Court-approved not-for-profit organizations, institutions, or programs.
- Pay notice and settlement administration expenses.
- Pay attorneys' fees of up to 25% or $2.25 million of the Settlement Fund, plus up to $25,000 in expenses.
- Pay a total incentive award of $30,000 to the Named Plaintiffs.

Proposals from potential donation recipients will be sought, and, after consideration, recommendations will be made to the Court.  A list of the proposed donation recipients will be posted on the website.

### Your Options

If you do nothing, you will remain in the Settlement and your rights will be affected.  If you do not want to be included, you must exclude yourself by **Month 00, 2012**.  If you exclude yourself you will keep your right to sue Netflix about the claims in this lawsuit.  If you remain in the Settlement, you can object to it by **Month 00, 2012**.

The Court will hold a hearing on **Month 00, 2012** to consider any objections, whether to approve the Settlement, award attorneys' fees, and incentive award. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

## For More Information:     1-800-000-0000     www.VideoPrivacyclass.com
## Netflix Lawsuit, PO Box 0000, City, ST 00000

# EXHIBIT D

# If You Are a Current or Former Netflix Subscriber

## A Class Action Settlement Could Affect You

A Settlement has been reached in a class action lawsuit that claims Netflix unlawfully kept and disclosed information, including records on the movies and TV shows its customers' viewed. Netflix denies that it has done anything wrong.

### Who's included?

You are included if you are a current or former Netflix subscriber as of **Month 00, 2012** and you live in the U.S. or its territories.

### What does the Settlement provide?

Netflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History (that is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix for at least 365 days, with some exceptions.

In addition, Netflix will pay $9 million into a Settlement Fund to:

- Make donations to Court-approved not-for-profit organizations, institutions, or programs.
- Pay notice and settlement administration expenses.
- Pay attorneys' fees of up to 25% or $2.25 million of the Settlement Fund, plus up to $25,000 in expenses.
- Pay a total incentive award of $30,000 to the Named Plaintiffs.

Proposals from potential donation recipients will be sought, and, after consideration, recommendations will be made to the Court. A list of the proposed donation recipients will be posted on the website.

### Your Options

If you do nothing, you will remain in the Settlement and your rights will be affected. If you do not want to be included, you must exclude yourself by **Month 00, 2012**. If you exclude yourself you will keep your right to sue Netflix about the claims in this lawsuit. If you remain in the Settlement, you can object to it by **Month 00, 2012**.

The Court will hold a hearing on **Month 00, 2012** to consider any objections, whether to approve the Settlement, award attorneys' fees, and incentive award. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

_____

## For more information: 1-000-000-0000
## www.VideoPrivacyClass.com

# EXHIBIT E

United States District Court for the Northern District of California

# If You Are a Current or Former Netflix Subscriber

## A Class Action Settlement Could Affect You

*A Federal Court authorized this Notice. It is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit that claims Netflix unlawfully kept and used customer movie and television viewing information.  Netflix denies that it has done anything wrong.

- The Settlement includes current and former Netflix subscribers as of Month 00, 2012 who live in the U.S. or its territories.

- Your legal rights are affected whether or not you act. This Notice includes information on the Settlement with Netflix.  Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **EXCLUDE YOURSELF** | This is the only option that allows you to keep any rights you currently have to sue Netflix about the claims in this case. |
| **OBJECT** | Write to the Court about why you do not like the Settlement.  You must remain in the Settlement Class to object to the Settlement.  After filing a written submission, you may also appear at the Final Approval Hearing. |
| **DO NOTHING** | You will give up your rights to sue Netflix about the claims in this case. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

| **What This Notice Contains** |
|---|

**Basic Information**……………………………………………………………..…PAGE 3
    1.  Why is there a notice?
    2.  What is a class action lawsuit?
    3.  What is this lawsuit about?

**Who is Included in the Settlement**……………………….…………………...…PAGE 3
    5.  Who is included in the Settlement?
    6.  What does the Settlement provide?

**Remaining in the Class**………………………………….…………………………PAGE 4
    7.  What am I giving up if I stay in the Class?
    8.  What happens if I do nothing at all?

**Excluding Yourself from the Settlement**……………….…………………….…..…PAGE 5
    9.  How do I get out of the Settlement Class?
    10. If I don't exclude myself, can I sue the Defendants for the same thing later?

**Objecting to the Settlement**…………………………………….…..…….…….…..…PAGE 5
    11. How can I object to the Settlement?
    12. What's the difference between objecting and excluding myself from the Settlement?

**Who is Representing You**………………………….……………………….....…PAGE 6
    13. Who represents the Settlement Class?
    14. How will the lawyers be paid?

**The Court's Final Approval Hearing**….………………………………….....…PAGE 7
    15. When and where will the Court hold a hearing on the fairness of the Settlement?
    16. Do I have to come to the fairness hearing?  May I speak at the hearing?

**Getting More Information**………………………………………………….……PAGE 7
    17. Where do I get additional information?

## BASIC INFORMATION

| **1.   Why is there a notice?** |
| --- |

A Court authorized this Notice because you have a right to know about a proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to give final approval to the Settlement.  This Notice explains the lawsuit, the Settlement, and your legal rights.

The Court in charge of the case is the United States District Court for the Northern District of California.  The case is called *In re Netflix Privacy Litigation*, No. 5:11-cv-00379-EJD.  The people who sued are called the Plaintiffs.  The Defendant is Netflix, Inc. ("Netflix").

| **2.   What is a class action lawsuit?** |
| --- |

A class action is a lawsuit in which one or more plaintiffs sue on behalf of a group or a "class" of people who have similar claims. In this case several former Netflix subscribers (the "Named Plaintiffs"), have sued Netflix on their own behalf and on behalf of other subscribers.  In a class action, the court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

| **3.   What is this lawsuit about?** |
| --- |

The lawsuit claims that Netflix kept and disclosed information, including records on the movies and TV shows its customers' viewed, in violation of the Video Privacy Protection Act and other laws.

The Court has not decided in favor of either side in the case.  Netflix has denied that it did anything wrong.  The Plaintiffs and their attorneys believe that the Settlement is in the best interests of the Settlement Class because it provides an appropriate recovery for Settlement Class members now while avoiding the risk, expense, and delay of pursuing the case through trial and any appeals.  Defendant is settling to avoid the expense, inconvenience, and risk and disruption of litigation.

## WHO IS INCLUDED IN THE SETTLEMENT

| **4.   Who is included in the settlement?** |
| --- |

The Settlement Class includes anyone in the U.S. or its territories who is a current or former Netflix subscriber as of Month 00, 00000.

The Settlement Class does not include: (1) the Settlement Administrator, (2) the Mediator, (3) any respective parent, subsidiary, affiliate or control person of the Defendant or its officers,

directors, agents, servants, or employees as of the date of filing of the Action, (4) any judge presiding over the Action and the immediate family members of any such Person(s), (5) persons who execute and submit a timely request for exclusion, and (6) all persons who have had their claims against Defendant fully and finally adjudicated or otherwise released.

| **5.   What does the settlement provide?** |
|---|

**A. Injunctive Relief**.   Netflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History (that is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix for at least 365 days, subject to certain exceptions.   Full details about the injunctive relief under the Settlement are in Sections 2.1 and 2.2 of the Settlement Agreement, which can be found by going to www.VideoPrivacyClass.com.

**B. Payment to the Settlement Fund**.   Netflix has also agreed to establish a $9 million Settlement Fund that, subject to Court approval, will be used to: (1) make donations to not-for-profit organizations, institutions and/or programs approved by the Court, (2) pay notice and settlement administration expenses, (3) pay the Fee Award (attorneys' fees and out of pocket costs) to Class Counsel, and (4) pay a total incentive award of $30,000 to the Named Plaintiffs ($5,000 each) for their services in helping to settle this case.   The Parties have agreed that Netflix will not oppose plaintiffs' request for attorney's fees up to 25% of the Settlement Fund (or $2,250,000), plus up to $25,000 for out of pocket costs.

Any money remaining after paying settlement administration expenses, the attorneys' fees and costs to Class Counsel, and the incentive awards, will be donated to Court-approved, not-for-profit organizations, institutions, or programs.

Proposals from potential donation recipients will be sought, and, after consideration, recommendations will be made to the Court.   A list of the proposed donation recipients will be posted on www.VideoPrivacyClass.com by Month 00, 0000.   Full details about the process for selecting recipients are in Section 2.4.3 of the Settlement Agreement, which is available at www.VideoPrivacyClass.com.

## REMAINING IN THE CLASS

| **6.   What am I giving up if I stay in the Class?** |
|---|

If the Settlement becomes final, you will give up your right to sue Netflix for the claims being resolved by this Settlement.   The specific claims you are giving up against Netflix are described in Section 3 of the Settlement Agreement.   You will also be "releasing" Netflix and all related people as described in Section 3 of the Settlement Agreement. Unless you exclude yourself (*see* Question 8), you are "releasing" these claims.   The Settlement Agreement is available at www.VideoPrivacyClass.com.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully.  If you have any questions, you can talk to Class Counsel listed in Question 12 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

| 7.   What happens if I do nothing at all? |
|---|

If you do nothing, you will not be able to start a lawsuit or be part of any other lawsuit against Netflix for the claims being resolved by this Settlement.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| 8.   How do I get out of the Settlement Class? |
|---|

To exclude yourself from the Settlement, you must send a letter (or request for exclusion) by mail stating that you want to be excluded from the Class in *In re Netflix Privacy Litigation*, No. 5:11-cv-00379-EJD.  Your exclusion request must include your name, address, telephone number, signature, and a signed statement to the effect that: "I/We hereby request to be excluded from the proposed Settlement Class in In re Netflix Privacy Litigation."   You must mail your exclusion request no later than **Month 00, 0000** to:

Netflix Privacy Settlement Administrator
PO Box 0000
City, ST 00000-0000

| 9.   If I don't exclude myself, can I sue Netflix for the same thing later? |
|---|

No.  Unless you exclude yourself, you give up any right to sue Netflix for the claims being resolved by this Settlement, including the alleged retention and disclosure of Plaintiffs' and the Settlement Class's personally identifiable information and Entertainment Content Viewing History.

## OBJECTING TO THE SETTLEMENT

| 10. How can I object to the Settlement? |
|---|

If you do not exclude yourself from the Settlement Class, you or your attorney can object to the Settlement and have the right to appear before the Court to do so**.**  The objection must be in writing and include the case name *In re Netflix Privacy Litigation*, No. 5:11-cv-00379-EJD, and: (a) your full name, current address and telephone number; (b) a statement that you are a member of the Settlement Class; (c) the specific grounds for your objection; (d) all documents or writings that you want the Court to consider; and (e) a notice of intention to appear (if any).

If you want to appear and speak at the Fairness Hearing to object to the Settlement, with or without a lawyer (explained below in the answer to Question 15), you must say so in your letter

or brief.  Mail the objection to these four different places postmarked no later than **Month 00, 2012**:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court<br>United States District<br>Court for The Northern<br>District of California<br>(San Jose Division)<br>Robert F. Peckham<br>Federal Building<br>280 South 1ST Street<br>San Jose, CA 95113 | Jay Edelson<br>Rafey S. Balabanian<br>Ari J. Scharg<br>Chandler R. Givens<br>Edelson McGuire LLC<br>350 N. LaSalle, Suite 1300<br>Chicago, IL 60654 | Keith E. Eggleton<br>Rodney Strickland<br>Dale Bish<br>Wilson Sonsini Goodrich<br>& Rosati<br>650 Page Mill Road<br>Palo Alto, CA 94304 |

**11. What's the difference between objecting and excluding myself from the Settlement?**

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class.  Excluding yourself from the Class is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## WHO IS REPRESENTING YOU

**12. Who represents the Settlement Class?**

**A.  Class Representatives**.  For purposes of the Settlement, the Court has appointed Plaintiffs Jeff Milans and Peter Comstock as Class Representatives.  There are four other named plaintiffs who filed claims. Under the Settlement Agreement, each of the six named plaintiffs may seek to share in an incentive award of $30,000.

**B.  Settlement Class Counsel.**  The Court has approved the appointment of Jay Edelson, Rafey S. Balabanian, Ari J. Scharg, and Chandler R. Givens of Edelson McGuire LLC as Settlement Class Counsel.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**13. How will the lawyers be paid?**

From the beginning of the case in 2011 to the present, Class Counsel have not received any payment for their services in prosecuting the case or obtaining the Settlement, and have not been reimbursed for any out-of-pocket expenses.  Class Counsel will ask the Court for an award of attorneys' fees of 25% of the Settlement Fund and up to $25,000 in out of pocket expenses. Netflix has agreed not to oppose Class Counsel's application for an award of attorneys' fees if limited to this amount.  If the Court approves the attorneys' fee request, it will be paid from the

Settlement Fund established by Netflix.  The Settlement Class members will not have to pay anything toward the fees or expenses to Class Counsel.  You may hire your own lawyer to represent you in this case if you wish, but it will be at your own expense.

## THE COURT'S FINAL APPROVAL HEARING

### 14. When and where will the Court hold a hearing on the fairness of the Settlement?

A fairness hearing has been set for **Month 00, 2012** at 00:00 x.p. before Judge Edward J. Davila in his courtroom at the United States District Court for the District of the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, Courtroom 4 – 5th Floor, San Jose, California 95113.  At the hearing, the Court will hear any objections to the proposed settlement, including the amount requested by Settlement Class Counsel for attorneys' fees and expenses.  You do not need to attend this hearing.  You also do not need to attend to have your objection considered by the Court.

**Note:**  The date and time of the fairness hearing are subject to change by Court Order.  Any changes to the date and time of the fairness hearing will be posted to the Settlement Website.

### 15. Do I have to come to the fairness hearing?  May I speak at the hearing?

You do not need to attend the fairness hearing to remain a class member.  You or your own lawyer may attend the hearing if you wish, at your own expense.

If you do not exclude yourself from the Settlement Class, you may ask the Court for permission to speak at the hearing concerning the proposed Settlement or the application of Settlement Class counsel for attorneys' fees and expenses by following the instructions in Question 10 above.

## GETTING MORE INFORMATION

### 16. Where do I get additional information?

This notice provides only a summary of the matters relating to the Settlement.  For more detailed information, you may wish to review the Settlement Agreement.  You can view the Settlement Agreement and get more information at www.VideoPrivacyClass.com.  You can also get more information by calling toll-free 1-800-000-0000.  If you would like additional information, you can write to Settlement Class Counsel at the address listed in Question 10.

**Please Do <u>Not</u> Contact the Court, the Judge, or the
Defendant with Questions about the Settlement**