# Marguerite Arnold

2901 N. Davidson Street, #136
Charlotte, NC 28205
(980) 406-2383
marnold222@gmail.com

July 31, 2012

Case Name: re Netflix Privacy Litigation, No. 5:11-cv-00379-EJD

Clerk of the Court
United States District Court for
The Northern District of California (San Jose Division)
Robert F. Peckham Federal Building
280 South 1st Street
San Jose, CA 95113

Dear Sirs/Mesdames:

I believe I am a class member of the aforementioned settlement. However, I would like to object in the following manner (and please forgive any non lawyerly mistakes) this is based on my legislative/IT/civil rights and banking law rather litigation experience.

1. What is so implicitly damaging about this practice is not just violation of privacy, but also other laws that automatically tie into such aggregations of data, and data mining accordingly. These include under California State Law, the Unruh Act, and on the federal level, the ADAA, as well as potentially Hipaa if not Title VII and the ADEA. There are also people who use the service for work as opposed to "entertainment" and this too is problematic. Patterns of use and aggregation of such data can be profoundly and literally unconstitutional. Is this fine big enough to safeguard that Netflix won't do this again?
2. While I could see that triers of fact would be concerned about long term storage of financial data after accounts are terminated, what I see as far more damaging is that such information is kept in apparently unsecure and easy to access databases that are unencrypted and potentially such information continues to be of financial benefit to Netflix or presumably anyone it sells it to. In banking law, in particular, there are under SOX (I believe) regulations requiring 7 year storage of financial data, so this long term storage is not necessarily unknown, the problem is accessing it, and obviously drawing additional information about users that reaches far beyond their "privacy" if not "financial data security." Including by law enforcement (i.e. see previous case law forbidding the FBI accessing library cards and checkouts of books (remember those?)
3. While these services are promoted even during membership by Netflix to encourage "user accessibility" and "customization" there are some who believe that this is actually a disservice to customers at this point and makes it harder to find content that is "off pattern," as most inquisitive minds do. Or lead to a kind of censorship where Netflix uses "user preference" to select out material that might not be "popular" but is of great interest to a particular niche within a niche. Furthermore, there is clear political bias in just the documentary section. For example, there is only one Michael Moore documentary on the site (his least known one) but the only anti Moore documentary ever made is also on site.
4. I am extremely concerned about negative disparate impact on several levels.
5. I would like make a suggestion about where some of these funds go. Specifically the Electronic Privacy Foundation and others with long records of fighting for online accessibility and consumer protection.

Sincerely,

Marguerite Arnold