Jacob L. Lemmons
1606 S. Palisade St.
Wichita, KS 67213-5124
316-267-5459



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

IN RE: NETFLIX PRIVACY LITIGATION

Case No. 5:11-CV-00379-EJD
Hon. Edward J. Davila

Objection to the proposed Settlement Agreement

## INTRODUCTION

The Class Counsel[1] claims that the proposed settlement conditions "are fair, reasonable, and adequate to the Class, and that it is in the best interests of the Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement" (Settlement Agreement, page 3, lines 17-20)[2,3]. This can't be further from the truth.

The settlement is great for the Defendant because it releases a multitude of claims with the potential for significant monetary damages. The settlement is great for the Class Counsel because they receive unconditioned compensation. This settlement is great for the Class Representatives, as they receive substantial compensation for their efforts. However, it is an exceedingly poor resolution for the remainder of the Settlement Class.

### I. I am a Class Member.

My full name is Jacob Lynn Lemmons. My mailing address is 1606 S. Palisade St., Wichita, KS, 67213-5124. My telephone number is 316-267-5459. I am a former customer of Netflix, and my email address registered with Netflix is rapajya-netflix@yahoo.com.

On approximately August 1, 2012, I received an email from the "Online DVD Class Action Administrator" stating that "Our records show that you were a current or former Netflix subscriber as of July 5, 2012"[2].

Therefore, I qualify as a Class Member and have standing to object to the settlement.

removed are disassociated from the relevant entries on this page. However, it is very easy to associate them again – all you need to do is tape the phone number column back to the original page.

Modern database management systems (DBMS) make such a decoupling and subsequent recoupling even easier for trained personnel to perform than the example given above. A few commands in the Structured Query Language (SQL) appropriate to the DBMS being used would decouple the data, save the information from the linking table, and then create a "trigger" to reassociate the data at a later time with no further intervention required on the part of the database administrator.

This section of the Settlement Agreement (section 2.1, pages 10-11)[2,3] as it is currently written provides ephemeral relief to the Class. Therefore, I respectfully reiterate my petition that the Court withhold settlement approval until the "Injunctive Relief" section of the Settlement Agreement is amended to compel Netflix to *destroy* the Entertainment Content Viewing History for all former users who have not been a subscriber for at least 365 days, not just merely decouple it, as per 18 U.S.C. § 2710 (e)[2,4].

### V. The proposed Injunctive Relief "exception" clause is not strong enough.

The "exception" clause in the Injunctive Relief section (Settlement Agreement, page 11, section 2.2)[2,3] is very weak and provides little protection for Class Members because it doesn't require Netflix to provide the user with an option to deny consent to data storage. It is easy to modify the service cancellation page with text such as "by clicking on the Cancel button, you provide Netflix with express consent to store your information", without any meaningful way to opt out. The "exception" clause needs to be modified to make sure that the user would still have the ability to cancel the service without being forced to provide consent.

Also, Netflix should be prohibited from requiring users to provide consent while signing up for the service through amended Terms and Conditions with text such as "you agree and provide express consent that your data will be retained after you cancel the subscription". Corporations use such contracts of adhesion to twist users' arms with regularity. There is nothing in the current Settlement Agreement which would prevent Netflix from doing that.

Therefore, I petition the Court to withhold settlement approval until the Settlement Agreement is amended so that the "Injunctive Relief" section makes it clear that users must be given a choice as to whether they consent to the storage of their data after subscription cancellation, that the choice should only be made during the cancellation, and that the process of cancellation should not be otherwise affected by the users' choice in this matter.

### VI. The proposed Settlement Fund is not in the interests of the Class.

The Settlement Agreement specifies that a nine million dollar fund is to be established, funded by Netflix (Settlement Agreement, section 2.3, pages 12-13)[2,3], and to be distributed to non-profits which "educate users, regulators, and enterprises regarding issues relating to protection of privacy, identity, and personal information through user control, and to protect users from online

threats" (Settlement Agreement, section 2.4.1, page 13)[2,3]. While subsequent sections of the Settlement Agreement make it clear that efforts were made to make the selection of Cy Pres Recipients as unbiased as possible, it is difficult to see any value from such distribution for Class Members.

Firstly, I would like to point out that nothing in the Settlement Agreement bars Netflix from raising user subscription fees to cover payments into the Settlement Fund. Considering that Netflix is a for-profit entity and would desire to somehow compensate for this loss, the chance of potential fee hikes is high. This would mean that Class Members who are either current Netflix subscribers, or who consider rejoining Netflix have a good chance to end up in a worse position than they were before the settlement because their fees have been raised as a result of the settlement.

Secondly, and more importantly, the non-profit selection and distribution has very little connection to the interests of the Class, or the Action itself. According to the Complaint (page 1)[2,3], this Action appears to be about the alleged non-compliance by Netflix with Federal and California State laws. As indicated above, the Cy Pres Recipients are supposed to "educate users, regulators, and *enterprises* regarding issues relating to protection of privacy, identity, and personal information . . . ." If Netflix, or other for-profit enterprises need to be educated about relevant laws, this education should not be at Class Members' expense. The Defendant's representation in this Action by the firm of Wilson, Sonsini, Goodrich, & Rosati proves that they can afford to have legal counsel, whose job it should be to do just that.

Therefore, I petition the Court to reject the settlement until the Settlement Fund section of the Settlement Agreement is amended to represent the interests of the Class.

### VII. The Class Counsel representation of the Class is not adequate.

The Class Counsel considered the terms of the settlement "fair, reasonable, and adequate to the Class, and that it is in the best interests of the Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement" (Settlement Agreement, page 3)[2,3]. I see how it is adequate for the Defendant, for the Class Counsel, and for the Class Representatives, but I fail to see how it is adequate for the remaining Class Members. If my attorney negotiated a settlement in a hypothetical case, where he'd get $2.5 million and I'd get nothing, I would question who my attorney actually represented.

The real problem that I see with this Settlement Agreement is that it makes no sense for Class Members to not withdraw from the class. Those Class Members who exclude themselves would be in the best position – they will get the same, miniscule benefits of the Settlement as those who stay (little to no modification of Netflix records, no guarantee of those modifications being permanent as required by law, and money given to charities who are supposed to teach companies how to honor customers' privacy), and they will retain the right to sue Netflix again. I am sure that if the Settlement was opt-in rather than opt-out, fewer than 1% of Class Members would choose to be a party to this Settlement Agreement. As such, it is very difficult to say that Class Counsel did a reasonable job of representing the Class. How could they, if those who

exclude themselves from the settlement would actually be in a better position than those who accept the Settlement Agreement?

Therefore, I petition the Court to reject the proposed Settlement Agreement until such time as there is an actual benefit to Class Members if they choose to not exclude themselves from the Class.

## Conclusion

This settlement has something for everyone, with the notable exception of the Settlement Class, which it betrays. The Court should reject this proposed Settlement Agreement.

Dated: 10-08-12   By: Jacob L. Lemmons

## Objection Footnotes

1. This document uses definitions of special terms as identified in the Settlement Agreement, pages 4 and 9[2, 3].
2. As per section 5.5 of the Settlement Agreement[3], located on page 18 of said document, I have enclosed copies of all relevant documents cited in my objection.
3. As I expect that the full text of the Settlement Agreement and the Complaint are readily available to all Parties and the Court, I have only enclosed those pages of these documents which are directly relevant to my objection in order to reduce mailing costs and needlessly duplicated paperwork. My copy of the Settlement Agreement was obtained from http://www.videoprivacyclass.com/SettlementAgreement.aspx. My copy of the Complaint was obtained from http://www.videoprivacyclass.com/Complaint.aspx.
4. The enclosed text of 18 U.S.C. § 2710 was extracted from a larger document of law hosted at http://uscode.house.gov/download/pls/18C121.txt .
5. The enclosed text of the Netflix Privacy Policy was captured from the Defendant's website at https://signup.netflix.com/PrivacyPolicy. It was collected on 10-05-2012. Only the first page of this policy was included, as the relevant text is in the third paragraph under the heading "Collection and Use of Information".

## Certificate of Service

I hereby certify that on October 8, 2012, I caused true and accurate copies of this document to be sent to the following addresses by USPS Certified Mail:

**Clerk of the Court**
United States District Court for
The Northern District of California (San Jose Division)
Robert F. Peckham Federal Building
280 S. 1st St.
San Jose, CA  95113

**Settlement Class Counsel**
Jay Edelson, Rafey S. Balabanian, Ari J. Scharg, Chandler R. Givens
Edelson McGuire, LLC.
350 N. LaSalle, Ste. 1300
Chicago, IL  60654

**Defendant's Counsel**
Keith E. Eggleton, Rodney G. Strickland, Dale R. Bish
Wilson, Sonsini, Goodrich, & Rosati, P.C.
650 Page Mill Rd.
Palo Alto, CA  94304

_____
Jacob L. Lemmons

manner and upon the terms and conditions set forth in this Agreement. This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of Netflix with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

WHEREAS, Plaintiffs Milans and Comstock believe that the claims asserted in the Action against Netflix have merit and that they would have ultimately been successful in certifying the proposed classes under Rule 23 and in prevailing on the merits at summary judgment or trial. Nonetheless, Plaintiffs and Class Counsel recognize and acknowledge that Netflix has raised factual and legal defenses in the Action that present a risk that Plaintiffs may not prevail. Plaintiffs and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against Netflix through class certification, trial, and any subsequent appeals. Plaintiffs and Class Counsel have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulties inherent in such litigation. Therefore, Plaintiffs believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms set forth herein.

WHEREAS, based on their evaluation, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Class, and that it is in the best interests of the Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among Plaintiffs Milans and Comstock and Netflix, by and through their undersigned counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Agreement, in consideration of the benefits flowing to the Parties from this Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

1. **DEFINITIONS**

   As used in this Settlement Agreement, the following terms have the meanings specified below:

   1.1 "*Action*" or "*Litigation*" means the putative class action pending in the United States District Court for the Northern District of California and captioned *In re Netflix Privacy Litigation*, Case No. 5:11-cv-00379-EJD.

   1.2 "*Class Counsel*" means Edelson McGuire LLC.

   1.3 "*Class Representatives*" means Jeff Milans and Peter Comstock.

   1.4 "*Complaint*" means the Amended Consolidated Class Action Complaint filed in this Litigation (Dkt. No. 61.)

   1.5 "*Court*" means the United States District Court for the Northern District of California, the Honorable Edward J. Davila presiding, or any judge who shall succeed him as the Judge in this Action.

   1.6 "*Cy Pres*" or "*Cy Pres Recipients*" means the non-profit organizations that, subject to Court approval, may receive monies pursuant to this Agreement.

   1.7 "*Defendant*" means Netflix, Inc., a Delaware corporation.

   1.8 "*Defense Counsel*" means Wilson Sonsini Goodrich & Rosati, PC.

   1.9 "*Effective Date*" means the date one (1) day after which all of the events and conditions specified in Subsection 10.1 have been met and have occurred.

   1.10 "*Entertainment Content*" means motion pictures, television shows, and other visual entertainment content (i.e., titles), whether delivered by digital video disc (commonly referred to as a "DVD"), high definition digital video disc (commonly referred to as an "HD-DVD"), Blu Ray disc, or similar audio-visual material, or by streaming the content over the Internet.

   1.11 "*Entertainment Content Viewing History*" means any data, record, or information identifying specific Entertainment Content as having been rented, purchased, obtained, viewed, streamed, rated, or requested by a Subscriber.

   1.12 "*Escrow Account*" means the separate, interest-bearing escrow account to be

performing the services it is obligated to perform under this Agreement.

1.36 *"Settlement Administrator"* means the Person selected by the Settling Parties, subject to approval of the Court, to oversee the distribution of the Notice in accordance with the Notice Plan, distribution of the CAFA notice, as well as performing the services it is obligated to perform under this Agreement or otherwise ordered by the Court.

1.37 *"Settlement"* means the settlement contemplated by this Agreement.

1.38 *"Settlement Class"* or *"Class"* means all Subscribers as of the date of entry of Preliminary Approval. Excluded from the Settlement Class are the following: (i) the Settlement Administrator, (ii) the Mediator, (iii) any respective parent, subsidiary, affiliate or control person of the Defendant or its officers, directors, agents, servants, or employees as of the date of filing of the Action, (iv) any judge presiding over the Action and the immediate family members of any such Person(s), (v) persons who execute and submit a timely request for exclusion, and (vi) all persons who have had their claims against Defendant fully and finally adjudicated or otherwise released.

1.39 *"Settlement Class Member"* or *"Class Member"* means a Person who falls within the definition of the Class as set forth above and who has not submitted a valid request for exclusion.

1.40 *"Settlement Website"* means the website to be created by the Settlement Administrator containing full details and information about the Settlement, including this Agreement and the Notice.

1.41 *"Subscriber"* means a Person in the United States or its territories who is, or at one or more times was, subscribed to Netflix.

1.42 *"Supporting Counsel"* means David C. Parisi and Suzanne Havens Beckman of Parisi & Havens LLP, Joseph J. Siprut of Siprut P.C., Sam Dua of Dua & Associates, PLLC, L. Timothy Fisher of Bursor & Fisher P.A., and Nadeem Faruqi of Faruqi & Faruqi, LLP.

1.43 *"Unknown Claims"* means claims that could have been raised in the Action and that the Plaintiffs, or any or all other Persons and entities whose claims are being released, or any of them, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or

CLASS ACTION SETTLEMENT AGREEMENT — - 9 - — CASE NO.: 5:11-cv-00379-EJD

its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released, also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever to settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Subsection.

2. **SETTLEMENT RELIEF**

2.1 **Injunctive Relief.** Within one (1) year of the Effective Date, and subject to the exceptions set forth in this Settlement Agreement, including Section 2.2 below, Netflix agrees to the following:

2.1.1 For those Subscribers who have not subscribed to Netflix for a period of 365 or more consecutive days as of the Effective Date and who did not rejoin Netflix subsequent to the Effective Date, Netflix will cause his or her Entertainment Content Viewing History to be decoupled from his or her Identification Information and Payment Method.

2.1.2 Netflix shall implement a data retention practice such that, for Subscribers

who have cancelled their Netflix subscription and have not been a Netflix subscriber for a period of 365 consecutive days, Netflix will cause his or her Entertainment Content Viewing History to be decoupled from his or her Identification Information and Payment Method. The parties acknowledge that many Subscribers cancel and rejoin Netflix on a frequent basis and therefore agree that the 365-day period described in this Subsection will commence on the Subscriber's most recent cancellation and will reset if the Subscriber rejoins Netflix within the 365-day period. The requirements of this Section 2.1.2 shall remain in effect and Netflix shall adhere to it for at least four (4) years from the Effective Date unless inconsistent with or otherwise permitted under any newly enacted or amended laws.

2.1.3 Netflix's performance of its obligations as outlined in Subsections 2.1.1 and 2.1.2, above, are subject to: (i) receiving confirmation from adverse parties in other pending cases against Netflix, or with the respective courts as needed, that performing such actions will not result in allegations of wrongful document destruction or spoliation, and (ii) any relevant document retention obligations imposed by litigation filed after the date that this Agreement is executed.

2.2 **Exceptions.** The obligations set forth in Section 2.1 shall not apply in the following circumstances:

2.2.1 If a Subscriber, at or after the time he or she cancels his or her subscription, provides express consent to allow Netflix to continue to associate his or her Entertainment Content Viewing History with his or her Identification Information and Payment Method, Netflix will be under no obligation to perform the actions described in Subsection 2.1.1 or 2.1.2, above, with respect to that Subscriber and any related account for which that Subscriber has authority to provide consent.

2.2.2 The obligations described in Subsection 2.1 do not apply to Netflix's non-U.S. operations.

2.2.3 If Netflix ceases operating its DVD-by-mail service within four (4) years from the Effective Date, Netflix will no longer be subject to the obligations described in

Subsections 2.1.1 and 2.1.2 as it pertains to non-Settlement Class members. Nothing herein shall relieve Netflix of its obligations to comply with any and all applicable laws. Nothing in this Subsection 2.2.3 shall relieve Netflix of its obligations under Subsection 2.1.1, 2.1.2, and 2.1.3 as to the Settlement Class.

2.3  **Settlement Fund.** Netflix agrees to pay and shall deposit in the Escrow Account, as set forth below, the total sum of Nine Million Dollars ($9,000,000.00) in cash as a Settlement Fund. The Settlement Fund will be used for payment of: (i) Settlement Administration Expenses, (ii) *cy pres* distributions to the proposed *cy pres* recipients, as approved by the Court, (iii) any Fee Award or costs awarded to Class Counsel, and (iv) any Incentive Award awarded to the Class Representatives or Plaintiffs.

2.3.1  Within ten (10) days after entry of the Preliminary Approval Order, the Settlement Administrator will establish the Escrow Account. Within ten (10) days after entry of the Preliminary Approval Order or within ten (10) days of receiving wiring instructions from the Settlement Administrator, whichever is later, Netflix shall deposit into the Escrow Account the first installment of the Settlement Fund in the amount of Four Million Five Hundred Thousand Dollars ($4,500,000.00).

2.3.2  Within thirty (30) days after the Effective Date, Netflix shall deposit into the Escrow Account the remaining balance of the Settlement Fund in the amount of Four Million Five Hundred Thousand Dollars ($4,500,000.00).

2.3.3  The interest earned on such sum shall accrue to the benefit of the Settlement Fund, and the interest shall be transferred to the *cy pres* recipients per Subsection 2.4 below. The Settlement Administrator will maintain control over and be responsible for all disbursements from the Escrow Account. Other than as expressly set forth in this Settlement Agreement, and subject to its right to repayment described in Section 9, Netflix shall have no responsibility to manage, oversee or invest the money in the Escrow Account following deposit. The Settlement Fund shall be the limit and full extent of Netflix's monetary obligation to the Plaintiffs, the Settlement Class, and Class Counsel. Netflix does not and shall have no other financial obligation under this Agreement, including but not

limited to any notice or administration expenses, the Fee Award, or Incentive Award. In addition, under no circumstances will Netflix have any liability for taxes or tax expenses under this Agreement.

2.3.4 The Escrow Account shall be completely exhausted and the Settlement Fund shall be paid out in full, and no monies shall revert to Netflix; provided, however, that in the event the Court rejects the Final Order and Judgment, or if the settlement is overturned or modified in a material way on appeal, all monies paid into the Escrow Account shall be returned to Netflix within ten (10) days after entry of an order in which the settlement was rejected, overturned or modified.

2.4 *Cy Pres*. After the Settlement Fund is used for payment of: (i) Settlement Administration Expenses, (ii) the Fee Award, and (iii) the Incentive Award, the balance of the Settlement Fund shall be distributed to the *Cy Pres* Recipients. The Parties agree that Plaintiffs shall designate the *Cy Pres* Recipients pursuant to the following parameters, and subject to Court approval:

2.4.1 The *Cy Pres* distribution shall be made to not-for-profit organizations, institutions, and/or programs that educate users, regulators, and enterprises regarding issues relating to protection of privacy, identity, and personal information through user control, and to protect users from online threats.

2.4.2 The designated *Cy Pres* Recipients shall have no valid objectionable affiliation with any party or counsel to the Action and Related Actions.

2.4.3 Upon execution of this Agreement by all signatories hereto, the Parties shall begin soliciting proposals for the nomination of *Cy Pres* Recipients. Proposals from potential not-for-profit organizations seeking nomination shall include the following detailed information:

(i) The organization's name and address;

(ii) A description of an established program currently undertaking policy or education efforts directed specifically at issues of technology, law, and privacy;

purpose of this Agreement. Netflix may exercise its right to terminate under this subsection by notifying Class Counsel of its election no later than seven (7) days after receipt of the list of Persons who opted out.

5.5 Settlement Class Members who have not requested exclusion from the Class shall have the right to appear if they have any objection to the Court granting Final Approval to this Agreement. Any objection to this Agreement must be in writing, filed with the Court, with a copy delivered to Class Counsel and Defense Counsel at the addresses set forth in the Notice. The written objection must include the Class Member's name and address, along with a clear statement of the basis for the objection, including any arguments, citations, and evidence supporting the objection (including copies of any documents relied on), state that he or she is a member of the Settlement Class, and provide a statement whether the objector intends to appear at the Final Approval Hearing with or without counsel. To be valid, the objection must be filed and sent to Class Counsel and Netflix's counsel on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice. Any Class Member who fails to timely file a written objection and notice of his or her intent to appear at the fairness hearing pursuant to this Subsection or as detailed in the Notice, shall not be permitted to object to this Settlement at the fairness hearing, and shall be foreclosed from seeking any review of this Settlement by appeal or other means.

5.6 The Parties shall have the right to respond to any objection no later than seven (7) days prior to the Final Approval Hearing by filing a response with the Court that shall also be served (by regular mail, hand or overnight delivery) on the objector (or counsel for the objector) and to counsel for the other Party in the Action.

6. **SETTLEMENT ADMINISTRATION**

6.1 The Settlement Administrator shall administer the relief provided by this Agreement in a rational, responsive, cost effective, and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class

SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

JAY EDELSON (jedelson@edelson.com)
RAFEY S. BALABANIAN (rbalabanian@edelson.com)
WILLIAM C. GRAY (wgray@edelson.com)
ARI J. SCHARG (ascharg@edelson.com)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NETFLIX PRIVACY LITIGATION | Case No. 5:11-cv-00379-EJD<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR:**<br><br>(1) **Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710;**<br><br>(2) **Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80;**<br><br>(3) **Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,** *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

# Jacob L. Lemmons

**From:** Online DVD Class Action Administrator [noreply@videoprivacyclass.com]
**Sent:** Wednesday, August 01, 2012 2:11 PM
**To:** rapajya-netflix@yahoo.com
**Subject:** Video Privacy Lawsuit -- Current and Former Netflix Subscribers

If You Are a Current or Former Netflix <http://www.VideoPrivacyClass.com> Subscriber A Class Action Settlement Could Affect You

Para una notificación en Español, llamar 1-866-898-5088 o visitar www.VideoPrivacyClass.com

Our records show that you were a current or former Netflix subscriber as of July 5, 2012. We are emailing to tell you about a Settlement that may affect your legal rights. Please read this email carefully. Go to www.VideoPrivacyClass.com for more information.

A Settlement has been reached in a class action lawsuit that claims Netflix unlawfully kept and disclosed information, including records on the movies and TV shows its customers viewed. Netflix denies that it has done anything wrong.

What does the Settlement provide?

Netflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History (that is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix subscriber for at least 365 days, with some exceptions.

In addition, Netflix will pay $9 million into a Settlement Fund to: • Make donations to Court-approved not-for-profit organizations, institutions, or programs. • Pay notice and settlement administration expenses. • Pay attorneys' fees of up to 25% or $2.25 million of the Settlement Fund, plus up to $25,000 in expenses. • Pay a total incentive award of $30,000 to the Named Plaintiffs.

Proposals from potential donation recipients will be sought, and, after consideration, recommendations will be made to the Court. A list of the proposed donation recipients will be posted on the website.

Your Options

If you do nothing, you will remain in the Settlement and your rights will be affected. If you do not want to be included, you must exclude yourself by November 14, 2012. If you exclude yourself you will keep your right to sue Netflix about the claims in this lawsuit. If you remain in the Settlement, you can object to it by November 14, 2012.

The Court will hold a hearing on December 5, 2012 to consider any objections, whether to approve the Settlement, award attorneys' fees, and incentive award. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

For more information: 1-866-898-5088      www.VideoPrivacyClass.com
PO Box 2750 Faribault, MN 55021-9750

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

```
                              18 USC 2710
-CITE-
    18 USC Sec. 2710                                  01/03/2012 (112-90)

-EXPCITE-
    TITLE 18 - CRIMES AND CRIMINAL PROCEDURE
    PART I - CRIMES
    CHAPTER 121 - STORED WIRE AND ELECTRONIC COMMUNICATIONS AND
                  TRANSACTIONAL RECORDS ACCESS

-HEAD-
    Sec. 2710. Wrongful disclosure of video tape rental or sale records

-STATUTE-
        (a) Definitions. - For purposes of this section -
          (1) the term "consumer" means any renter, purchaser, or
        subscriber of goods or services from a video tape service
        provider;
          (2) the term "ordinary course of business" means only debt
        collection activities, order fulfillment, request processing, and
        the transfer of ownership;
          (3) the term "personally identifiable information" includes
        information which identifies a person as having requested or
        obtained specific video materials or services from a video tape
        service provider; and
          (4) the term "video tape service provider" means any person,
        engaged in the business, in or affecting interstate or foreign
        commerce, of rental, sale, or delivery of prerecorded video
        cassette tapes or similar audio visual materials, or any person
        or other entity to whom a disclosure is made under subparagraph
        (D) or (E) of subsection (b)(2), but only with respect to the
        information contained in the disclosure.

        (b) Video Tape Rental and Sale Records. - (1) A video tape
    service provider who knowingly discloses, to any person, personally
    identifiable information concerning any consumer of such provider
    shall be liable to the aggrieved person for the relief provided in
    subsection (d).
        (2) A video tape service provider may disclose personally
    identifiable information concerning any consumer -
          (A) to the consumer;
          (B) to any person with the informed, written consent of the
        consumer given at the time the disclosure is sought;
          (C) to a law enforcement agency pursuant to a warrant issued
        under the Federal Rules of Criminal Procedure, an equivalent
        State warrant, a grand jury subpoena, or a court order;
          (D) to any person if the disclosure is solely of the names and
        addresses of consumers and if -
            (i) the video tape service provider has provided the consumer
          with the opportunity, in a clear and conspicuous manner, to
          prohibit such disclosure; and
            (ii) the disclosure does not identify the title, description,
          or subject matter of any video tapes or other audio visual
          material; however, the subject matter of such materials may be
          disclosed if the disclosure is for the exclusive use of
          marketing goods and services directly to the consumer;

          (E) to any person if the disclosure is incident to the ordinary
        course of business of the video tape service provider; or
          (F) pursuant to a court order, in a civil proceeding upon a
        showing of compelling need for the information that cannot be
        accommodated by any other means, if -
            (i) the consumer is given reasonable notice, by the person
          seeking the disclosure, of the court proceeding relevant to the
          issuance of the court order; and
            (ii) the consumer is afforded the opportunity to appear and
          contest the claim of the person seeking the disclosure.

                                 Page 1
```

                                  18 USC 2710
If an order is granted pursuant to subparagraph (C) or (F), the court shall impose appropriate safeguards against unauthorized disclosure.
  (3) Court orders authorizing disclosure under subparagraph (C) shall issue only with prior notice to the consumer and only if the law enforcement agency shows that there is probable cause to believe that the records or other information sought are relevant to a legitimate law enforcement inquiry. In the case of a State government authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the video tape service provider, may quash or modify such order if the information or records requested are unreasonably voluminous in nature or if compliance with such order otherwise would cause an unreasonable burden on such provider.
  (c) Civil Action. - (1) Any person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court.
  (2) The court may award -
    (A) actual damages but not less than liquidated damages in an amount of $2,500;
    (B) punitive damages;
    (C) reasonable attorneys' fees and other litigation costs reasonably incurred; and
    (D) such other preliminary and equitable relief as the court determines to be appropriate.

  (3) No action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery.
  (4) No liability shall result from lawful disclosure permitted by this section.
  (d) Personally Identifiable Information. - Personally identifiable information obtained in any manner other than as provided in this section shall not be received in evidence in any trial, hearing, arbitration, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State.
  (e) Destruction of Old Records. - A person subject to this section shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (b)(2) or (c)(2) or pursuant to a court order.
  (f) Preemption. - The provisions of this section preempt only the provisions of State or local law that require disclosure prohibited by this section.

-SOURCE-
  (Added Pub. L. 100-618, Sec. 2(a)(2), Nov. 5, 1988, 102 Stat. 3195.)

-REFTEXT-
                              REFERENCES IN TEXT
  The Federal Rules of Criminal Procedure, referred to in subsec. (b)(2)(C), are set out in the Appendix to this title.


-MISC1-
                              PRIOR PROVISIONS
  A prior section 2710 was renumbered section 2711 of this title.

-End-



Member Sign In

| Welcome | Browse Selection | How It Works |

# Privacy Policy

This Privacy Policy explains our policy regarding the collection, use, disclosure and transfer of your information by the Netflix family of companies ("Netflix"). As we update and expand our services, this policy may change, so please refer back to it periodically. By accessing our website or otherwise using our service, you consent to our information practices.

Please note that this Privacy Policy includes embedded hyperlinks that may only be accessed through our website, so if you are reviewing this Privacy Policy through certain Netflix ready devices (for example game consoles or Internet enabled televisions), you may need to visit the website to review these additional hyperlinked terms.

| | |
|---|---|
| Collection and Use of Information | Cookies and Other Technologies |
| Disclosure of Information | Security |
| Facebook | Changes to This Policy |
| Links to Other Sites | Transfer of Information and International Users |
| Children | Contacting Us |
| Right to Access Your Information | |

## Collection and Use of Information

We receive and store information, including personal information, about you and your use of our service. This information is gathered in a number of ways, including when you enter it on our website and from interactions with our service. Personal information is information that can be used to uniquely identify or contact you. Non-personal information is information that does not permit direct association with you. We may collect, use, transfer and disclose non-personal information for any purpose. You can choose not to provide personal information we may request of you, but, in general, most of the personal information we request is required in order to provide our service and the lack of such personal information will prevent us from doing so.

When you interact with us, we may ask you to supply us with personal information so that we can provide, enhance and personalize our services and marketing efforts. For similar reasons, we may supplement the personal information you provide with publicly available information about you as well as information from other sources, as permitted by law. We use this personal information, for example, to process your registration, your orders and your payments, and to communicate with you on these and other topics. We also may use your e-mail address or other methods to send you newsletters, as well as messages about new Netflix features, Netflix special offers, promotional announcements, consumer surveys and other correspondence concerning our service. If you no longer want to receive certain communications from us, simply access the "Email preferences" link on the "Your Account" page and uncheck those items to unsubscribe. Please note that you cannot unsubscribe from certain correspondence from us, including messages relating to your account transactions.

We keep track of your interactions with us and collect information related to you and your use of our service, including but not limited to: your online activity, title selections, reviews, ratings, payment history, correspondence, Internet protocol addresses, device types, unique device data (such as device identifiers), operating systems, instant watching of movies, TV shows and related activity. We use this information for such purposes as determining your general geographic location, providing localized content, enforcing our terms (such as using device identifiers to determine your eligibility for a free trial), providing recommendations on movies & TV shows we think will be enjoyable, personalizing the service to better reflect particular interests, tracking your instant-watching hours, determining your Internet service provider, helping us quickly and efficiently respond to inquiries and requests and otherwise enhancing or administering our service offering for you and other users. We also provide analysis of our users in the aggregate or otherwise in anonymous form to prospective partners, advertisers and other third parties. We may also disclose and otherwise use, on an anonymous basis, movie & TV show ratings, consumption habits, commentary, reviews and other information. For example, we use movie & TV show ratings and consumption behavior to improve our recommendations to you as well as other users.

While using the Netflix service, you will have opportunities to post reviews or other information in public forums. Please understand that when you post such information, it is made public and is not subject to this policy. We are not responsible for any third party's use of information you publicly disclose through our service.

From time to time, we may partner with companies whose products we believe will interest our members. In conjunction with these partners, we may send promotional announcements and/or serve web-based advertisements on their behalf, as permitted by law. You can go to the "Email preferences" link on the "Your Account" page and request that your name be excluded from marketing emails.

Back to top

## Disclosure of Information

We may share your information within the Netflix family of companies. The Netflix family of companies that access your information will follow practices that are consistent with the practices described in this Privacy Policy. In addition we use other companies, agents or contractors to perform services on our behalf. For example, we have partnered with other companies, to provide infrastructure and IT services, personalize and optimize our web pages, process credit card transactions, provide customer service, collect debts, analyze and enhance data, including users' interaction with our website, and process consumer surveys. In the course of providing such services, these other companies may have access to your information. We do not authorize these companies to use or disclose your personal information except for the purpose of providing the services we request of them.

We may offer joint promotions or programs that, in order for participation, will require information be shared with third parties. For example, we may partner with companies that offer incentives, such as frequent flyer mileage awards, if you sign up or otherwise utilize our service. In fulfilling these types of promotions, we may share your name and other information in connection with fulfilling the incentive. By participating in such joint promotions or programs, you consent to our sharing of your information. Please note that we do not control the privacy practices of these third party businesses.

Netflix also reserves the right to disclose personal information if we reasonably believe that access, use, preservation or disclosure of such information is reasonably necessary to (a) satisfy any applicable law, regulation, legal process, or enforceable governmental request, (b) enforce applicable terms of use, including investigation of potential violations thereof, (c) detect, prevent, or otherwise address illegal or suspected illegal activities, security or technical issues, or (d) protect against harm to the rights, property or safety of Netflix, its users or the public as required or permitted by law. In connection with any reorganization, restructuring, merger or sale, or other transferring of assets we reserve the right to transfer information, including personal information, provided that the receiving party agrees to respect your personal information in a manner that is consistent with our privacy policy.