PIERRE J MENTOR
916 N 26TH AVENUE
HOLLYWOOD, FL 33020
Pierrementor2004@yahoo.com
(954)483-5423

*Member of the Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

IN RE: NETFLIX PRIVACY LITIGATION

Case No. 5:11-cv-00379-EJD

**OBJECTIONS OF CLASS MEMBER
PIERRE J MENTOR TO PROPOSED
CLASSACTION SETTLEMENT**

## INTRODUCTION

This is a putative class action against Netflix over (1) Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710; (2) Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80; (3) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. The proposed settlement, is unfair and inadequate to the class. The settlement provides no damages or other relief for class members. Rather than providing actual relief, the settlement would donate the class member's portion of the settlement. In exchange, class members would release valuable claims, including claims for statutory damages, against netflix. Other than plaintiffs receive monetary compensation; the defendant is released from liability in this action; and class counsel receives attorneys' fees in excess of $2.25 million. Class members, however, lose their rights in exchange for nothing, leaving them worse off than if this case had never been brought. Plaintiffs have not and cannot meet their burden of demonstrating that the settlement is fair, reasonable, and adequate for absent class members. For these reasons, the Court should reject the proposed settlement.

## THE PROPOSED SETTLEMENT

Netflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History (that is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix subscriber for at least 365 days, with some exceptions.

In addition, Netflix will pay $9 million into a Settlement Fund to:
- Make donations to Court-approved not-for-profit organizations, institutions, or programs.
- Pay notice and settlement administration expenses.
- Pay attorneys' fees of up to 25% or $2.25 million of the Settlement Fund, plus up to $25,000 in expenses.
- Pay a total incentive award of $30,000 to the Named Plaintiffs.

In exchange for what amounts to worthless "relief," for class members, the class members will release all claims against the defendant.

## IDENTITY OF OBJECTOR

These objections are filed by Class Member PIERRE J MENTOR, a NETFLIX ex/user during the specified class period, MENTOR is an advocate for privacy interests. MENTOR does not intend to appear at the Final Approval Hearing.

## STANDARDS UNDER RULE 23(e)

Under Rule 23, a district court may approve a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); see Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests [are] represented adequately.'" Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995) (quoting Grant v. Bethlehem Steel Corp., 823 F.2d 20, 22 (2d Cir. 1987)). The purpose of this requirement is "the protection of those class members ... whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 624 (9th Cir. 1982). The settling parties bear the burden of showing that the settlement satisfies this standard. Staton, 327 F.3d at 952. Although a court may need to balance several factors to determine whether a proposed settlement is fair, reasonable, and adequate, "[t]he relative importance to be attached to any particular factor will depend upon the nature of the claims, the types of relief sought, and the unique facts and circumstances presented by the individual case." Class Plaintiffs v. City of Seattle, 955 F.2d 1268,

1291 (9th Cir. 1992) (citing Officers for Justice, 688 F.2d at 625).4 The essence of the inquiry is whether the settlement reflects a reasonable compromise in light of the prospects of further litigation. The proposed settlement here requires a higher level of scrutiny because it was reached prior to class certification. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620-21 (1997); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000); Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 520 (1st Cir. 1991). "With less information about the class, the judge cannot as effectively monitor for collusion, individual settlements, buy-offs (where some individuals use the class action device to benefit themselves at the expense of absentees), and other abuses." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768 (3d Cir. 1995); accord Acosta v. Trans Union, LLC, 243 F.R.D. 377, 397 (C.D. Cal. 2007). Extra scrutiny is also required because the parties are no longer in an adversarial posture, and in light of the inherent tension attributable to class counsel's self-interest in achieving a settlement that, like this one, involves a substantial proposed attorneys' fee award in an unlitigated case. See Staton, 327 F.3d at 959- 60; see also Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000). This concern is especially relevant where, as here, the settlement offers no direct compensation to the class. See Mars Steel Corp. v. Cont'l Ill. Nat'l Trust Co., 834 F.2d 677, 681 (7th Cir. 1984). The Court has a responsibility to ensure that the settlement provides real value by offering relief that the class will actually use. See 2003 Advisory Committee Notes, Fed. R. Civ. P. 23(h) ("Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class."). The Court should deny final approval of the proposed settlement in this case because unnamed class members receive no direct compensation.

## ARGUMENT

### The Court Should Refuse to Approve the Settlement
### Because It Provides No Real Relief to the Class.

Settlements that provide only illusory benefits to class members are routinely rejected by the courts. In Molski v. Gleich, 318 F.3d 937, for example, the Ninth Circuit upheld the district court's rejection of a proposed settlement in a class action brought under the Americans with Disabilities Act on behalf of mobility-impaired individuals who claimed they had been denied access to public accommodations. Under a proposed settlement, the defendant agreed to make its facilities accessible to those with impaired mobility, to pay monetary damages to the named plaintiff, to pay attorneys' fees, and to make donations to various disability rights organizations. In return, class members released their claims and received no monetary compensation. In rejecting the adequacy of the settlement, the Ninth Circuit did not mince words: "[T]he class members received nothing." Id. at 954. There, as here, minimal discovery had been taken, and the settlement agreement had been reached long before a class was certified. There, as here, practically everyone involved other than the class members stood to benefit from the proposed settlement. There, the defendant agreed to make its facilities more accessible (as it was already required to by law); here, Netflix has agreed to change its data retention practices. There, the defendant agreed to donate money to disability-rights charities; here, Netflix agrees to Make donations to Court-approved not-for-profit organizations, institutions, or programs. In re TD Ameritrade Accountholder Litig., Case No. 07-2852 (N.D. Cal.) In that case, a security breach at the brokerage firm TD Ameritrade exposed private accountholder information to hackers. The rejected settlement would have required TD Ameritrade to (1) hire security experts to test its systems' vulnerabilities, (2) retain a separate firm to investigate possible identity theft, and (3) provide each class member with a unique identification number to obtain a free, one-year subscription (or renewal) for an anti-virus, anti-spam internet security product. The proposed security testing and identity theft countermeasures were "very temporary" fixes that did "not convince the court that [TD Ameritrade] has corrected or will address the security of client data in any serious way, let alone provide discernible benefits for the class." The free subscription to the anti-virus, anti-spam security product likewise conferred no benefit on the class because many class members either owned anti-spam software or used one of several freely available anti-spam email services. The court concluded that the proposed settlement conferred "no discernible benefit upon the class" and rejected it. There, as here, the class received nothing of value. For the same reason, the proposed settlement in this case should be rejected.

### The Class Will Receive No Monetary Compensation.

Under the terms of the proposed settlement, the class receives no compensation. Netflix's $9 million payment, after subtracting fees for class counsel (which may be one-quarter of the total), incentive awards, and administrative costs, will be donated. No money will go to the class for the release of their damages claims. Before this Court even considers approval of a cy pres-like award distribution of settlement funds, much less a scenario in which the funds are paid by the defendant to a foundation, it should first be confident that direct relief to the class is uneconomical or impractical. See, e.g., Powell v. Georgia-Pacific Corp., 119 F.3d 703, 706 (8th Cir. 1997) (cy pres traditionally used in cases in which class members are difficult to identify); Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990) (cy pres traditionally used in cases with a large number of class members but only a small individual recovery); American Law Institute, Principles of the Law of Aggregate Litigation § 3.07 cmt. B (Proposed Final Draft Apr. 2009) (cy pres favored "only when direct distributions to class members are not feasible— either because class members cannot be reasonably identified or because distributions would involve such small amounts that, because of the administrative costs involved, such distributions would not be economically viable"). Here, because the parties have apparently taken no discovery, the Court has no basis for assessing the size of the class, the potential value of the claims, or potential barriers to providing relief to individual class members. Although formal discovery is not "a necessary ticket to the bargaining table," the parties and the Court must have "sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459 (settlement approved where parties had conducted investigation and research, and had worked with damages and accounting experts). No such information has been presented in this case. The absence of any monetary relief for class members is telling evidence that the settlement is unfair, unreasonable, and inadequate. The class action complaint seeks, among other things, significant monetary relief (including statutory damages), restitution, and disgorgement of ill-gotten gains. To be sure, the potential recovery in this lawsuit, as in any lawsuit, may be difficult to predict. Here, however, Plaintiffs seek damages under several causes of action, including statutory damages of at least $2,500 per class member under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710(c)(2)(A). The VPPA imposes liability. See id. § 2710(b)(1). The statute imposes strict liability and evinces Congress's intent to draft a robust privacy law enforceable by those directly harmed. As the Senate Committee Report explained, the VPPA's private right of action is the statute's exclusive remedy provision: The civil remedies section puts teeth into the legislation, ensuring that the law will be enforced by individuals who suffer as the result of its breach. It provides that an individual harmed by a violation of the Act may seek compensation in the form of actual and punitive damages, equitable and declaratory relief and attorneys' fees and costs. Statutory damages are necessary to remedy the intangible harm caused by privacy intrusions. Similar remedies exist in the federal wiretap statute as revised by this committee in 1986. The absence of such a remedy in the Privacy Act of 1974 is often cited as a significant weakness. S. Rep. No. 100-599, at 8 (1988). The VPPA therefore represents Congress's attempt to protect individual privacy rights by arming consumers with a strict liability cause of action and subjecting violators to significant statutory damages. The parties have presented no evidence of how many Netflix ex/users, like Mentor, had their rights violated. It is thus impossible to evaluate the value of the VPPA claim, but the recovery classwide is potentially far greater than the $9 million agreed to under the proposed settlement. Even if statutory damage claims are available to only a small portion of the class, those class members may make up a viable subclass with significant monetary claims. Under the settlement, however, that subclass forfeits its valuable VPPA claims in exchange for nothing.

### Donating Class Members Share Of The Settlement Is an Inappropriate Cy Pres-Like Remedy That Provides No Value to the Class.

Cy pres is a mechanism by which money damages can be distributed via third-party project funding. Newberg on Class Actions, § 11:20 (4th ed. 2002). Cy pres is appropriate when locating class members is difficult and costly, or when the class is large and each member's individual recovery is projected to be very small. See Six Mexican Workers, 904 F.2d at 1305; Powell, 119 F.3d at 704. Cy pres awards should provide indirect benefits to absent class members or further the purpose of the statutes that formed the basis for the underlying litigation. See In re Matzo Food Prods. Litig., 156 F.R.D. 600, 605 (D.N.J. 1994). The purpose for which the funds are used should relate to the alleged injury suffered by the class. See, e.g., Powell, 119 F.3d at 707 (in a case alleging racial discrimination, cy pres award funded scholarships for African-American high school students). This case sought to remedy Netflix's violations of privacy rights under state and federal statutes. The settling parties propose that Netfix donate class members share to non-profit foundations. This is an inappropriate cy pres-like remedy that provides no value to the class. It is difficult to imagine a greater abuse of the cy pres remedy.

### CONCLUSION

For the foregoing reasons, the proposed settlement should be rejected. Any future settlement amount should be at least $15 million and a 60 day claims process in which class members need to only submit their claims online or in print should be established. Since Netflix is settling, class members should only have to show that they were Netflix ex/users during the specified time of the violations by Netflix. At the end of the claims period, funds from the settlement should be distributed evenly to class members who have filed timely claims.

Dated October 17, 2012

Respectfully Submitted,

PIERRE J MENTOR
Pierrementor2004@yahoo.com
916 N 26TH AVENUE
HOLLYWOOD FL 33020
(954)483-5423

PIERRE MENTOR
916 N 26TH AVE
Hollywood FL, 33020

MIAMI FL 331
16 OCT 2012 PM 2 L



Clerk of Court
United States District Court for
The Northern District of California (San Jose Divis[ion])
Robert F Peckham Federal Building
280 South 1st Street,
San Jose, CA 95113

95113$3008