Brett L. Gibbs, Esq. (SBN 215000)
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900

*Attorney for Objector,
Padraigin Browne*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NETFLIX PRIVACY LITIGATION | Case No.: 5:11-CV-00379 EJD |
| ———————————————— | **OBJECTION OF CLASS MEMBER PADRAIGIN BROWNE TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR** |
| Padraigin Browne, | |
| *Objector.* | Judge: Hon. Edward J. Davila |

**OBJECTION OF CLASS MEMBER PADRAIGIN BROWNE
TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**

Padraigin Browne, the Objector, represents those class members—who may well number in the millions—who believe that the proposed settlement is worthless, and who will receive no benefit from the proposed settlement. Ms. Browne spent valuable money on a Netflix subscription at a time when she was a recent graduate, heavily in debt and with little discretionary income. Ms. Browne should be entitled to the protections of federal and state laws, including the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which mandates individual statutory damages of $2,500 at minimum. 18 U.S.C. § 2710(c) (allowing recovery of "not less than liquidated damages in an amount of $2,500" as well as punitive damages, etc.).

Yet, somehow, Ms. Browne has found herself included within a proposed settlement of VPPA claims which would provide such *de minimis* class relief that Class Counsel claims "any realistically obtainable monetary award would have resulted in payments to the class members that were negligible on an individual level." (Edelson Decl., Dkt. No. 76-2, ¶ 17; Pl's Mot. for Prelim. Approval of Settlement, Dkt. No. 76, at 22.) Instead, Class Counsel would distribute $9 million to unnamed charities, by reference to an overbroad and fatally vague set of selection criteria, with no limitation or direction given for the projects those charities can use the funds to pursue. Moreover, this *cy pres* distribution would be made without any clear evidence-based finding that a direct individual distribution of the claims to Ms. Browne and others would be burdensome or expensive.

The Objector is confident that, as currently constituted and supported, the proposed settlement cannot be approved and would not survive Ninth Circuit review. The Objector intends to appear at the Final Approval Hearing through her attorney. The Objector reserves any unused pages herein, pursuant to the length limitations of Civil Local Rule 7-4(b), for the purpose of filing a supplemental objection if necessary, based upon the final approval briefing papers due to be filed by Class Counsel on October 31, 2012.

## I. The Objector Is a Member of the Class

The Objector, Padraigin Browne, is a resident of the state of Minnesota and a current subscriber to Netflix. The putative settlement class is described as follows:

> All Subscribers as of the date of entry of Preliminary Approval. Excluded from the Settlement Class are the following: (i) the Settlement Administrator, (ii) the Mediator, (iii) any respective parent, subsidiary, affiliate or control person of the Defendant or its officers, directors, agents, servants, or employees as of the date of filing of the Action, (iv) any judge presiding over the Action and the immediate family members of any such Person(s), (v) persons who execute and submit a timely request for exclusion, and (vi) all persons who have had their claims against Defendant fully and finally adjudicated or otherwise released.

The Objector was a subscriber of Netflix as of the date of entry of Preliminary Approval, and does not fall within any of the exclusions. The Objector is therefore a member of the class, with standing to object to the proposed settlement under Fed. R. Civ. P. 23(e). Although the claims asserted here on the Objector's behalf are based upon an alleged violation of her privacy, the proposed settlement

purports to require the disclosure of the Objector's address; this information is withheld in this public filing for her privacy. (*See* Settlement Agreement, Dkt. No. 76-1, ¶ 5.5.)

## II. The *Cy Pres* Elements of This Settlement Do Not Meet Ninth Circuit Standards

A *cy pres* award, used in lieu of direct distribution of damages to silent class members, allows for "aggregate calculation of damages, the use of summary claim procedures, and distribution of unclaimed funds to indirectly benefit the entire class." *Six Mexican Workers*, 904 F.2d at 1305. However, a *cy pres* award must qualify as "the next best distribution" to giving the funds directly to the class members. *Id.* at 1308.

A recent decision by the Ninth Circuit in *Dennis v. Kellogg Company*, Nos. 11-55674, 11-55706 (9th Cir. Sept. 4, 2012), serves as a primer on the manner in which district courts must carefully review class action settlements that include a *cy pres* distribution. For the Court's convenience, a true and correct copy of the Ninth Circuit's opinion in *Kellogg* is attached hereto as Exhibit A. In *Kellogg*, the Ninth Circuit struck down a settlement agreement that failed to identify *cy pres* recipients beyond setting vague selection criteria, and thus gave "no assurance that the charities . . . will bear any nexus to the plaintiff class or to their . . . claims and therefore violates our well-established standards governing *cy pres* awards." *Kellogg*, Ex. A, at 10545. Because the settling parties have not yet identified the beneficiaries of the *cy pres* distribution here, the Court will be put in the position of a gatekeeper, and must ensure that the settling parties fully outline every aspect of the *cy pres* distribution and do not ask for "a verdict before the trial." *Id.* At present, that standard has not been met. Absent complete assurance that the use of *cy pres* is proper, the Court should decline final approval.

### A. The criteria for *cy pres* recipient selection are insufficient.

"Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary. To avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Kellogg*, Ex. A, at 10538 (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). A *cy pres* award must be "guided by

(1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Nachshin*, 663 F.3d at 1039. Further, a *cy pres* award must not benefit a group "too remote from the plaintiff class." *Six Mexican Workers*, 904 F.2d at 1308. A proposed award must "provide reasonable certainty that [members] will be benefitted." *Nachshin*, 663 F.3d at 1040.

The criteria given here do not give any assurance that the required "driving nexus" will exist between the class members and the *cy pres* beneficiaries. The settlement agreement phrases the criteria as follows:

> The *cy pres* distribution shall be made to not-for-profit organizations, institutions, and/or programs that educate users, regulators, and enterprises regarding issues relating to protection of privacy, identity, and personal information through user control, and to protect users from online threats.

(Settlement Agreement, Dkt. No. 76-1, ¶ 2.4.1; *see also* Preliminary Approval Order, Dkt. No. 80, at 2 (substantially similar).)

It is unclear how "user control" is at all relevant to the claims asserted here—where the named Plaintiffs are former customers, not current users, and where the privacy violations are alleged to have occurred without the consent of such former customers. Similarly, it is unclear how the goal of "protect[ing] users from online threats," venerable though it may be, is related to the specific class claims asserted here. The criteria stated here are overbroad, and could apply to a wide range of public interest organizations with focuses unrelated to the claims of class members—from identity theft, to digital media piracy, to online child predators.

Even the broader goal of educating "users, regulators, and enterprises regarding issues relating to privacy" is insufficiently related to the claims asserted here. The key claim, the VPPA, is very specifically aimed at preventing the retention or unauthorized disclosure of information about video rental customers. The education of users or regulators has nothing to do with such claims, and could not have prevented, and would not prevent in the future, this type of harm this litigation was ostensibly brought to rectify.

Moreover, while the settlement agreement gives broad criteria for selection of *cy pres* beneficiaries, it does not restrict or require the *cy pres* beneficiaries to use the settlement funds for

any particular program or purpose related to preventing the type of harm this litigation was intended to rectify. This is inexcusable, as it may easily result in misuse of the settlement funds in ways which do not benefit class members, even indirectly. For a hypothetical example, consider the "Electronic Frontier Foundation," a non-profit advocacy organization "dedicated to pursuing Internet consumer rights," which might well fit within the broad criteria given here. *In re: Groupon, Inc., Marketing And Sales Practices Litig.*, No. 11-md-2238 DMS (RBB), at 15 (S.D. Cal. Sept. 28, 2012) (Dkt. No. 97). While its mission may appear to overlap with class claims on its face, the Electronic Frontier Foundation is actually very wide-ranging in its mission and activities, and thus cannot be found to be "expressly committed to righting the specific wrongs alleged in this case." *Id.*

Without any limitation on the expenditure of funds, even a *cy pres* distribution to an apparently-appropriate, broadly-focused charity cannot meet the Ninth Circuit's standards for such awards. If the settlement provides no assurance that the charities will use a *cy pres* distribution of funds in an appropriate way, it cannot be approved. *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307–09 (9th Cir. 1990) (finding abuse of discretion where *cy pres* distribution funds were not "earmarked for any specific projects" and went to an organization that was not "limited in its choice of projects").

**B.     *Cy pres* is inappropriate where valid individual claims may yet be paid.**

*Cy pres* relief is "a disfavored substitute for distribution of benefits directly to class members." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). The settling parties that seek to employ *cy pres* relief must present "evidence that proof of individual claims would be burdensome or that distribution of damages would be costly." *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003).

The only evidence provided by class counsel in favor of *cy pres* relief thus far is the conclusory statement that due to the size of the class, "any realistically obtainable monetary award would have resulted in payments to the class members that were negligible on an individual level." (Edelson Decl., Dkt. No. 76-2, ¶ 17; Pl's Mot. for Prelim. Approval of Settlement, Dkt. No. 76, at 22.) There is no attempt to accurately quantify the total size of the class or the amount of any *pro rata*

monetary award, nor is there any attempt to quantify the burden or expense that might be incurred in distributing such "negligible" payments.

As other objectors have noted, many class members are current Netflix subscribers, to whom a direct distribution of their individual claims would be simple, non-burdensome, and incur minimal cost, through a credit to their monthly bill. (*See, e.g.*, Objection, Dkt. No. 160, at 5.) This is true even though the original claims were brought only on behalf of *former* subscribers, due to the overbroad class definition here which includes *all* subscribers, both former and current. (*See* Settlement Agreement, Dkt. No. 76-1, ¶ 1.37.) For former subscribers, *cy pres* might well be appropriate, although there is impermissibly scant evidence on the matter at present, but common sense dictates that it cannot be so for current subscribers.

To the extent that class claims may be paid on an individual basis, there is no excuse for reserving funds for *cy pres* recipients. "If all claims have been paid and there remains a balance in the settlement fund, then a *cy pres* award may be appropriate, but if there are claims outstanding . . . that money should be used to pay claims of class members, not as a *cy pres* award." *In re: Groupon, Inc., Marketing And Sales Practices Litig.*, No. 11-md-2238 DMS (RBB), at 15–16 (S.D. Cal. Sept. 28, 2012) (Dkt. No. 97). The Objector is a current Netflix subscriber, and as such, would benefit directly from a credit to her monthly bill, however minimal the amount of such credit might be. It is not the place of class counsel to deny payment of the Objector's claim based on an assertion that her direct recovery would be "negligible."

## CONCLUSION

The use of *cy pres* contemplated by the proposed settlement does not conform to the strict standards set by the Ninth Circuit. The criteria to be used for selection of *cy pres* beneficiaries are vague and overbroad, and no limitation on the projects for which the *cy pres* beneficiaries can use the distributed funds has been proposed. The result is likely to be a distribution which does not benefit some or all class members. Further, the decision to employ *cy pres* instead of directly paying individual claims cannot be supported by a single conclusory statement that does not address the relevant legal standard. When crediting the Netflix accounts of current users would be neither

burdensome nor expensive, employing the *cy pres* remedy for those class members would be reversible error. For all of the above reasons, the proposed settlement must be denied final approval.

Respectfully Submitted,

**DATED: October 31, 2012**

By:     /s/ Brett L. Gibbs

Brett L. Gibbs, Esq. (SBN 215000)
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900

*Attorney for Objector, Padraigin Browne*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on **October 31, 2012**, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's ECF system.

                                                                               /s/ Brett L. Gibbs