Filed
NOV 13 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE: NETFLIX PRIVACY LITIGATION | § Case No. 5:11-CV-00379<br>§<br>§ OBJECTION TO PROPOSED<br>§ SETTLEMENT<br>§<br>§ Honorable Judge Edward J. Davila |

## OBJECTION TO PROPOSED SETTLEMENT

### INTRODUCTION

Class member Tracey Klinge ("Objector") objects to the approval of the proposed settlement. Objector believes that class action settlements that benefit no one but the attorneys hurt consumers, and that courts should use their oversight powers to prevent such extortionate settlements from occurring in the first place. These objections also serve as notice that Objectors' counsel, Thomas L. Cox, Jr., intends to appear at the December 5, 2012 approval hearing.

### BACKGROUND

Netflix owns and operates the website www.Netflix.com which provides streaming video via the Internet and online video rental services to over 10 million subscribers. The Plaintiffs allege that Netflix has knowingly retained and disclosed personally identifiable information "PII" in violation of state and federal law. This action alleges that Netflix violated (i) Video Privacy Protection Act, 18 U.S.C. §2710.; (ii) the California Customer Records Act, Cal. Civ. Code § 1798.80; and (iii) the California Unfair Competition Law, California Business

& Professions Code §17200 *et seq.* Netflix denies the accuracy of Plaintiffs' allegations and denies that it violated any law or caused any harm and asserted six affirmative defenses.

**CLASS MEMBERSHIP**

Tracey Klinge is a member of the class having received the attached e-mail advising her of the settlement. A copy is attached hereto as Exhibit "1." Objector is a member of the class having received the attached e-mail advising her of the settlement. The class is defined as all subscribers as of the date of entry of Preliminary Approval. Objector is a member of the class as of the Preliminary Approval Order of July 5, 2012.

**OBJECTIONS**

**1. Lack of Benefit.**

Law firms representing Plaintiffs in a class action regarding privacy issues have negotiated a settlement that will pay zero to the millions of class members for extinguishing their claims, yet over 25% of the settlement fund of $9.0 million plus expenses of $25,000 will be paid to the attorneys and all settlement administration expenses and incentive awards will be paid from the fund. The non-economic benefit to the class -- a *cy pres* payment to charities[1] that are neither class members nor have suffered any injury. This is a classic case of class action abuse.

In *Murray v. GMAC*, 434 F.3d 948, 952 (8th Cir. 2006), the Seventh Circuit held that a similar settlement was "untenabl[y]" beyond the pale of approval:

> This looks like the sort of settlement that we condemned in *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999), and *Crawford v. Equifax Payment Services*, 201 F.3d 877 (7th Cir. 2000), two appeals arising from the same litigation. That suit had been settled for $2,000 to the named plaintiff, $5,500 to a legal-aid society that had not been injured by the defendant's conduct, and $78,000 in legal fees. We treated the disproportion -- $2,000 for one class member, nothing for the rest -- as proof that the class device had been

[1] Unnamed existing agencies/organizations that educate users, regulators and enterprises regarding issues relating to protection of privacy, identity and personal information through user control and to protect users from online threats. who will be identified fourteen days before the deadline for filing objections, Settlement Agreement 2.4.

> used to obtain leverage for one person's benefit. [citations omitted] Here the proposed award is $3,000 to the representative while other class members are frozen out. the payment of $3,000 to Murray is three times the statutory maximum, while others don't get even the $100 that the Act specifies as the maximum . . .
>
> Such a settlement is untenable. We don't mean by this that all class members must receive $100; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty. [citation omitted] But if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum? And, if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny? If, however, the chance of success is materially greater than 1%, as the proposed payment to Murray implies, than the failure to afford effectual relief to any other class member makes the deal look like a sellout.

This settlement is indistinguishable from the settlement criticized in *Murray* as "untenable." There was one class representative in *Murray* who received $3,000, three times maximum possible statutory damages; here, there are two class representatives and an unknown number of Plaintiffs from other cases that were consolidated in this multi-district case who will share in a $30,000 incentive payment without any indication of personal or economic injury or even any indication if they ever gave a deposition. In *Murray*, the 1.2 million unnamed class members were entitled to split a fund of $947,000; here, millions of class members will end up with zero. And, the Class Attorneys are seeking $2,225,000[2] in attorneys' fee, plus expenses, similar to the amount in *Murray*.

There are two possibilities. The Class Attorneys have brought either (1) a meritorious case that is being settled for an infinitesimal fraction of the case's real value in a "sellout" of the attorneys' and class representatives' fiduciary duties to the class, or (2) a meritless lawsuit where the "class device had been used to obtain leverage for one person's benefit." *Murray*, 434 F.3d at 952. In either instance, the Class Attorneys' actions should be deterred rather than rewarded;

[2] Twenty-five percent (25%) of the common fund.

the court should not award attorneys' fees or substantially reduce the fees. If Rule 23(e)(2) is to have any teeth whatsoever, this settlement must be rejected. It is hard to imagine another settlement result that is more self-serving of the Class Attorneys.

**2. Objections to Class Representatives.**

The guiding principles in selecting class representatives are: "The class must have a "conscientious representative Plaintiff" (*Rand v. Monsanto,* 926 F.2d 596, 599 (7th Cir. 1991)) and . . . class representative must ". . .fairly and adequately protect the interest of the class." (Rule 23(a)(4).

A conflict of interest must not exist between the named Plaintiffs and the class. *Meridith v. Mid-Atlantic*, 129 F.R.D. 130, 133.

If in advancing their own interests, the named Plaintiffs had also advanced the interests of the class, their burden would have been met. Unfortunately, they did not -- they have advanced their own interests and class counsel's interest but little else.

It has long been the law that an absent class member will not be bound to a judgment wherein he was not adequately represented. *Hornsberry v. Lee*, 311 U.S. 32 (40).

**3. Self-Dealing.**

"Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *Accord Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) ("district court ha[s] a fiduciary responsibility to the silent class members"). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole."

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). *See also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members.")

Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953 (*quoting Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

"These concerns warrant special attention when the record suggests that settlement is driving by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

The settlement proposed by Plaintiffs is indistinguishable from other settlements rejected by the Seventh and Ninth Circuits under Rule 23(e). Compare this case with *Murray*, 434 F.3d at 952 ("untenable"); *Mirfasihi*, 356 F.3d 781; *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000) ("substantially troubling"); *Molski*, 318 F.3d at 956 ("unfair, inadequate, and unreasonable").

The Netflix settlement is inferior to other settlements rejected by the Seventh and Ninth Circuits: either the unnamed class members recover less money, or the attorneys and named class representatives receive more money. There is ample precedent that not only should the court reject the settlement, but that approving the settlement would be an abuse of discretion. Any "presumption of fairness" is rebutted by the self-dealing nature of the settlement.

Though Plaintiffs claim to represent and seek to bind a large class, they have recovered cash for only their attorneys and themselves. Even if one were to improperly credit the charitable pseudo-*cy pres* award to unrelated third parties as a benefit to the class, Plaintiffs have recovered for the class substantially less than they had alleged in a complaint for a class numbering in the millions and worth millions of dollars. *See* Consolidated Class Action Complaint (Docket No. 61).

Plaintiffs defend the settlement on the grounds that there is *cy pres* relief to charitable organizations. But this is insufficient to proclaim the settlement fair. The settlement in *Molski* offered all of those remedies and was still proclaimed "unfair, inadequate, and unreasonable" as a matter of law.

**4. The Lawsuit Itself Harms Class Members' Interests.**

When Plaintiffs bring law-value litigation with little chance of success on relatively meritless claims, as they appear to have done here, they raise costs to Defendants who have to pay for legal fees and for the extensive and expensive class action notice requirements. Self-dealing settlements like those of Class Attorneys raise the costs to the Defendants of providing these services and raise prices to Class Members like Objectors without concomitant benefits thus reducing their consumer surplus. Consumer welfare would be improved if courts rejected such settlements and deterred socially inefficient, rent-seeking litigation.

**5. Class Attorneys Are Not Entitled To Costs.**

A prevailing party is entitled to its costs. Fed. R. Civ. Proc. 54(d)(1). It is within a court's discretion to deny costs to a prevailing party when that party's success is but a small fraction of the relief they originally sought and litigated. *Farrar v. Hobby*, 506 U.S. 103 (1992). Here, Class Attorneys have obtained $0 in economic benefit for the class they purport to

represent. They originally claimed that their damages were effectively hundreds of millions of dollars plus punitive damages. They "asked for a bundle and got a pittance." *Id.* at 120 (O'Connor, J., concurring). This is the sort of *de minimis* nuisance settlement that should not be awarded more than nominal costs or fees. *Id.* at 121-22.

**6. Objection to Requested Award of Attorneys Fees.**

Class counsel filed their Motion for Approval Attorneys' Fees on October 31, 2012, Dkt. 191. Objector reserves her right to amend this objection after reviewing the fee motion. However, the Court should reduce the requested award of attorneys' fees substantially.

(a) The Court should base the award of attorneys' fees on no more than 15% of the actual class recovery or there should be no modifier to counsel's lodestar.

(b) Objectors object to the attorneys' fees award in this case because it amount to unjust enrichment. Although 25% is a 'benchmark," the actual recovery should depend on the work expended, the time consumed and the results obtained. "Any single rate, however, is arbitrary and cannot capture variations in class actions' valuations." *Manual for Complex Litigation*, Fourth §14.11, p. 184).

It is incumbent on the court to make this decision in a common fund case. The case has been settled early in the process and the Court, serving as a fiduciary for the absent class, must critically examine class counsel's application and award no more than what is absolutely required to provide reasonable compensation to class counsel. While 25% of the common fund for attorneys' fees is the accepted starting point in this Circuit, the District court can depart from that standard. The District Court may exercise its discretion to choose between the Lodestar method and percentage method in calculating fees. See *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

(c) A modifier of 1-66 to counsel's lodestar is unreasonable.

**7. Is *Cy Pres* Appropriate or the Problem with *Cy Pres.***

The idea of *cy pres* (pronounced "see pray" or "sigh pray," from the French cy pres comme possible – "as near as possible") originated in the trust context, where courts would reinterpret the terms of a charitable trust when literal application of those terms resulted in the dissolution of the trust because of impossibility or illegality.[3] In a classic 19th-century example, a court repurposed a trust that had been created to abolish slavery in the United States to instead provide charity to poor African-Americans. *Jackson v. Phillips,* 96 Mass. 539 (1867). *Cy pres* awards in class action settlement have increased since the earliest reported use of a *cy pres* award in *Miller v. Steinbach*, 1974 WL 350 at *2 (S.D. N.Y. Jan. 3, 1974). The California Supreme Court endorsed the use of cy pres or "fluid recovery" mechanism in class action settlements in 1986, to distribute proceeds to a "next best" class of consumers, and many other courts have gradually adopted the procedure. *State v. Levi Strauss & Co.,* 41 Cal. 3d 460, 715 P.2d 564, 224 Cal. Rptr. 605 (1986).

As described earlier the term originates from the French phrase -- *cy pres comme possible* -- which translates "as near as possible." The term/concept has been a part of American jurisprudence for years but was generally limited to estates and trusts. The concept has experienced a rapid expansion in class action litigation as a means of disposing of unclaimed class awards and settlements. There are other methods or general theories as to distribution of unclaimed awards:

---

[3] Susan Beth Farmer, More Lessons From the Laboratories: *Cy Pres Distributions in Parens Patriae Antitrust Actions Brought by State Attorneys General,* 68 FORDHAM L. REV. 361, 391-93 (1999); RICHARD POSNER, ECONOMIC ANALYSIS OF LAW 609-10 (4th ed. 1992); BRYAN A GARNER, BLACK'S LAW DICTIONARY 392 (7th ed. 1999). "Justification for the use of the doctrine [in the middle ages] was laid on the shoulders of the donor, the idea being since the object of the testator in donating the money to charity was to obtain an advantageous position in the kingdom of heaven, he ought not to be frustrated in this desire because of an unexpected or unforeseen failure." Id. (quoting EDITH L. FISCH, THE CY PRES DOCTRINE IN THE UNITED STATES 4 (1950)).

(a) distribution of unclaimed awards to class members who submitted claims; and

(b) escheat the remainder to the state.[4]

The problem of distributing class funds to third party charities that have little or no connection to the class members was first considered in the frequently cited case of *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) and most recently considered in *Dennis v. Kellogg Company* Nos. 11-55674, 11-55706 (9th Cir. Sept. 4, 2012) The problem, as that court noted, was that the benefit was given to a group too far removed from the class and suggested that if *cy pres* was used, it should be to the next best distribution. Here, the proposed settlement attempts to distribute the funds to unnamed groups that advocate for internet privacy, the recipients were identified on 11/1/2012.

Notwithstanding the funds going to internet privacy groups, the fact remains that *cy pres* awards, where class members receive nothing, has no place in American jurisprudence because the problem still remains that *cy pres* awards do not provide compensation to the injured class members. The best that can be said for a *cy pres* award in this situation is that it might make a class member feel good to give the Defendants' money to someone else. This is different than compensating the class for the Defendants' wrongdoing.

*Cy pres* settlements arise in one of three circumstances:

- There is a fixed settlement fund that exceeds the amount paid out because only a few class members have registered to be claimants;
- The court (often at the parties' behest) decides that administering a settlement by paying class members directly would be too expensive;
- The parties otherwise agree that a case shall be settled by paying a third party.

[4] *Cy Pres, a Not So Charitable Contributor to Class Action Practice*, John Beisner, 2d Edition, 2010, p. 8.

While original cy pres class action settlements provided that left-over money be distributed to a different set of consumers who may or may not coincide with the class, in recent years, left-over, or specifically earmarked, funds are typically given to a third-party charity.

Another problem with *cy pres* is that it exacerbates existing conflicts of interest in the class action settlement context. When a class attorney settles a class action, he or she is not only negotiating class recovery, but is also negotiating his or her own fee. A defendant may be willing to spend a certain amount of money to settle a class action to avoid the expense and risk of litigation, but that money must be divided between the class and their attorneys. Every dollar going to the attorneys does not go to the class, and vice versa. At the same time, a class action settlement must be approved by the court. Attorneys who do not adhere to their fiduciary responsibility to the class have an incentive to exaggerate class recovery to a court to maximize their fees.

The possibility of *cy pres* awards gives an additional incentive to class action attorneys to breach their fiduciary duties to the class. Every dollar that a class member does not recover can now be spent by the attorney himself to the charity of the attorney's choice.

As Judge Richard Posner has argued that *cy pres* is a misnomer in the class action context:

> [Cy pres] doctrine is based on the idea that the settlor would have preferred a modest alteration in the terms of the trust to having the corpus revert to his residuary legatees. So there is an indirect benefit to the settlor. In the class action context the reason for appealing to cy pres is to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement (or the judgment, in the rare case in which a class action goes to judgment) to the class members. There is no indirect benefit to the class from the defendant's giving the money to someone else. In such a case the "cy pres" remedy (badly misnamed, but the alternative term – "fluid recovery" – is no less misleading) is purely punitive.
> *Mirfahisi v. Fleet Mortgage Corp.*, 356 F.3d 781, 784 (7th Cir. 2004).

The Court in its role as a fiduciary should carefully review the intended *cy pres* recipients for any relationship with any class representatives, class counsel, the Defendants and their attorneys. The proposed recipients were listed in Dkt. 193 filed on November 1, 2012 and any relationship between the parties or their attorneys with the recipient or the recipients board members or executives should be grounds for disqualification of the intended recipient. This could be readily accomplished by the Court requiring a Disclosure Statement. In addition, to avoid any ethical issues, no recipient of a *cy pres* award should have a relationship with the Judge.

The Court should reject the settlement because of the cy pres component. The requested amounts are excessive.

**8. Adoption of all other objections.**

Objector specifically adopts the language contained in the Browne Objection, Dkt. 190 concerning crediting the accounts of current subscribers.

## CONCLUSION AND RELIEF

The Class Attorneys have brought either (1) a meritorious case that is being settled for an infinitesimal fraction of the case's real value in a "sellout" of the attorneys' and class representatives' fiduciary duties to the class, or (2) a meritless lawsuit where the "class device had been used to obtain leverage for one person's benefit." *Murray*, 434 F.3d at 952. In either instance, the Class Attorneys' actions should be deterred rather than rewarded and the court should reject the settlement as failing to comply with the requirements of Rule 23(a)(4) and Rule 23(e). The Class Attorneys' requests for fees and costs should be rejected.

Dated: November 12, 2012.

Thomas L. Cox, Jr.
S. B. 04964400
4934 Tremont
Dallas, Texas 75214
(469) 531-3313
tcox009@yahoo.com

Attorney for Tracey Klinge

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2012, I served the foregoing Objection to Proposed Settlement to the following by regular mail, postage prepaid:

Clerk, U. S. District Court
Northern District of California
San Jose Division
280 S. First Street
San Jose, CA 95113

Settlement Class Counsel
Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Chandler R. Givens
Edelson McGuire LLC
350 N. LaSalle, Suite 1300
Chicago, IL 60654

Defendant's Counsel
Keith E. Eggleton
Rodney Strickland
Dale Bish
Wilson Sonsini Goodrich
& Rosati
650 Page Mill Road
Palo Alto, CA 94304

Thomas L. Cox, Jr.

From: "Online DVD Class Action Administrator" <noreply@videoprivacyclass.com>
Date: Jul 27, 2012 1:48 AM
Subject: Video Privacy Lawsuit – Current and Former Netflix Subscribers
To: <traceyklinge@gmail.com>

## If You Are a Current or Former Netflix Subscriber A Class Action Settlement Could Affect You

*Para una notificación en Español, llamar 1-866-898-5088 o visitar* www.VideoPrivacyClass.com

Our records show that you were a current or former Netflix subscriber as of July 5, 2012. We are emailing to tell you about a Settlement that may affect your legal rights. Please read this email carefully. Go to www.VideoPrivacyClass.com for more information.

A Settlement has been reached in a class action lawsuit that claims Netflix unlawfully kept and disclosed information, including records on the movies and TV shows its customers viewed. Netflix denies that it has done anything wrong.

### What does the Settlement provide?

Netflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History (that is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix subscriber for at least 365 days, with some exceptions.

In addition, Netflix will pay $9 million into a Settlement Fund to:
- Make donations to Court-approved not-for-profit organizations, institutions, or programs.
- Pay notice and settlement administration expenses.
- Pay attorneys' fees of up to 25% or $2.25 million of the Settlement Fund, plus up to $25,000 in expenses.
- Pay a total incentive award of $30,000 to the Named Plaintiffs.

Proposals from potential donation recipients will be sought, and, after consideration, recommendations will be made to the Court. A list of the proposed donation recipients will be posted on the website.

### Your Options

If you do nothing, you will remain in the Settlement and your rights will be affected. If you do not want to be included, you must exclude yourself by November 14, 2012. If you exclude yourself you will keep your right to sue Netflix about the claims in this lawsuit. If you remain in the Settlement, you can object to it by November 14, 2012.

The Court will hold a hearing on December 5, 2012 to consider any objections, whether to approve the Settlement, award attorneys' fees, and incentive award. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**For more information: 1-866-898-5088** www.VideoPrivacyClass.com
**PO Box 2750 Faribault, MN 55021-9750**