Joseph Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer PC
603 North Highway 101, Suite A
Solana Beach, California 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorneys for Objectors

FILED
NOV 1 6 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

FILED
NOV 1 6 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: NETFLIX PRIVACY LITIGATION | Case No. 5:11-CV-00379-EJD<br><br>OBJECTIONS BY ANDREW CESARE, KATHERINE STROHLEIN WILLIAM FORD TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR<br><br>Date: December 5, 2012<br>Time: 10:00 a.m.<br>Location: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

COME NOW, ANDREW CESARE, KATHERINE STROHLEIN and WILLIAM FORD ("Objectors") Class Members to this action, by and through their undersigned counsel, and hereby file these Objections to the Proposed Class Action Settlement, give notice of their counsel's intent to appear at the final approval hearing, and request award of incentive fees for their role, if any, in improving the settlement for the benefit of the class members.

Objectors represent to the court that they are Class Members qualified to make a claim as set forth in the NOTICE OF CLASS ACTION SETTLEMENT. See attached Exhibit A – copies of emails from "Online DVD Class Action Administrator" informing of class action settlement.

Objectors make the following objections:

///

## I. THE CY PRES RECIPIENTS DO NOT COMPLY WITH *DENNIS*

Recently, the Ninth Circuit reversed an order granting approval to a class action settlement because the *cy pres* award was "divorced from the concerns" of the laws under which the lawsuit was brought. *Dennis v. Kellogg*, 697 F.3d ___, 2012 WL 3800230, at *6 (9th Cir. Sep. 4, 2012). The court held that, "[t]o avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id* at *5 (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). Put differently, there must be more than simply a similarity of interests. A "driving nexus" requires that there actually be a connection between the *cy pres* recipient and the claims brought in the lawsuit. *See Nachshin*, 663 F.3d at 1036 ("*Cy pres* distributions must account for the nature of the plaintffs' lawsuit, the objectives of the underlying statute, and the interests of the silent class members, including their geographic diversity.") An appropriate award will "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, [and] provide reasonable certainty that [class members benefit]." *See id* at 1040.

The claims in this lawsuit deal with the unlawful storing of personal information by Netflix, with the underlying concern being consumer privacy. Instead of issuing cash payments, Class Counsel selected 20 different *cy pres* beneficiaries. Many of them have tenuous ties to consumer privacy, and most have no way of ensuring the money received actually benefits the class.

Nine of the beneficiaries are school programs or schools. Of those nine, seven of them are California based. This failure to target the plaintiff class falls below Ninth Circuit standards. In *Nachshin*, two-thirds of chosen charities were located in Los Angeles, California, even though it was a nationwide class. *Id.* Due, in part, to this lack of diversification, the Ninth Circuit held that the district court applied the incorrect legal standard and abused its discretion in approving the *cy pres* distribution. *Id.*

Putting aside the lack of geographical diversity, this nationwide class will see no benefit, for example, from a $357,598.00 donation to the University of Southern California Gould School of Law. The Gould School of Law does nothing to address the objectives of the underlying statutes involved – at least not directly. Sure, most likely USC will train a few attorneys who go on to champion consumer privacy rights down the road. But the benefit to the class is attenuated. When there are already in

existence organizations that push for *nationwide* consumer privacy rights, a donation to USC cannot be the "next best use" of the funds. See *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F. 2d 1301, 1307-08 (9th Cir. 1990).

Finally, even though many of the remaining *cy pres* beneficiaries have some focus on the underlying statutes, the donation is not earmarked for that purpose. As a result, the money might not benefit the class whatsoever. This court should require that as a condition of accepting the donation, each charity must use the funds toward objectives effectuating the purpose of the underlying statutes in this lawsuit.

As proposed, the *cy pres* beneficiaries will inadequately serve the goals of the statutes allegedly violated and will not protect the interests of the silent class members. Therefore, this settlement must be stricken down. See *Six Mexican Workers v. Arizona Citrus Growers*, 904 F. 2d 1301, 1312 (9th Cir. 1990).

## II. THE FEE AWARD IS EXCESSIVE

In the Ninth Circuit when a common fund is created for the class, the court has the discretion whether to use a lodestar method or the percentage of the fund approach. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935,942 (9th Cir. 2011). Whichever option the court chooses, however, discretion must be used to arrive at a reasonable result. *Id.* Courts have held that when choosing the percentage of the fund approach, a benchmark of 25% is a reasonable starting place. *Id.* Not all courts agree with this approach. See *In re Infospace Inc.*, 330 F. Supp. 2d 1203, 1210 (W.D. Wash. 2004) ("There is nothing inherently reasonable about a 25 percent recovery, and the courts applying this method have failed to explain the basis for the idea that a benchmark fee of 25 percent is logical or reasonable."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 129 (9th Cir.1994) ("WPPSSS") ("[T]here is no necessary correlation between any particular percentage and a reasonable fee.").

It is a time honored notion that "a fee award should be assessed based on scrutiny of the unique circumstances of each case", and should be viewed with "a jealous regard to the rights of those who are interested in the fund."" *Goldberger v. Integrated Resources, Inc.* 209 F.3d 43, 53 (2d Cir. 2000). For this reason, the lodestar approach should be adopted in this case.

The court arrives at the lodestar figure by multiplying the number of hours reasonably spent on the litigation by a reasonable rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Class Counsel's lodestar is $1,352,025. Next, the court may make adjustments to the lodestar figure using a multiplier if necessary to arrive at a reasonable fee. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Class Counsel requests a multiplier of 1.66.

The Ninth Circuit is guided by several factors in deciding whether to award the requested multiplier.[1] Of the things this court must consider, "the most critical factor is the degree of success obtained." *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983).

### III. THE NOVELTY AND DIFFICULTY OF THE QUESTIONS INVOLVED

This lawsuit does not involve any novel legal questions. Class Counsel doesn't make a good case that issues were novel. Instead, they discuss the challenges that all attorneys face in class action law suits – the fact that the defendant will "vigorously" oppose class certification and is risk of appeal. Therefore, this factor weighs against the multiplier.

### IV. PRECLUSION OF EMPLOYMENT AND TIME AND LABOR

This lawsuit was uninvolved. Class Counsel took some discovery and participated in mediation. There was not enough work done to weigh in favor of granting a multiplier.

### V. THE AMOUNTS INVOLVED AND RESULTS ACHIEVED

The most important factor, the results achieved, also weighs against the requested multiplier. Class Counsel has done nothing more than given their assurance that the results they have achieved are outstanding, but their own analysis proves otherwise.

Class Counsel informs the Court that $155 billion was on the line. They recovered $9 million, of which a little over 25% will be fees and costs, and the remainder will be a tax-deductible charitable contribution for the defendants. Therefore, what it actually costs Netflix is something less than $9 million.

---

[1] (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

To take the sting out of their unimpressive recovery, Class Counsel begins by explaining why a court would never award a $155 billion judgment. They suggest that a court might not look to the statute for damages and award actual damages suffered. They go on to say "it seems dubious the class could point to any harm to themselves," therefore the Class is really probably only entitled to $3 million in damages. (Dkt. No. 191 at 14.)

The paltry $9 million recovery is insignificant for anyone other than Class Counsel and the few Charities involved. The recovery is so small, in fact, that any payment to the class would be *"de minimis."* (Dkt. No 191 at 32.) Yet, Class Counsel still seeks a fee award equal to a 1.66. This enhancement would amount to an abuse of discretion. "[W]here the plaintiff has achieved 'only limited success,'...the Supreme Court has instructed courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained. *In re Bluetooth*, 654 F.3d at 942 (citing *Hensley,* 461 U.S. at 436.)

Class Counsel bears the burden of supporting their request for fees and costs. *Fischer v. SJB-P.D., Inc.*, 214 F. 3d 1115, 1121 (9th Cir. 2000). They have failed to demonstrate their recovery achieved is worthy of an enhancement. A departure from the lodestar is only warranted in "rare and exceptional cases." *In re Bluetooth,* 654 F.3d at 942. This is not one of those cases.

## VI. ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS

These Objectors join in and adopt all well-taken, good-faith objections filed by other Class Members in this case and incorporate them by reference as if they appeared fully herein.

## VII. CONCLUSION

For the foregoing reasons and all others presented at oral argument, these Objectors respectfully request that the Court sustain their objections and grant the following relief:

Upon proper hearing, sustain these Objections;

1. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

///

///

2. Award an incentive fee to these Objectors for their service in improving the fairness of the settlement, as well as consider awarding an attorneys' fee to their attorney.

LAW OFFICES OF DARRELL PALMER PC

Dated: November 14, 2012  By: _____
Joseph Darrell Palmer
Attorney for Objectors Andrew Cesare, Katherine Strohlein, and William Ford

**EXHIBIT A**

**Maria Carapia**

**From:**
**Sent:** Monday, July 30, 2012 8:10 PM
**To:** Maria Carapia
**Subject:** Fwd: Video Privacy Lawsuit – Current and Former Netflix Subscribers

---------- Forwarded message ----------
From: "Online DVD Class Action Administrator" <noreply@videoprivacyclass.com>
Date: Jul 30, 2012 7:16 PM
Subject: Video Privacy Lawsuit – Current and Former Netflix Subscribers
To: <andrew.cesare@gmail.com>

## If You Are a Current or Former Netflix Subscriber
## A Class Action Settlement Could Affect You

Para una notificación en Español, llamar 1-866-898-5088 o visitar www.VideoPrivacyClass.com

Our records show that you were a current or former Netflix subscriber as of July 5, 2012. We are emailing to tell you about a Settlement that may affect your legal rights. Please read this email carefully. Go to www.VideoPrivacyClass.com for more information.

A Settlement has been reached in a class action lawsuit that claims Netflix unlawfully kept and disclosed information, including records on the movies and TV shows its customers viewed. Netflix denies that it has done anything wrong.

### What does the Settlement provide?

Netflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History (that is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix subscriber for at least 365 days, with some exceptions.

In addition, Netflix will pay $9 million into a Settlement Fund to:
• Make donations to Court-approved not-for-profit organizations, institutions, or programs.
• Pay notice and settlement administration expenses.
• Pay attorneys' fees of up to 25% or $2.25 million of the Settlement Fund, plus up to $25,000 in expenses.
• Pay a total incentive award of $30,000 to the Named Plaintiffs.

Proposals from potential donation recipients will be sought, and, after consideration, recommendations will be made to the Court. A list of the proposed donation recipients will be posted on the website.

### Your Options

If you do nothing, you will remain in the Settlement and your rights will be affected. If you do not want to be included, you must exclude yourself by November 14, 2012. If you exclude yourself you will keep your right to sue Netflix about the claims in this lawsuit. If you remain in the Settlement, you can object to it by November 14, 2012.

The Court will hold a hearing on December 5, 2012 to consider any objections, whether to approve the Settlement, award attorneys' fees, and incentive award. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

For more information: 1-866-898-5088   www.VideoPrivacyClass.com
PO Box 2750 Faribault, MN 55021-9750

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

1

**Maria Carapia**

**To:**
**Subject:**  RE: NTFX Video Privacy Lawsuit – Current and Former Netflix Subscribers

----- Forwarded Message -----
From: Online DVD Class Action Administrator <noreply@videoprivacyclass.com>
To: kaylenesworld@embarqmail.com
Sent: Mon, 30 Jul 2012 03:04:04 -0400 (EDT)
Subject: Video Privacy Lawsuit – Current and Former Netflix Subscribers

## If You Are a Current or Former Netflix Subscriber
## A Class Action Settlement Could Affect You

*Para una notificación en Español, llamar 1-866-898-5088 o visitar www.VideoPrivacyClass.com*

r records show that you were a current or former Netflix subscriber as of July 5, 2012. We are emailing to tell you about a Settlement that y affect your legal rights. Please read this email carefully. Go to www.VideoPrivacyClass.com for more information.

Settlement has been reached in a class action lawsuit that claims Netflix unlawfully kept and disclosed information, including records on th vies and TV shows its customers viewed. Netflix denies that it has done anything wrong.

### What does the Settlement provide?

tflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History at is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix scriber for at least 365 days, with some exceptions.

addition, Netflix will pay $9 million into a Settlement Fund to:
lake donations to Court-approved not-for-profit organizations, institutions, or programs.
ay notice and settlement administration expenses.
ay attorneys' fees of up to 25% or $2.25 million of the Settlement Fund, plus up to $25,000 in expenses.
ay a total incentive award of $30,000 to the Named Plaintiffs.

)posals from potential donation recipients will be sought, and, after consideration, recommendations will be made to the Court. A list of the posed donation recipients will be posted on the website.

### Your Options

ou do nothing, you will remain in the Settlement and your rights will be affected. If you do not want to be included, you must exclude irself by November 14, 2012. If you exclude yourself you will keep your right to sue Netflix about the claims in this lawsuit. If you remain ir Settlement, you can object to it by November 14, 2012.

Court will hold a hearing on December 5, 2012 to consider any objections, whether to approve the Settlement, award attorneys' fees, ar entive award. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or ak for you at the hearing.

**For more Information: 1-866-898-5088 www.VideoPrivacyClass.com**
**PO Box 2750 Faribault, MN 55021-9750**

s email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended ipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments reto.

1

**Maria Carapia**

To:
Subject: RE: Fwd: Video Privacy Lawsuit – Current and Former Netflix Subscribers

---------- Forwarded message ----------
From: **Online DVD Class Action Administrator** <noreply@videoprivacyclass.com>
Date: Sat, Jul 28, 2012 at 6:43 PM
Subject: Video Privacy Lawsuit – Current and Former Netflix Subscribers
To: katherine.strohlein@tbwachiat.com

## If You Are a Current or Former Netflix Subscriber
## A Class Action Settlement Could Affect You

*Para una notificación en Español, llamar 1-866-898-5088 o visitar* www.VideoPrivacyClass.com

r records show that you were a current or former Netflix subscriber as of July 5, 2012. We are emailing to tell you about a Settlement that y affect your legal rights. Please read this email carefully. Go to www.VideoPrivacyClass.com for more information.

settlement has been reached in a class action lawsuit that claims Netflix unlawfully kept and disclosed information, including records on th vies and TV shows its customers viewed. Netflix denies that it has done anything wrong.

### What does the Settlement provide?

tflix has agreed to change its data retention practices so that it separates (known as "decoupling") Entertainment Content Viewing History at is, movies and TV shows that someone watched) from identification information for those subscribers who have not been a Netflix scriber for at least 365 days, with some exceptions.

addition, Netflix will pay $9 million into a Settlement Fund to:
ake donations to Court-approved not-for-profit organizations, institutions, or programs.
ay notice and settlement administration expenses.
ay attorneys' fees of up to 25% or $2.25 million of the Settlement Fund, plus up to $25,000 in expenses.
ay a total incentive award of $30,000 to the Named Plaintiffs.

posals from potential donation recipients will be sought, and, after consideration, recommendations will be made to the Court. A list of th posed donation recipients will be posted on the website.

### Your Options

ou do nothing, you will remain in the Settlement and your rights will be affected. If you do not want to be included, you must exclude rself by November 14, 2012. If you exclude yourself you will keep your right to sue Netflix about the claims in this lawsuit. If you remain in Settlement, you can object to it by November 14, 2012.

Court will hold a hearing on December 5, 2012 to consider any objections, whether to approve the Settlement, award attorneys' fees, an entive award. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or ak for you at the hearing.

**For more information: 1-866-898-5088   www.VideoPrivacyClass.com**
**PO Box 2750 Faribault, MN 55021-9750**

s email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended ipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments reto.

This e-mail is intended only for the named person or entity to which it is addressed and contains valuable business information that is proprietary, privileged, confidential and/or otherwise protected from disclosure.

1