November 11, 2012

Clerk of the Court

Clerk of the Court
United States District Court for
The Northern District of California (San Jose Division)
Robert F. Peckham Federal Building
280 South 1st Street
San Jose, CA 95113

**FILED**

NOV 16 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Re:   5:11-cv-00379-EJD

Enclosed hereto is the supplemental objection of Jeffrey Gross. I have previously provided my personal information (address and telephone number) on my initial objection and will not repeat it herein. I have already stated that I do not intend to appear at the hearing.

Please file this forthwith. In the event that this does not arrive by November 14, please accept it late as it will have been mailed before then and I had no power for several days due to Hurricane Sandy and could not have completed my objection earlier.

Very truly yours,

Jeffrey Gross

Plaintiff's motion for approval of the settlement should be denied for the reasons set forth below and those set forth in the Response filed by Gary Wilens, which is incorporated by reference herein.

## I. The Requested Attorney's Fees Are Unreasonable

Under the circumstances, it would be an abuse of discretion to apply the percentage of common fund approach to determine reasonable attorney's fees. The common fund approach was designed to apply to situations in which the overall economic benefit to the class is easy to determine. Here, the $9 million total settlement bears no relationship to the economic benefit to the class because any such benefit is ephemeral. For example, if the settlement were doubled, the economic benefit to class members would not double. In fact, it would stay the same – there would still be a zero or de minimus benefit to class members. Therefore, only the lodestar approach should be considered here.

Yet, Plaintiff's counsel has <u>not</u> provided detailed time records. Instead, they have only provided a chart of the total number of hours by more than fifteen attorneys. It is impossible to assess the duplication of effort based on this paltry record. Furthermore, it is inherently unreasonable to involve more than 15 attorneys on a matter that involved no motion briefing (other than a self-serving motion to become class counsel, a motion which provided no benefit to the class) and involved no review of documents or discovery. Indeed, it is unclear why counsel needed to hire contract attorneys. It may well be the case that much of the work done by junior associates or contract lawyers was non-legal in nature.

Several of Plaintiffs' counsel's description of the more than 2,000 hours spent by his firm are either borderline misleading or run of the mill events that occur in nearly every civil case in this District, in which the attorneys fees are lower than a million dollars by an order of magnitude. For example:

- "Interviewed dozens of current and former subscribers" – it is unclear why current and former subscribers would have useful information about Netflix's internal practices. Was there any marginal benefit to interviewing "dozens" of subscribers as opposed to a handful?

- "Communicated early in often with Netflix's counsel." While civility and communication are virtues in litigation, there were no discovery disputes or procedural impasses that required negotiation. This could not have justified more than 10 hours.

- "Faciliated collaboration between all attorneys." This means nothing more than having scores of lawyers talking amongst themselves and then using it to justify their fee.

and Security Research Initiative" but it is unclear if the proposed funds will be enough to actually get this initiative off the ground, and what specifically this group intends to do. "Research, education, and outreach" is too vague.

- The USC Gould School of Law ($357,598.53). Funding unspecified "research" to help "sound policy" is too vague to provide any comfort that the driving nexus exists.

- University of Maine Center for Law and Innovation ($350,273.98). Supporting a two year development plan to provide more information privacy law classes for law school students is not a use that furthers the interests of the class. Likewise, student internships and pro bono privacy clinical initiatives are too small bore to help the class as a whole.

- The Rose Foundation ($501,681.44). Remarkably, the Rose Foundation does not intend to use a penny of its funds to directly promote the interests of the class. Rather, it intends to distribute the money to other, unspecified, charities. Plaintiffs' counsel is asking the Court to abdicate any oversight into how the money would be used. This is akin to telling the Court that the recipients will be named later – a fatal flaw in the *Kelloggs* settlement.

- NYU Information Law Institute ($331,109.75). The proposed use of the funds is too general and is not targeted at privacy. The ILI's website says that: "As a venue for research and sharing ideas on societal impacts of information technology and digital media, the ILI promotes deeper understanding of key issues such as intellectual property, privacy, security, telecommunications, access-to-knowledge, technology design, civil liberties, Web 2.0, and more." General support for workshops, conference, and a "Code-a-thon," and hiring a lab manager and programmer are not uses that, at least without further information, demonstrate a driving nexus to this case.

- The Markkula Center for Applied Ethics (172,839.29). The Markkula Center's ambit is broad – it covers business ethics, government ethics, campus ethics, and bioethics. Money spent to "further its educational efforts and reach policy makers" is too vague. Clicking on the page on their website for Internet Ethics does not provide any specific information about what they do. Thus, there is no record that a "driving nexus" exists.

- The Samuelson Law Technology & Public Policy Clinic at UC Berkeley School of Law ($182,110.36). According to its website, students have written amicus briefs and otherwise advocated on cases involving privacy, intellectual property, and free speech. Well-trained new lawyers are certainly better than ill-prepared new lawyers, but money would be better spent on organizations that are completely dedicated to addressing privacy issues through full-time personnel. It is not clear at all how the clinic proposes to use the money. Rather, it appears that this money will go towards general use. That is certainly the impression from the glib statement of counsel that the clinic "will use its distribution to give its students and faculty the opportunity to strengthen consumers'

- "Briefed and responded to motions seeking appointment as interim class counsel." The class should not be penalized because multiple firms wanted to be class counsel. This in-fighting did not help the class.

- "Prepared Rule 26(a)(1) disclosures" As there were no documents in the possession of class representatives that would be necessary to prove the case, this was a pro forma task. Likewise, reviewing the Rule 26(A)(1) disclosures does not require an army of lawyers.

- "Propounded and reviewed discovery." This is disingenuous. There is no representation that Netflix produced any documents. Thus, this "review' could have been done in a matter of no more than a few hours.

- "Took action to protect the class from attorneys who attempted to improperly interfere with the cy pre process for their own personal gains." It is ironic that counsel feigns to be offended by lawyers acting for their own self-interest. The description in Mr. Edelson's Declaration is not persuasive as a justification for more fees. The class does not care if some other lawyer tried to persuade a not-for-profit from applying. The class need not pay for Mr. Edelson's firm's "investigation" of this conduct.

In sum, what counsel did – drafting a complaint, talking to an adversary, amending a complaint, participating in settlement discussions, papering a settlement agreement, and seeking court approval for it – are simply not the grist for a multi-million dollar attorney's fee. Unless and until counsel provides more detailed information, counsel should receive perhaps 25% of its requested fee.

## II.  The Cy Pres Provisions of the Agreement Have Not Been Justified

As set forth in my earlier objection, there was a procedural failure in that class members did not have an opportunity to participate in the selection of cy pres recipients. And Netflix should not be permitted to claim a tax deduction for the amounts donated. Beyond these fundamental threshold problems, several of the proposed recipients of the cy pres award are not tied closely enough to remedying the privacy issues that underlie this case. In the Ninth Circuit's parlance, there must be a "driving nexus" between the plaintiff class and the recipients of a cy pres award. Here, out of the 20 proposed recipients, at least several lack that driving nexus based on the barren record before the Court.

- The Berkman Center of Internet & Society ($430,442.68).  The Berkman Center wishes to use its funds in three ways, although the Court is not informed of the exact distribution among the three purposes. In part, the money would support the Youth and Media Lab which – while it sounds like a beneficent and well-meaning effort – focuses much of its efforts fighting cyber-bullying and teaching youth about intellectual property. Such noble uses do not further the class. The Curriculum Development Initiative is described in too generic a way for the Court to have any assurance that the driving nexus exists. Likewise, the Berkman Center wants to establish a new "Privacy

voice on privacy..." The class is not interested in preparing the next cadre of privacy lawyers (who presumably may want to work for plaintiff's counsel some day).

The above examples are the end result of a flawed process by which class members had no opportunity to comment and the Court is provided with only limited information. The entire process is flawed and cannot survive judicial scrutiny.

**Conclusion**

Approving this Settlement will foster distrust of the judiciary and our system of justice, as it will further enhance the widely-held notion that lawyers are bringing flimsy cases on behalf of an anonymous class and settling such the lawyers get millions and the class gets nothing. The Ninth Circuit has urged District Courts to be vigilant to these abuses. That nearly 100 people have objected to a settlement – each of whom would have gained only pennies even if there had been a cash distribution of $9 million to class members – speaks volumes. The motion should be denied.

Respectfully submitted

/Jeffrey E. Gross/

Jeffrey E. Gross

**Service List**

**Settlement Class Counsel**

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Chandler R. Givens
Edelson McGuire LLC
350 N. LaSalle, Suite 1300
Chicago, IL 60654

**Defendants' Counsel**

Keith E. Eggleton
Rodney G. Strickland
Dale R. Bish
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304

Voss
7 Delaware Ave
Jericho NY 11753

MID-ISLAND NY 117
13 NOV 2012



Clerk of the Court
USDC for NDCA
Robert Peckham Federal Building
280 South 1st Street
San Jose, CA 95113