KEITH E. EGGLETON, State Bar No. 159842
Email: keggleton@wsgr.com
RODNEY G. STRICKLAND, State Bar No. 161934
Email: rstrickland@wsgr.com
DALE BISH, State Bar No. 235390
Email: dbish@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendant
NETFLIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: NETFLIX PRIVACY LITIGATION | CASE NO.: 5:11-CV-00379-EJD<br><br>JUDGE: Hon. Edward J. Davila<br><br>**NETFLIX INC.'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT**<br><br>Date: December 5, 2012<br>Time: 10:00 a.m.<br>Location: Courtroom 4, 5th Floor |

Netflix, Inc. ("Netflix") respectfully submits this response to the objections that have been filed to the proposed settlement and to request that the Court grant final approval of the settlement. Netflix understands that plaintiffs are filing a comprehensive response that will address the objections in detail. *See* Dkt. No. 222 (Motion for Leave to File Oversized Reply Memorandum). Therefore, Netflix will be brief and to the point.

After more than a year of litigation, the parties agreed to a settlement that addresses the core allegations of plaintiffs' complaint while taking into account the strength of Netflix's defenses. The proposed settlement consists of two parts: (1) injunctive relief requiring Netflix to "decouple" the Entertainment Content Viewing Histories from Identification Information and Payment Method for those Class Members who cancel their subscriptions and do not rejoin within one year;[1] and (2) a $9 million *cy pres* settlement fund.

In considering "whether the settlement is fundamentally fair, adequate, and reasonable," district courts consider several factors, including the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; and the reaction of the class members to the proposed settlement. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981)); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The issue "is not whether the settlement could be better, but whether it is fair, reasonable, and adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Ultimately, a settlement is a compromise and as such, the fairness determination is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625. The fairness determination will only be set aside upon a "strong showing that the district court's decision was a clear abuse of discretion." *Lane v. Facebook, Inc.*, 696 F.3d

---

[1] Capitalized terms are defined in the parties' May 2, 2012 Class Action Settlement Agreement, Dkt No. 76-1 ("Settlement Agreement").

811, 818 (9th Cir. 2012) (affirming approval of privacy class action settlement consisting of injunctive remedy and $9.5 million *cy pres* settlement fund).

The vast majority of the objections to the settlement take issue with the *cy pres* aspect of the settlement with many suggesting that class members should receive a substantial monetary payment. These objectors ignore that this is exactly the type of settlement in which *cy pres* is appropriate, as the Ninth Circuit recently recognized in *Lane v. Facebook*. Specifically, the settlement fund here is "non-distributable" because distributing less than $9 million (i.e., the fund less expenses and any award of attorneys fees) amongst tens of millions of class members "would be infeasible given that each class member's direct recovery would be de minimis" and prohibitively expensive. *Id*. at 819, 821. These objections also fail to give weight to the injunctive aspect of the settlement and do not take into account the strength of Netflix's defenses on the merits or the other significant hurdles to classwide recovery in this case. *Id.* at 818-19 ("Both the district court and this court must evaluate the fairness of a settlement as a whole, rather than assessing its individual components.").

First, the injunctive aspect of the settlement provides a benefit to every member of the class. In the event a class member cancels her subscription and does not rejoin within one year, Netflix will "decouple" her Entertainment Content Viewing Histories from her Identification Information and Payment Method. This is the fundamental aspect of the settlement because it addresses the core allegation of the complaint about Netflix retaining member information. *See, e.g*., AC ¶¶ 20-40; 54-56. Netflix is not legally obligated to make this change to its systems, which will require substantial engineering effort and expense, but has agreed to do so as part of the settlement.

Second, the class is unlikely to prevail on the merits of these claims because Netflix complies with the Video Privacy Protection Act ("VPPA"). Plaintiffs' primary allegation is that Section 2710(e) of the VPPA requires Netflix to destroy "personally identifiable information" or "PII" for former Netflix subscribers. That section of the statute provides:

> A person subject to this section shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no

    pending requests or orders for access to such information under subsection (b)(2) or (c)(2) or pursuant to a court order.

18 U.S.C. § 2710(e). Netflix maintains and uses PII to continuously improve its service and offer a highly-personalized experience. The company's proprietary recommendation and merchandising technology enables Netflix to predict and recommend titles and effectively merchandise its library to subscribers. This personalization is accomplished in part by analyzing data on the viewing preferences and history of others, including former subscribers. Because the data is still necessary for the purpose for which it was collected, Netflix is under no obligation to destroy it.

    The California Customer Records Act claim fails because it does not mandate destruction of records which a business is still maintaining; it only sets forth the means by which destruction should take place if it is being done. Cal. Civ. Code § 1798.81 ("A business shall take all reasonable steps to destroy, or arrange for the destruction of a customer's record within its custody or control containing personal information which is no longer to be retained by the business by (a) shredding, (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or undecipherable through any means.").

    With respect to plaintiffs' allegations that Netflix improperly uses PII for unspecified "marketing and advertising purposes" (AC ¶ 58) and sold their information to unspecified third parties (AC ¶ 69), Netflix has consistently denied those allegations (*see, e.g*., Settlement Agreement at 2) and plaintiffs themselves have walked away from that theory of liability. *See* Plaintiffs' Motion for Final Approval at 10 ("Ultimately, however, through the exchange of both formal and informal discovery, Plaintiffs determined that Netflix was not selling Class members' protected PII to third parties."). To the extent information is made available to third parties to provide services to members, any such "disclosures" are consistent with the company's Terms of Use and the VPPA's express statutory exceptions. *See* Plaintiffs' Motion for Final Approval at 11 ("Plaintiffs concluded that their third-party services theories would be both highly technical in nature, and, given recent broad interpretations of the VPPA's 'ordinary course of business' exception, unlikely to succeed"). In all instances, Netflix takes confidentiality seriously, complies

with the VPPA, and believes this settlement is another example of the company's commitment to ensuring information about its members remains confidential.

Third, the objectors do not take into account the significant obstacles to classwide recovery.  For example, courts throughout the country, including two courts of appeal and the Northern District of California, have held there is no private right of action for alleged violations of § 2710(e), i.e., the retention claims that are the core of plaintiffs' allegations.  *See, e.g.*, *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012); *Daniel v. Cantrell*, 375 F.3d 377, 385 (6th Cir. 2004); *Rodriguez v. Sony Computer Entertainment America, LLC, et al.*, 11-cv-05084, Dkt. No. 59, at 1 (N.D. Cal.) (following the Seventh Circuit's reasoning, and dismissing plaintiff's retention claims under the VPPA); *Sterk v. Best Buy*, 11-cv-01894, Dkt. 91, at 7-9 (D. Minn.) (finding that plaintiff's retention claim "is foreclosed by the Seventh Circuit's decision in [*Redbox*]" and citing to the later district court's decision in *Redbox* in holding that "[t]he SCA does not provide a private right of relief for damages to enforce the retention provision of the VPPA.").

Even if there was a private right of action, the class would not recover significant damages given the circumstances of this case.  Although some objectors suggest that class members are entitled to $2,500 in "statutory damages," they do not take in account the discretionary nature of such an award.  18 U.S.C. § 2710(c)(2) ("The court **may** award . . . actual damages but not less than liquidated damages in an amount of $2,500)(emphasis added).  In other words, the court would have discretion to award damages, or not, in those instances where there are actual damages.  Where there are no actual damages – and no objector claims to have any such damages – it is unlikely that the class would recover anything.

Finally, some objectors question whether the value of the settlement justifies the amount of attorney's fees sought by plaintiffs' counsel.  That is an issue on which Netflix takes no position and, in any event, should not interfere with the approval of the settlement.  *See* Settlement Agreement § 10.2 ("Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel set forth in Subsection

9.1 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.").

From the inception of this lawsuit, Netflix has been prepared to demonstrate that it complies with the federal and state privacy laws, including the VPPA. However, because the proposed settlement is "fair, adequate and reasonable," Netflix respectfully requests the objections to the class action settlement be overruled and that plaintiffs' Motion for Final Approval be granted.

DATED:  November 28, 2012                      WILSON SONSINI GOODRICH & ROSATI
                                                Professional Corporation

                                                By:   /s/ Keith E. Eggleton
                                                        Keith E. Eggleton

                                                Attorneys for Defendant
                                                NETFLIX, INC.