KRISLOV & ASSOCIATES, LTD.
Clinton A. Krislov
John Orellana
20 North Wacker Dr., Ste. 1350
Chicago, IL 60606
Tel: (312) 606-0500
Fax: (312) 606-0207
Firm Number: 21169

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: NETFLIX PRIVACY LITIGATION, | Case No. 5:11-cv-00379-EJD |
| | Honorable Edward J. Davila |
| | ***REPLY TO SETTLEMENT PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD*** |

Name of Objector:   Matthew D. Tanner
Address:            53 West Jackson Boulevard, Suite 400
                    Chicago, Illinois 60604
Telephone:          (312) 588-1970

Omitting to address many of Objector Tanner's objections, Settlement Counsel Edelson's Reply Memorandum In Support of Final Approval ("Settlement Reply") totally ignores several deficiencies in the Settlement and viciously attacks Attorney Krislov, more intent on personally attacking objectors than the merits of those objections.

**A. Our Filing with the Court was Timely.**

Settlement Plaintiffs' assertion that Mr. Tanner's objection is untimely is wrong. Mr. Tanner's objection was FedEx post-marked and sent to the Court on November 14, 2012. *See Exhibit A*. Additionally, Settlement Class Counsel received their copies by in-person delivery the next day

---

Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD                                                                                      1

(November 15, 2012). In contrast, Settlement Plaintiffs' cited cases all denied objections only for filings that were untimely *with the court* (and certainly more than a single day), not service to Counsel, which occurred at least as early as would it would have in the ordinary course. Thus, the objection was not untimely.

**B. The Value of the Injunctive Relief and "Decoupling."**

Settlement Plaintiffs do not address the objection to the value of the injunctive relief and the Settlement's failure to decouple Class Members' ZIP code, birthdate and gender information from their Entertainment Content Viewing Histories. In our objection, we referenced research which showed that these three pieces of information are alone sufficient to expose the identities of 87.1% of United States citizens. (*See* Dkt. 201 at 7-8) As we argued, the implications of this study are recognized at law, leading Congress to enact HIPAA privacy regulations which require birthdates to be redacted to only the year of birth, and ZIP codes to only the first three (3) digits. *Id.*

Neither Settlement Plaintiffs nor Netflix deny that these three pieces of information remain attached to Class Members' Entertainment Content Viewing Histories and that these are alone sufficient to reestablish the link. Nor do Settlement Plaintiffs actually address this point directly, opting instead to mischaracterize the argument as follows: "[H]is claim that the Settlement's injunctive relief is illusory, because Netflix could theoretically re-identify Class Members' information and reconstruct it to personally-identifiable form, even after the de-coupling required by the Settlement— have already been dealt with above." (*See* Dkt. 226 at 61). The only relevant "above" portion to which Settlement Plaintiffs refer completely misses the mark and merely states "[b]ut as explained in the Final Approval Motion, the decoupling is permanent and subject to a Court-ordered injunction." *Id.* at 30. However, the main concern with allowing Netflix to retain constructively re-identifiable information is not only that *Netflix* may re-couple Class Members' identities, but that outside third-

---
Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD

2

parties (such as hackers or subversive Netflix employees) will obtain this information and re-identify Class Members, which can be achieved using publicly available census data.

Settlement Plaintiffs also indirectly address this objection by stating that *destruction* of Class Members' personally identifiable information is not required, because the injunction disconnects identifying information from Class Members' Entertainment Content Viewing Histories and "[t]hus, once retained information no longer connects an individual with their specific video rental history—*i.e.*, once that information has been "decoupled"—subsection (e) is satisfied and the PII is, for the purposes of the statute, destroyed.'" *Id.* at 30-31.

But the entire point of our objection is that the identifying information is *not actually disconnected*, *i.e.*, that enough personally identifiable information (ZIP codes, genders and birthdates) remains connected to Class Members' Entertainment Content Viewing Histories to allow Netflix and third parties to identify them and associate them with a particular viewing history. Again, Settlement Plaintiffs pose no answer to this objection, opting to ignore it instead.

Settlement Plaintiffs have also not addressed why the Settlement does not define, or even begin to explain, what the term "decouple" actually means. They continue to say that the decoupling will be "permanent," but the permanence is irrelevant if the underlying relief is ineffective. For instance, does decouple merely imply that Class Members' Identification Information and Entertainment Content Viewing History will be kept in separate databases, but still attached by anonymous identification numbers? Settlement Plaintiffs cannot at once play up the value of their injunctive relief by stating that it protects Class Members from "the real risk that such sensitive information will be hacked, stolen, and/or used for illicit purposes" and then ignore the implications of a respected study that reveals fatal flaws in that protection. Mr. Tanner's objection proposes a perfectly reasonable alternative to destroying this information, which Settlement Plaintiffs and Netflix so adamantly oppose, by instead requiring Netflix to follow the HIPAA privacy regulation practice and shorten

_____
Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD

3

birthdates to only the year and ZIP codes to only the first three digits. This solution even allows Netflix to retain similarly detailed data on viewing preferences based on location, age and gender. This objection cannot be glossed over, because it *severely* undermines the value of the injunction to Class Members, to the point that it may even be *valueless*.

### C. Vast Expansion of the Class.

Settlement Plaintiffs attempt to downplay the expansion of the Class, arguing that even if the Class included only Section (e) Class Members, it would still be too large to warrant anything other than *cy pres* relief. Yet, we argued that the damages for section (e) Class Members are undervalued, possibly by as much as *twenty times*. (*See* Dkt. 201 at 20-21). What is troubling is that the Parties expanded the Class to include an additional 32 million members, more than doubling the Class size, with what Settlement Plaintiffs purport to be worthless claims, only to dilute any potential recovery for Class Members with valid claims.

Even if the common fund remained at $9 million, the Settlement could at least *attempt* to provide direct monetary payment as the current revised settlement pending preliminary approval in *Fraley v. Facebook Inc.,* N.D. Cal., No. 3:11-cv-01726-RS, *revised settlement filed* 10/5/12. There, the parties bumped the common fund from $10 million to $20 million, providing $10 per class member, unless the fund is exhausted by all the claims, at which point they receive a *pro rata* share. That settlement more appropriately diverts to *cy pres* only if the *pro rata* share is less than $5 per claimant. This Court should sever, or at least, split into a separate subclass Section (b) only Class Members and follow an approach similar to that in *Fraley* for Section (e) Class Members.

### D. Dr. Egelman's Damages Evaluation.

Settlement Plaintiffs also fail to adequately address Mr. Tanner's objection to Dr. Egelman's damages evaluation, and again, either misunderstand or mischaracterize the objection, of which they only address one part.

Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD

4

Mr. Tanner first objects to Dr. Egelman's evaluation of damages because it is based on studies which deal with only one-time purchases, and does not extrapolate those results over the subsequent purchases Class Members make when they pay the recurring monthly fee, or renew subscriptions. Settlement Plaintiffs respond that Mr. Tanner "fundamentally misunderstands the nature of Dr. Egelman's report [because] Dr. Egelman's survey did not ask 'how much of your monthly Netflix subscription rate pays for VPPA compliance,' [but] asked participants how much they value VPPA compliance on their own." 51. Settlement Plaintiffs not only misunderstand Mr. Tanner's objection, but also Dr. Egelman's report. Mr. Tanner's objection simply states that Dr. Egelman fails to multiply his figures by the amount of "transactions" that occur, something which his study did not account for, as the comparisons were made to one-time purchase transactions without continuous privacy intrusions as with the Netflix service. A one-time transaction for the purchase of "batteries" or "sex toys" for which information on only that single purchase is recorded and retained is hardly analogous to the Netflix service, under which consumers engage in a series of transactions, by making multiple payments for continued service and giving up new information with each transaction. In short, Mr. Tanner's objection here merely reflects the common sense intuition that a consumer would value the privacy of his or her rental activity spanning over ten (10) years moreso than one single month. If that is not the case, Dr. Egelman's study fails to show it.

Settlement Plaintiffs also misunderstand Egelman's report when they claim it shows how much consumers specifically "value VPPA compliance." Dr. Egelman does not actually claim his report estimates the value consumers place on VPPA compliance, and neither his report nor survey to subjects refer to the VPPA. (*See* Dkt. 191 at 12-26). Rather, Dr. Egelman attempts to measure the value of consumers' video rental history privacy in the free market, not how much they value the violation of their rights under the VPPA.

Mr. Tanner next objects to the portion of Dr. Egelman's damages evaluation that compares Netflix rental histories to other data types. In short, he objects that Dr. Egelman's survey does not provide a definition of "Netflix Video Rental History" when it asks subjects to rank the sensitivity of various data categories. By including categories such as "Mailing Address," "Name," "Date of Birth," and "Email Address" as categories to be ranked in the same study alongside "Netflix Video Rental History," Dr. Egelman's survey causes subjects to infer that those pieces of information are not within the definition of "Netflix Video Rental History." However, that conception does not match the facts of *this* case, where mailing addresses, birthdates, email addresses, names and payment information were *tied to and included in* Class Members' Entertainment Content Viewing Histories. Accordingly, the results of his study which rank Netflix Video Rental History last, while ranking Mailing Address first, are fundamentally flawed and not indicative of the type of the information of Class Members that Netflix actually retained. Settlement Plaintiffs do not respond whatsoever to this objection.

While we recognize that damage estimations cannot be perfect, Dr. Egelman's report suffers from a couple methodological flaws when applied to the facts of this case. His report needs to be modified to account for these variables and should actually show his calculations.

**E. The Structure and Timing of the *Cy Pres* Grant Process.**

Settlement Plaintiffs totally mischaracterize Mr. Tanner's objection to the *cy pres* process, stating "Krislov argues that the Settlement should be denied approval because the *cy pres* recipients are too good." (*See* Dkt. 226 at 63). Mr. Tanner's objection to the Settlement *cy pres* process, in short, is that the Settlement was constructed and timed to co-opt likely objectors and *directly solicit* them to apply for substantial grants, compounded by setting the *cy pres* application deadline to occur before the date for filing objections, allowing the Parties to essentially buy off the most likely opposition. Under the Settlement's structure, a non-profit that seeks to object must do so in lieu of applying for a *cy pres* disbursement.

_____
Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD

6

### F. The Personal Vendetta of Mr. Edelson.

Settlement Class Counsel's personal attacks on objectors and their counsel should be ignored or stricken. The penchant to destroy (preemptively or otherwise) one's opponent rather than deal with the objections on the merits is an unfortunate diversion from the issues before the Court. We hope it will end the untruthful personal attacks that began with Mr. Edelson's October 31, 2012 declaration (*See* Dkt. 191 at 21).

I regret that I cannot be before the court in-person as I am in corporate takeover litigation with a vote December 5, 2012.

Accordingly, the Settlement should be vacated and Settlement Class Counsel replaced.

Respectfully submitted,

Dated: December 3, 2012         /s/ Clinton A. Krislov
                                Attorney for Objector, Matthew Tanner

Clinton A. Krislov
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Dr., Ste. 1350
Chicago, IL 60606
Tel: (312) 606-0500
Fax: (312) 606-0207
Firm Number: 21169

John Orellana
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Dr., Ste. 1350
Chicago, IL 60606
Tel: (312) 606-0500
Fax: (312) 606-0207
Firm Number: 21169

---

Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

---

Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD

8

**FedEx**

**794078484840**

Ship (P/U) date:
Wed 11/14/2012 6:07 pm

Krislov & Associates, Ltd.
Clinton A. Krislov
20 N. WACKER, SUITE 1350
CHICAGO, IL  US  60606
312 606-0500

**Delivered**
Signed for by: B.WALTON

Actual delivery:
Thur 11/15/2012 10:22 am

United States District Court
Clerk, USDC No. District of Cal.
280 S. 1st Street
Robert F. Peckham Fed. Bldg.
SAN JOSE, CA  US  95113
312 606-0500

**Travel History**

| Date/Time | Activity | Location |
|---|---|---|
| 11/15/2012 - Thursday | | |
| 10:22 am | Delivered | SAN JOSE, CA |
| 8:06 am | On FedEx vehicle for delivery | SAN JOSE, CA |
| 7:29 am | At local FedEx facility | SAN JOSE, CA |
| 6:05 am | Departed FedEx location | OAKLAND, CA |
| 4:58 am | Arrived at FedEx location | OAKLAND, CA |
| 2:51 am | Departed FedEx location | MEMPHIS, TN |
| 12:31 am | Arrived at FedEx location | MEMPHIS, TN |
| 11/14/2012 - Wednesday | | |
| 9:10 pm | Left FedEx origin facility | CHICAGO, IL |
| 6:07 pm | Picked up | CHICAGO, IL |
| 4:52 pm | Shipment Information sent to FedEx | |

Local Scan Time

**Shipment Facts**

| | | | |
|---|---|---|---|
| Tracking number | 794078484840 | Service | FedEx Standard Overnight |
| Weight | 2 lbs | Delivery attempts | 1 |
| Delivered To | Receptionist/Front Desk | Total pieces | 1 |
| Total shipment weight | 2 lbs / 0.9 kgs | Terms | Not Available |
| | | Packaging | FedEx Envelope |
| Shipper reference | Netflix | | |
| Special handling section | Deliver Weekday | | |

---

Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD

9

KRISLOV & ASSOCIATES, LTD.
Clinton A. Krislov
John Orellana
20 North Wacker Dr., Ste. 1350
Chicago, IL 60606
Tel: (312) 606-0500
Fax: (312) 606-0207
Firm Number: 21169

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| *IN RE: NETFLIX PRIVACY LITIGATION*, | Case No. 5:11-cv-00379-EJD |
| | Honorable Edward J. Davila |
| | ***PROOF OF SERVICE*** |

TO:  Jay Edelson
     350 North LaSalle
     13th Floor
     Chicago, Illinois 60654
     Tel: (312) 589-6370
     Fax: (312) 589-6378

     Keith Eggleton
     Wilson, Sonsini, Goodrich & Rosati, P.C.
     650 Page Mill Road
     Palo Alto, California 94304-1050
     Tel: (650) 493-9300
     Fax: (650) 565-5100

I, JOHN ORELLANA, hereby certify that on December 3, 2012, I provided service to Jay Edelson by personal messenger at the above listed address and email at jedelson@edelson.com, and to Keith Eggleton by FedEx overnight delivery at the above listed address and email at keggleton@wsgr.com.

Dated: December 3, 2012                                          /s/ John P. Orellana

---

Tanner's Reply to Settlement Plaintiffs' Reply Memorandum In Support of Final Approval of Class Action Settlement
Case No. 5:11-cv-00379-EJD

10