# KRISLOV & ASSOCIATES, LTD.

*Attorneys at Law*

CIVIC OPERA BUILDING, SUITE 1350
20 NORTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

FAX (312) 606-0207
TELEPHONE (312) 606-0500

March 6, 2013

**FILED**

MAR 1 3 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

*Via electronic filing and regular mail*
Honorable Edward J. Davila
United States District Court
Northern District of California
280 South First Street
San Jose, California 95113

Re:  In re Netflix Privacy Litigation
     Case No. 5:11-cv-00379-EJD

Dear Judge Davila:

As the attorney for Objector Matthew Tanner, I write to advise you of the recent Ninth Circuit decision in Lane v. Facebook, Inc., __ F.3d __, 2013 WL 765140 (9th Cir. February 26, 2013)(a copy of which is attached) in which the Court's denial of *en banc* rehearing of the panel's approval of a *cy pres* settlement was accompanied by a five page dissent from Circuit Judge Smith, on behalf of *six* Ninth Circuit judges dissenting to the denial of *en banc* review, arguing that *cy pres* awards should not be approved without a showing that the settlement is reasonably certain to both (1) benefit the class, and (2) advance the objectives of the statutes relied upon in bringing the suit.

Writing for the six dissenting Circuit Judges and supporting Judge Kleinfeld's dissent from the original settlement approval, Judge Smith criticizes the majority's acceptance of the *cy pres*-created beneficiary's open ended mission statement's sufficiency to support *cy pres* award approval, an open ended mission statement which the Plaintiffs in this case have copied almost *verbatim* into their own settlement.

Judge Smith also raises the same criticisms we asserted for Objector Tanner in his Objection at page 18 regarding the *cy pres* beneficiaries' ability to advance the objectives of the statutes relied upon in this suit:

> [T]hese statutes all share a common purpose—preventing the
> *unauthorized* access or disclosure of private information. Yet the DTF's
> sole stated purpose is to "educate users, regulators, and enterprises" on
> how to protect Internet privacy "through *user control*." Lane, 696 F.3d
> at 822 (emphasis added).  Plaintiffs' claims, however, have nothing to do
> with users' lack of "education" or "control."  Instead, they relate to
> *misconduct* by Internet companies that wrongfully exposes private
> information in
> ways that even educated users cannot anticipate, prevent, or direct…
> [A]n organization that focuses on protecting privacy

# KRISLOV & ASSOCIATES, LTD.

Honorable Edward J. Davila
United States District Court
Northern District of California
Page 2

> solely through user control can *never* prevent unauthorized access or
> disclosure of private information where the alleged wrongdoer *already*
> *has unfettered access* to a user's records. The DTF can teach Facebook
> users how to create strong passwords, tinker with their privacy settings,
> and generally be more cautious online, but it can't teach users how to
> protect themselves from Facebook's deliberate misconduct.

<u>Lane</u>, 2013 WL 765140 at *2-3 (emphasis in original).

Here, Plaintiffs brought their claims under essentially all the same statutes as those in <u>Lane</u> and provided the same open-ended mission statement to direct the use of *cy pres* funds. Plaintiffs' claims, in fact, relate even less to a broad mission statement concerning internet privacy because their claims were completely premised on narrower privacy intrusions into their video content viewing histories.

In addition, the number of judges dissenting to the denial of the *en banc* rehearing of the <u>Lane</u> settlement shows that the case might well be decided differently by a different three judge panel of the Circuit. Respectfully, the issue of 100% *cy pres* settlements is a highly contentious one needing full court resolution.

Also, noting Mr. Wexler's February 21, 2013 letter to you regarding <u>In re Baby Products Antitrust Litigation</u>, ___ 3d ___, 2013 WL 599662 (3d Cir. February 19, 2013)(a copy of which is also attached), the Third Circuit now requires that before approving a settlement, especially one which is almost entirely *cy pres*, the court must determine the extent to which class members are actually receiving direct benefits.

As before, we appreciate your consideration of our objection. Finally, in order to eliminate any diversion on the *pro haec vice* issue, I have obtained local counsel and will be shortly filing a motion to appear *pro haec vice* in this matter.

Respectfully submitted,

Clinton A. Krislov

CAK/jpo
Enclosure
Cc:     Jay Edelson
        Keith Eggleton
        Matthew Tanner

Westlaw.

--- F.3d ----, 2013 WL 765140 (C.A.9 (Cal.))
(Cite as: 2013 WL 765140 (C.A.9 (Cal.)))

**H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
Ninth Circuit.
Sean LANE; Mohannaed Sheikha; Sean Martin; Ali
Sammour; Mohammaed Zidan; Sara Karrow; Colby
Henson; Denton Hunker; Firas Sheikha; Hassen
Sheikha; Linda Stewart; Tina Tran; Matthew Smith;
Erica Parnell; John Conway; Phillip Huerta; Alicia
Hunker; Megan Lynn Hancock, a minor, by and
through her parent Rebecca Holey; Austin Muhs;
Catherine Harris; Mario Herrera; Maryam Hosseiny,
individually and on behalf of themselves and all others
similarly situated, Plaintiffs–Appellees,
v.
FACEBOOK, INC., a Delaware corporation; Block-
buster, Inc., a Delaware corporation; Fandango, Inc., a
Delaware corporation; Hotwire, Inc., a Delaware
corporation; Sta Travel, Inc., a Delaware corporation;
Overstock.com, Inc., a Delaware corporation; Zap-
pos.com, Inc., a Delaware corporation; Gamefly, Inc.,
a Delaware corporation, Defendants–Appellees,
Ginger McCall, Class Member, Objector–Appellant.
Sean Lane; Mohannaed Sheikha; Sean Martin, indi-
vidually, and on behalf of themselves and all others
similarly situated; Ali Sammour; Mohammaed Zidan;
Sara Karrow; Colby Henson; Denton Hunker; Firas
Sheikha; Hassen Sheikha; Linda Stewart; Tina Tran;
Matthew Smith; Erica Parnell; John Conway; Phillip
Huerta; Alicia Hunker; Megan Lynn Hancock, a mi-
nor, by and through her parent Rebecca Holey; Austin
Muhs; Catherine Harris; Mario Herrera; Maryam
Hosseiny, individually and on behalf of themselves
and all others similarly situated, Plaintiffs–Appellees,
v.
Facebook, Inc., a Delaware corporation; Blockbuster,
Inc., a Delaware corporation; Hotwire, Inc., a Dela-
ware corporation; Fandango, Inc., a Delaware corpo-
ration; Sta Travel, Inc., a Delaware corporation;
Overstock.com, Inc., a Delaware corporation; Zap-
pos.com, Inc., a Delaware corporation; Gamefly, Inc.,
a Delaware corporation, Defendants–Appellees,
Megan Marek; Benjamin Trotter, Class Members,
Objectors–Appellants.

Nos. 10–16380, 10–16398.

Argued and Submitted Oct. 12, 2011.
Filed Feb. 26, 2013.

Michael H. Page, Public Citizen Litigation Group,
Washington, D.C .; Steven F. Helfand, Helfand Law
Offices, San Francisco, CA, for Objec-
tors–Appellants.

Scott A. Kamber, Kamber Law, LLC, New York, NY,
for Plaintiffs–Appellees.

Michael G. Rhodes, Cooley LLP, San Francisco, CA,
for Defendants–Appellees.

Appeal from the United States District Court for the
Northern District of California, Richard Seeborg,
District Judge, Presiding. D.C. No.
5:08–cv–03845–RS.

Before PROCTOR HUG, JR., ANDREW J. KLEIN-
FELD, and WILLIAM A. FLETCHER, Circuit
Judges.

**ORDER**
\*1 Judges Hug and W. Fletcher have voted to
deny appellants' petitions for rehearing. Judge Klein-
feld has voted to grant the petitions for rehearing.
Judge W. Fletcher has voted to deny the petitions for
rehearing en banc and Judge Hug has so recom-
mended. Judge Kleinfeld would grant the petitions for
rehearing en banc.

The full court was advised of the petitions for
rehearing en banc. A judge of the court requested a
vote on en banc rehearing. The matter failed to receive
a majority of the votes of the nonrecused active judges
in favor of en banc consideration. Fed. R.App. P. 35.

The petitions for rehearing and the petitions for
rehearing en banc are **DENIED.** Judge M. Smith's
dissent from the denial of en banc rehearing is filed
concurrently herewith.

M. SMITH, Circuit Judge, with whom KOZINSKI,
Chief Judge, and O'SCANNLAIN, BYBEE, BEA,
and IKUTA, Circuit Judges, join, dissenting from the
denial of rehearing en banc:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 765140 (C.A.9 (Cal.))
(Cite as: 2013 WL 765140 (C.A.9 (Cal.)))

Class action litigants are increasingly likely to employ the doctrine of cy pres to settle complex class actions.[FN1] Until recently, courts in our circuit were well-positioned to address the issues associated with this trend because our cy pres jurisprudence was clear. Under a line of cases beginning with *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir.1990), we required that a cy pres award (1) be reasonably certain to benefit the class, and (2) advance the objectives of the statutes relied upon in bringing suit. *See also Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir.2011); *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir.2012). By approving a settlement that fails both criteria, however, the majority in this case creates a significant loophole in our case law that will confuse litigants and judges, while endorsing cy pres settlements that in no way benefit class members. I therefore respectfully dissent from our unfortunate failure to rehear this case en banc.

> FN1. *See, e.g.,* Martin H. Redish et al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L.Rev. 617, 620 (2010) (discussing the "dramatic turn in modern class actions toward the use of cy pres relief").

## I.

We require district judges to be reasonably certain that class members will benefit before approving a cy pres settlement. *Six (6) Mexican Workers*, 904 F.2d at 1308. We have counseled that the "choice of charity and its relation to the class members and class claims—or lack thereof—*figure[s] heavily* in our analysis." *Dennis*, 697 F.3d at 865 (emphasis added). Thus, we have rejected settlements where the selected charity lacks "a substantial record of service" in remedying the types of wrongs alleged, or where the selected charity is not sufficiently "limited in its choice of projects" to ensure that class members will truly be benefitted by its works. *Id.* (quoting *Six (6) Mexican Workers*, 904 F.2d at 1308). The majority, however, failed to apply these safeguards.

First, the selected cy pres beneficiary, the Digital Trust Foundation (DTF), has *no* record of service. *Lane v. Facebook, Inc.*, 696 F.3d 811, 817 (9th Cir.2012). The "charity" is simply a bespoke creation of this settlement. The majority is apparently untroubled by this. It attempts to distinguish our case law

emphasizing the importance of a charity's record of service by noting that in those cases "there was no way of knowing whether the organization would use the funds to the benefit of class members," while here "the settlement agreement and DTF's Articles of Incorporation tell us exactly how funds will be used." *Lane*, 696 F.3d at 822. Respectfully, they do no such thing.

**\*2** The DTF has made a written commitment to "fund and sponsor programs designed to educate users, regulators[,] and enterprises regarding critical issues relating to protection of identity and personal information online through user control, and the protection of users from online threats." *Id.* However one might describe this mission statement, "limited" is not the word that comes to mind. *See, e.g., Dennis*, 697 F.3d at 865. DTF promises to fund and sponsor "programs" that address "critical issues" relating to Internet privacy. But neither the "programs" nor the "issues" are defined with any specificity, and certainly not the specificity necessary to be reasonably certain that class members will actually benefit from these activities.

Frequent NPR listeners know that the MacArthur Foundation's open-ended mission statement indicates that it is "committed to building a more just, verdant, and peaceful world." MacArthur Foundation, http://www.macfound.org/about (last visited February 18, 2013). But that is no guarantee that a donation to the MacArthur Foundation will actually result in, or advance, justice, verdancy, or peace. Rather, a potential donor must look to other factors, such as the MacArthur Foundation's past record of service or its specific list of projects, to determine whether it is reasonably certain that a donation will truly bring about the promised effects. That the DTF is committed to funding "programs" regarding "critical issues" says *absolutely nothing* about whether class members will truly benefit from this settlement; it simply promises that DTF will do some "stuff" regarding some more "critical stuff ." If fashioning an open-ended, one-sentence mission statement is all it takes to earn cy pres settlement approval in our court, we have completely eviscerated the meaning of our previously controlling case law.

## II.

The majority also undercuts our precedent requiring cy pres money to be spent in a manner that advances the "objectives of the underlying stat-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 765140 (C.A.9 (Cal.))
**(Cite as: 2013 WL 765140 (C.A.9 (Cal.)))**

utes." *Nachshin,* 663 F.3d at 1036. But DTF's receipt of these settlement funds, even if unobjectionable in all other respects, simply does not advance the objectives of the statutes upon which plaintiffs relied in their suit.

Here, the plaintiffs brought claims under the Electronic Communications Privacy Act, 18 U.S.C. § 2510; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the Video Privacy Protection Act, 18 U .S.C. § 2710; the California Consumer Legal Remedies Act, Cal. Civ.Code § 1750; and the California Computer Crime Law, Cal.Penal Code § 502. With the exception of the California Consumer Legal Remedies Act, these statutes all share a common purpose—preventing the *unauthorized* access or disclosure of private information. Yet the DTF's sole stated purpose is to "educate users, regulators [,] and enterprises" on how to protect Internet privacy "through *user control." Lane,* 696 F.3d at 822 (emphasis added). Plaintiffs' claims, however, have nothing to do with users' lack of "education" or "control." Instead, they relate to *misconduct* by Internet companies that wrongfully exposes private information in ways that even educated users cannot anticipate, prevent, or direct.

**\*3** Our precedent holds that it is not enough simply to identify any link between the class claims and a cy pres distribution, such as whether both concern food (*Dennis* ) or the Internet (*Lane* ). Instead, an appropriate cy pres recipient must be dedicated to protecting consumers from the precise wrongful conduct about which plaintiffs complain. *See Dennis,* 697 F.3d at 867. But an organization that focuses on protecting privacy solely through "user control" can *never* prevent unauthorized access or disclosure of private information where the alleged wrongdoer *already has unfettered access* to a user's records. The DTF can teach Facebook users how to create strong passwords, tinker with their privacy settings, and generally be more cautious online, but it can't teach users how to protect themselves from Facebook's *deliberate* misconduct. Unless of course the DTF teaches Facebook users not to use Facebook. That seems unlikely.

I regret the muddle this case makes of our cy pres jurisprudence, and I respectfully dissent from our failure to rehear this case en banc.

C.A.9 (Cal.),2013.

Lane v. Facebook, Inc.
--- F.3d ----, 2013 WL 765140 (C.A.9 (Cal.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
**(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))**

**H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
Third Circuit.
In re BABY PRODUCTS ANTITRUST LITIGA-
TION.
Kevin Young, Appellant (No. 12–1165).
Clark Hampe, Appellant (No. 12–1166).
Allison Lederer, Appellant (No. 12–1167).

Nos. 12–1165, 12–1166, 12–1167.
Argued Sept. 19, 2012.
Opinion filed Feb. 19, 2013.

**Background:** Consumers who allegedly had paid
inflated prices for baby products brought antitrust
class action against retailer, alleging that it had con-
spired with manufacturers to restrict competition. The
United States District Court for the Eastern District of
Pennsylvania, Anita B. Brody, J., 638 F.Supp.2d 461,
granted consumers' motion for class certification, and
then granted parties petition for final approval of set-
tlement agreement, attorneys' fees, expenses, special
incentive awards, and final approval of plan of allo-
cation, 834 F.Supp.2d 329. Class members appealed.

**Holdings:** The Court of Appeals, Ambro, Circuit
Judge, held that:
(1) district court's orders approving settlement and
fund allocation plan had to be vacated on basis that it
had not properly assessed whether settlement was in
best interest of class as a whole;
(2) district court's order awarding attorney fees and
costs had to be vacated because order had been based
on settlement that no longer was in effect and might be
altered on remand;
(3) class settlement notice that did not identify cy pres
recipients who would receive excess settlement funds
did not violate due process; and
(4) intervention was sufficient to protect interests of
unnamed class members in appealing selection of cy
pres recipients.

Vacated and remanded.

West Headnotes

**[1] Federal Courts 170B ⬤═══546**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(B) Appellate Jurisdiction and Pro-
cedure in General
      170Bk545 Parties
       170Bk546 k. Intervention or Addition of
New Parties on Appeal. Most Cited Cases

   Class members who timely objected to the ap-
proval of the settlement at a fairness hearing were
entitled to appeal the settlement without the need to
intervene formally. Fed.Rules Civ.Proc.Rule 23, 28
U.S.C.A.

**[2] Compromise and Settlement 89 ⬤═══57**

89 Compromise and Settlement
   89II Judicial Approval
     89k56 Factors, Standards and Considerations;
Discretion Generally
      89k57 k. Fairness, Adequacy, and Reason-
ableness. Most Cited Cases

**Deposits in Court 123 ⬤═══11**

123 Deposits in Court
   123k11 k. Disposition Under Judgment or Order
of Court. Most Cited Cases

   A district court does not abuse its discretion by
approving a class action settlement agreement that
includes a cy pres component directing the distribu-
tion of excess settlement funds to a third party to be
used for a purpose related to the class injury; inclusion
of a cy pres provision by itself does not render a set-
tlement unfair, unreasonable, or inadequate.
Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[3] Deposits in Court 123 ⬤═══11**

123 Deposits in Court
   123k11 k. Disposition Under Judgment or Order

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
**(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))**

of Court. Most Cited Cases

Inclusion of cy pres provision in class action settlement did not run counter to Rules Enabling Act, since procedural mechanism for permitting aggregation of claims in federal court did not and could not alter underlying substantive law being asserted and district court's certification of settlement simply recognized parties' deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of underlying causes of action. 28 U.S.C.A. § 2072; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[4] Deposits in Court 123 ☞11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order
of Court. Most Cited Cases

Direct distributions to the class are preferred over cy pres distributions; cy pres distributions imperfectly serve the purpose in an aggregated private cause of action of recovery of compensatory damages for injuries by substituting an indirect benefit for that direct compensation that is at best attenuated and at worse illusory. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[5] Deposits in Court 123 ☞11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order
of Court. Most Cited Cases

Direct distributions to the class are preferred over cy pres distributions; cy pres distributions present a potential conflict of interest between class counsel and their clients because the inclusion of a cy pres distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to the class; where a court fears counsel is conflicted, it should subject the settlement to increased scrutiny. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[6] Deposits in Court 123 ☞11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order
of Court. Most Cited Cases

Cy pres distributions in a class action are most appropriate where further individual distributions are economically infeasible. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[7] Compromise and Settlement 89 ☞2**

89 Compromise and Settlement
    89I In General
        89k1 Nature and Requisites
            89k2 k. In General. Most Cited Cases

Settlements are private contracts reflecting negotiated compromises.

**[8] Compromise and Settlement 89 ☞57**

89 Compromise and Settlement
    89II Judicial Approval
        89k56 Factors, Standards and Considerations;
Discretion Generally
            89k57 k. Fairness, Adequacy, and Reasonableness. Most Cited Cases

The role of a district court with regard to settlement in a class action is not to determine whether the settlement is the fairest possible resolution; the court must determine whether the compromises reflected in the settlement, including those terms relating to the allocation of settlement funds, are fair, reasonable, and adequate when considered from the perspective of the class as a whole. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[9] Compromise and Settlement 89 ☞57**

89 Compromise and Settlement
    89II Judicial Approval
        89k56 Factors, Standards and Considerations;
Discretion Generally
            89k57 k. Fairness, Adequacy, and Reasonableness. Most Cited Cases

**Deposits in Court 123 ☞11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order
of Court. Most Cited Cases

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
**(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))**

To assess whether a settlement containing a cy pres provision satisfies the requirement of being fair, reasonable, and adequate, a court should employ the same framework developed for assessing other aspects of class action settlements. ; Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[10] Compromise and Settlement 89 ⚖57**

89 Compromise and Settlement
    89II Judicial Approval
        89k56 Factors, Standards and Considerations; Discretion Generally
        89k57 k. Fairness, Adequacy, and Reasonableness. Most Cited Cases

**Deposits in Court 123 ⚖11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

When considering a class cy pres settlement, a thorough analysis of settlement terms requires an inquiry into the degree of direct benefit provided to the class; in making this determination, a district court may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[11] Deposits in Court 123 ⚖11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

Barring sufficient justification, cy pres awards in a class action should generally represent a small percentage of total settlement funds. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[12] Compromise and Settlement 89 ⚖66.1**

89 Compromise and Settlement

    89II Judicial Approval
        89k66 Proceedings
        89k66.1 k. In General. Most Cited Cases

**Deposits in Court 123 ⚖11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

If the parties have not on their own initiative supplied the information needed to make the necessary findings to make a class cy pres settlement, the court should affirmatively seek out such information; making these findings also may require a court to withhold final approval of a settlement until the actual distribution of funds can be estimated with reasonable accuracy, and, alternatively, a court may urge the parties to implement a settlement structure that attempts to maintain an appropriate balance between payments to the class and cy pres awards. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[13] Compromise and Settlement 89 ⚖64**

89 Compromise and Settlement
    89II Judicial Approval
        89k56 Factors, Standards and Considerations; Discretion Generally
        89k64 k. Antitrust and Trade Regulation Actions. Most Cited Cases

**Deposits in Court 123 ⚖11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

**Federal Courts 170B ⚖932.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
        170Bk932 Reversal or Vacation of Judgment in General
        170Bk932.1 k. In General. Most Cited Cases

District court's orders approving settlement and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

fund allocation plan had to be vacated, in consumers' antitrust class action against retailer alleging that they had paid allegedly inflated prices for baby products, on basis that it had not properly assessed whether settlement was in best interest of class as a whole because it had approved settlement without being made aware that almost all claimants would fall into compensation category that resulted in minimal, and likely insufficient, compensation going directly to class members. Clayton Act, § 4, 15 U.S.C.A. § 15; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[14] Federal Courts 170B ☞813**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk813 k. Allowance of Remedy and Matters of Procedure in General. Most Cited Cases

A district court's decision to approve a settlement is reviewed for abuse of discretion.

**[15] Federal Courts 170B ☞812**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk812 k. Abuse of Discretion. Most Cited Cases

An appellate court may find an abuse of discretion where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.

**[16] Compromise and Settlement 89 ☞59**

89 Compromise and Settlement
    89II Judicial Approval
        89k56 Factors, Standards and Considerations; Discretion Generally
            89k59 k. Adequacy or Representation; Collusion. Most Cited Cases

Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions

are expected to give careful scrutiny to the terms of proposed settlement in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[17] Deposits in Court 123 ☞11**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

Class cy pres distributions are not limited to instances where all claimants have received 100% of their estimated damages. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

**[18] Attorney and Client 45 ☞155**

45 Attorney and Client
    45IV Compensation
        45k155 k. Allowance and Payment from Funds in Court. Most Cited Cases

**Federal Civil Procedure 170A ☞2737.13**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2737 Attorney Fees
            170Ak2737.13 k. Class Actions; Settlements. Most Cited Cases

To assess the reasonableness of attorneys' fees in a class action, courts generally use a percentage-of-recovery method, which resembles a contingent fee in that it awards counsel a variable percentage of the amount recovered for the class, or a lodestar method, which calculates fees by multiplying the number of hours expended by some hourly rate appropriate for the region and for the experience of the lawyer. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

**[19] Attorney and Client 45 ☞155**

45 Attorney and Client
    45IV Compensation
        45k155 k. Allowance and Payment from Funds in Court. Most Cited Cases

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

**Federal Courts 170B ⬡═932.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk932 Reversal or Vacation of Judgment in General
                170Bk932.1 k. In General. Most Cited Cases

District court's order awarding attorney fees and costs in common fund case had to be vacated, in consumers' antitrust class action against retailer alleging that they had paid allegedly inflated prices for baby products, since order had been based on settlement that no longer was in effect and might be altered on remand. Clayton Act, § 4, 15 U.S.C.A. § 15; Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

**[20] Federal Civil Procedure 170A ⬡═2737.13**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2737 Attorney Fees
            170Ak2737.13 k. Class Actions; Settlements. Most Cited Cases

Where a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, it is appropriate for the court to decrease the fee award. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

**[21] Attorney and Client 45 ⬡═155**

45 Attorney and Client
    45IV Compensation
        45k155 k. Allowance and Payment from Funds in Court. Most Cited Cases

Courts have discretion to determine on a case by case basis whether to decrease attorneys' fees where a portion of a fund will be distributed cy pres. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

**[22] Attorney and Client 45 ⬡═155**

45 Attorney and Client
    45IV Compensation
        45k155 k. Allowance and Payment from Funds in Court. Most Cited Cases

When deciding whether attorneys' fees should be reduced in a class action that had the potential to compensate class members significantly, but the current distribution of settlement funds arguably overcompensates class counsel at the expense of the class, a court should begin by determining the distribution of funds with reasonable accuracy that will result from the claims process, and then the court should determine whether the level of distribution provided to the class by the settlement reflects a failure of class counsel to represent adequately the interests of the entire class. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

**[23] Federal Civil Procedure 170A ⬡═2737.13**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2737 Attorney Fees
            170Ak2737.13 k. Class Actions; Settlements. Most Cited Cases

The determination of the appropriate attorney fee award in a class action is left to the district court, which is more familiar with the performance and skill of counsel, the nature and history of the litigation, and the merits of the lawsuit. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

**[24] Compromise and Settlement 89 ⬡═68**

89 Compromise and Settlement
    89II Judicial Approval
        89k66 Proceedings
            89k68 k. Notice and Communications. Most Cited Cases

**Constitutional Law 92 ⬡═3981**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3980 Class Actions
                92k3981 k. In General. Most Cited Cases

**Constitutional Law 92 ⬡═3983**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

92 Constitutional Law
   92XXVII Due Process
      92XXVII(E) Civil Actions and Proceedings
         92k3980 Class Actions
            92k3983 k. Compromise and Settlement. Most Cited Cases

**Federal Civil Procedure 170A ☞179**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
        170AII(D)2 Proceedings
          170Ak177 Notice and Communications
            170Ak179 k. Sufficiency. Most Cited Cases

    Although the rule governing class notice provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process; generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class. U.S.C.A. Const.Amend. 5; Fed.Rules Civ.Proc.Rule 23(e)(1), 28 U.S.C.A.

**[25] Compromise and Settlement 89 ☞68**

89 Compromise and Settlement
   89II Judicial Approval
      89k66 Proceedings
         89k68 k. Notice and Communications. Most Cited Cases

**Constitutional Law 92 ☞3983**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(E) Civil Actions and Proceedings
         92k3980 Class Actions
            92k3983 k. Compromise and Settlement. Most Cited Cases

**Federal Civil Procedure 170A ☞179**

170A Federal Civil Procedure
   170AII Parties

170AII(D) Class Actions
   170AII(D)2 Proceedings
      170Ak177 Notice and Communications
         170Ak179 k. Sufficiency. Most Cited Cases

    Class settlement notice that did not identify cy pres recipients who would receive excess settlement funds did not violate due process, in consumers' antitrust class action against retailer alleging that they had paid allegedly inflated prices for baby products; class members' knowledge that there was possibility of cy pres award and that court would select among recipients proposed by parties at later date was adequate to allow any interested class member to keep apprised of cy pres recipient selection process, and court would ensure parties make their proposals publicly available and would allow opportunity to class members to object before it made selection. U.S.C.A. Const.Amend. 5; 15 U.S.C.A. § 15; Fed.Rules Civ.Proc.Rules 23(e)(1), 24(a)(2), 28 U.S.C.A.

**[26] Deposits in Court 123 ☞11**

123 Deposits in Court
   123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

    Intervention was sufficient to protect interests of unnamed class members in appealing selection of cy pres recipients, in consumers' antitrust class action against retailer alleging that they had paid allegedly inflated prices for baby products; if it did not, members could ask court to determine whether it was appropriate to create new *Devlin* exception allowing them to appeal. 15 U.S.C.A. § 15; Fed.Rules Civ.Proc.Rules 23, 24(a)(2), 28 U.S.C.A.

Appeal from the United States District Court for the Eastern District of Pennsylvania, (D.C. Civil Action Nos. 2–06–cv–00242/2–09–cv–06151), District Judge: Honorable Anita B. Brody.Christopher M. Arfaa, Esquire, Littleton Joyce Ughetta Park & Kelly, Radnor, PA, Theodore H. Frank, Esquire, (Argued), Center for Class Action Fairness, Washington, DC, Daniel Greenberg, Esquire, Little Rock, AK, for Appellant Kevin Young.

Christopher A. Bandas, Esquire, Bandas Law Firm, Corpus Christie, TX, for Appellant Clark Hampe.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
**(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))**

James H. Price, Esquire, Lacy, Price & Wagner,
Knoxville, TN, for Appellant Allison Lederer.

Theodore B. Bell, Esquire, Mary Jane E. Fait, Esquire,
Wolf, Haldenstein, Adler, Freeman & Herz, Chicago,
IL, Steve W. Berman, Esquire, George W. Sampson,
Esquire, Anthony D. Shapiro, Esquire, Ivy A. Tab-
bara, Esquire, Hagens BermanSobol Shapiro, Seattle,
WA, Thomas H. Burt, Esquire, Fred T. Isquith, Es-
quire, Wolf, Haldenstein, Adler, Freeman & Herz,
New York, NY, William G. Caldes, Esquire, Eugene
A. Spector, Esquire, (Argued), Jeffrey L. Spector,
Esquire, Spector, Roseman, Kodroff & Willis, Phila-
delphia, PA, Elizabeth A. Fegan, Esquire, Hagens
BermanSobol Shaprio, Oak Park, IL, for Appellee
Carol M. McDonough.

Harry H. Rimm, Esquire, Mark L. Weyman, Esquire,
(Argued), Reed Smith, New York, NY, Melissa I.
Rubenstein, Esquire, Reed Smith, Philadelphia, PA,
for Appellees Toys R Us Inc., Babies R Us Inc., Toys
R Us Delaware Inc.

Neil E. McDonell, Esquire, Dorsey & Whitney, New
York, NY, for Appellee Baby Bjorn AB.

Alexander Maltas, Esquire, Marguerite M. Sullivan,
Esquire, Edward M. Williamson, Esquire, Margaret
M. Zwisler, Esquire, Latham & Watkins, Washington,
DC, Samuel W. Silver, Esquire, Schnader Harrison
Segal & Lewis, Philadelphia, PA, for Appellee Britax
Child Safety Inc.

Michael J. Hahn, Esquire, Lowenstein Sandler,
Roseland, NJ, for Appellee Kids Line Inc.

Carolyn H. Feeney, Esquire, George G. Gordon, Es-
quire, Joseph A. Tate, Esquire, Dechert, Philadelphia,
PA, for Appellee Medela Inc.

Kendall Millard, Esquire, Barnes & Thornburg, In-
dianapolis, IN, for Appellee Peg Perego USA Inc.

David R. Martin, Esquire, Atlanta, GA, Isaac J. Mi-
trani, Esquire, Mitrani Rynor & Adamsky, Miami, FL,
for Appellee Regal Lager Inc.

Before   AMBRO,   GREENAWAY,   JR.,   and
O'MALLEY,[FN*] Circuit Judges.

OPINION OF THE COURT
AMBRO, Circuit Judge.
   *1 We address for the first time the use of *cy pres*
distributions in class action settlements.[FN1] "The term
'cy pres' is derived from the Norman French expres-
sion *cy pres comme possible,* which means 'as near as
possible.' " *Democratic Cent. Comm. v. Washington
Metro. Area Transit Comm'n,* 84 F.3d 451, 455 n. 1
(D.C.Cir.1996).[FN2] When class actions are resolved
through settlement, it may be difficult to distribute the
entire settlement fund, after paying attorneys' fees and
costs along with fund administration expenses, di-
rectly to its intended beneficiaries—the class mem-
bers. Money may remain unclaimed if class members
cannot be located, decline to file claims, have died, or
the parties have overestimated the amount projected
for distribution for some other reason. It may also be
economically or administratively infeasible to dis-
tribute funds to class members if, for example, the cost
of distributing individually to all class members ex-
ceeds the amount to be distributed. In these circum-
stances, courts have permitted the parties to distribute
to a nonparty (or nonparties) the excess settlement
funds for their next best use—a charitable purpose
reasonably approximating the interests pursued by the
class.

   The *cy pres* award in this case was part of a set-
tlement of consolidated antitrust class actions brought
by several named plaintiffs (collectively, the "Plain-
tiffs") on behalf of consumers against retailers Toys
"R" Us, Inc. and Babies "R" Us, Inc. along with sev-
eral baby product manufacturers (the retailers and
manufacturers are collectively referred to as the "De-
fendants"). Pursuant to that settlement, which was
approved by the District Court, all settlement funds
remaining after attorneys' fees and costs are paid, and
individual distributions are made to claimants, would
go to one or more charitable organizations proposed
by the parties and selected by the Court. The Court
indicated it would ensure the funds are used for a
purpose underlying the interests of the class.

   [1] Kevin Young, an unnamed class member who
objected to the settlement before the District Court,
raises the following three issues relating to the *cy pres*
provision on appeal.[FN3]

   (1) The District Court erred in approving a set-
tlement that would result in funds being distributed to

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

one or more *cy pres* recipients in lieu of fully compensating class members for their losses.

(2) The Court should have discounted the value of the *cy pres* distribution for purposes of calculating attorneys' fees, which were awarded on a percentage-of-recovery basis.

(3) The class notice was deficient because it did not identify the recipients that would receive the *cy pres* distributions.

Young's overarching concern, and ours as well, is that the settlement has resulted in a troubling and, according to counsel for the parties, surprising allocation of the settlement fund. *Cy pres* distributions, while in our view permissible, are inferior to direct distributions to the class because they only imperfectly serve the purpose of the underlying causes of action—to compensate class members. Though the parties contemplated that excess funds would be distributed to charity after the bulk of the settlement fund was distributed to class members through an exhaustive claims process, it appears the actual allocation will be just the opposite. Defendants paid $35,500,000 into a settlement fund. About $14,000,000 will go to class counsel in attorneys' fees and expenses. Of the remainder, it is expected that roughly $3,000,000 will be distributed to class members, while the rest—approximately $18,500,000 less administrative expenses—will be distributed to one or more *cy pres* recipients.

*2 We vacate the District Court's approval of the settlement because the Court was apparently unaware of the amount of the fund that would be distributed to *cy pres* beneficiaries rather than being distributed directly to the class. On remand, the Court should consider whether this or any alternative settlement provides sufficient direct benefit to the class before giving its approval. We also vacate the attorneys' fees award because its approval was based on the terms of a settlement that are no longer in effect and may be altered on remand. Addressing Young's argument that attorneys' fees should be reduced, we confirm that courts need to consider the level of direct benefit provided to the class in calculating attorneys' fees. We leave it to the District Court's discretion to assess what effect, if any, that consideration should have on any future fee award in this case. As there was no error in the notice provided to the class, we do not reverse on

that basis.

**I. Background**

This appeal follows from two antitrust class actions consolidated for settlement purposes. In 2006, Carol McDonough and other named plaintiffs filed a suit in the United States District Court for the Eastern District of Pennsylvania alleging that Defendants conspired to set a price floor for the sale of certain baby products, causing consumers to pay increased prices for these products. In 2009, class certification of that resale-price-maintenance suit was granted and several subclasses were created based on the products purchased and the timeframe of those purchases. Because the District Court did not permit the subclass periods to extend beyond the date when the case was filed, Ariel Elliott and other named plaintiffs subsequently filed a related putative class action. In 2011, the parties in those actions signed an agreement consolidating and settling their lawsuits.

The Court initially approved the settlement in January 2011. Notice was sent to putative class members informing them of their right to submit a claim, opt out, or object. In July 2011, the Court held a fairness hearing to consider any objections made by class members. The deadline for submitting claims expired in August 2011. Approximately four months later, the Court approved the settlement and a fund allocation plan proposed by the parties. It also granted class counsel's fee request for $11,833,333.33, representing one-third of the gross settlement amount, and $2,229,775.60 for out-of-pocket litigation expenses.

Per the settlement, Defendants deposited $35,500,000 into a settlement fund. After payment of attorneys' fees and expenses, the remainder of the fund was slated for distribution to the settlement class.[FN4] In order to receive a cash distribution, a claimant must demonstrate that he or she is a member of a settlement subclass by submitting a valid, sworn, and timely claim form.

Claimants are entitled to different levels of compensation based on the evidence submitted. Those who submit valid documentary proof of purchase and of the actual price paid for a product are eligible to receive 20% of the actual purchase price of each product purchased. Those who do not submit documentary proof of the actual purchase price but submit a valid proof of purchase are eligible to receive 20% of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

the estimated retail price, as calculated by class counsel, of each product purchased.[FN5] (The 20% figure slightly exceeds the 18% average overcharge an independent economics expert hired by class counsel estimated class members would have paid for a baby product covered by the settlement.) Those who do not submit any proof of purchase are eligible to receive a payment of $5.

*3 Claims in the first two categories of compensation—those receiving 20% of the actual or estimated purchase price—are subject to *pro rata* enhancements. The settlement class is divided into eight different settlement subclasses, based on the baby product purchased. If the claims awarded do not exhaust the funds allocated to a particular settlement subclass, these awards are enhanced by up to three times the baseline figure, consistent with Section 4 of the Clayton Act, 15 U.S.C. § 15, which entitles private plaintiffs to receive treble damages for violations of the antitrust laws.

The settlement terms establish an order of priority for distributing any remaining funds. Funds in a subclass after the initial distribution will be redistributed first to the other settlement classes until all claims are fully satisfied in accordance with the compensation categories and accompanying enhancements described. If funds remain after that redistribution and the payment of administrative costs, they will be donated to one or more charitable organizations—the *cy pres* recipients. Under the terms of the settlement, Plaintiffs and Defendants are each permitted to recommend up to two not-for-profit organizations to receive the award. The District Court, however, is entrusted with the responsibility of selecting one or more *cy pres* recipients that will receive distributions.

We do not know the exact allocation of the funds that will result from the current settlement. At the time of the fairness hearing in July 2011, class members had submitted approximately 41,000 claims. Because the deadline for submissions was not until August 2011, more claims likely were submitted. In response to a concern regarding whether the $35,500,000 in the settlement fund would be sufficient to pay counsel fees and expenses while compensating class members under the terms of the agreement, the District Court estimated that at most—assuming 45,000 claims, each entitling the claimant to three times 20% of a $300 baby product—$8,100,000 would be distributed to

class members. It appears, however, that far less will actually be distributed to them. At oral argument, class and defense counsel informed us that, largely because the vast majority of the claims fell into the third category of compensation entitling claimants to $5 payouts, class members will receive only about $3,000,000 through the claims process.

## II. *Cy pres*

We have not ruled on whether class action settlements may include *cy pres* provisions. Courts generally have approved *cy pres* distributions in two circumstances.

> First, many courts allow a settlement that directs funds to a third party when funds are left over after all individual claims have been satisfied.... Second, some courts allow a settlement to require a payment only to a third party, that is, to provide no recovery at all directly to class members.

American Law Institute ("ALI"), Principles of the Law of Aggregate Litig. § 3.07, comment a (2010). We deal with the former here.

*4 The use of *cy pres* recipients to dispose of excess funds—first suggested in a student comment in 1972, *see* Stewart R. Shepherd, Comment, *Damage Distribution in Class Actions: The Cy Pres Remedy,* 39 U. Chi. L.Rev. 448 (1972)—has accelerated rapidly in recent years.

> From 1974 through 2000, federal courts granted or approved cy pres awards to third party charities in thirty class actions, or an average of approximately once per year. [From] 2001 [through 2008], federal courts granted or approved cy pres awards in sixty-five class actions, or an average of roughly eight per year.

Martin H. Redish et al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L.Rev. 617, 653 (2010).

This is unsurprising. When excess settlement funds remain after claimants have received the distribution they are entitled to under the terms of the settlement agreement, there are three principal options for distributing the remaining funds—reversion to the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

defendant, escheat to the state, or distribution of the funds *cy pres*.[FN6] Among these options, *cy pres* distributions have benefits over the alternative choices. Reversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement. Escheat to the state preserves the deterrent effect of class actions, but it benefits the community at large rather than those harmed by the defendant's conduct. *Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent members who have not received individual distributions.

[2] We join other courts of appeals in holding that a district court does not abuse its discretion by approving a class action settlement agreement that includes a *cy pres* component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury.[FN7] *See Lane v. Facebook, Inc.,* 696 F.3d 811, 819–20 (9th Cir.2012); *In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 33–36 (1st Cir.2009); *see also* 4 Herbert B. Newberg et al., Newberg on Class Actions § 11:20 (4th ed.2012); ALI, *supra*, § 3.07. "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed.R.Civ.P. 23(e). That approval is warranted when the court finds that the settlement, taken as a whole, is "fair, reasonable, and adequate" from the perspective of the class. Fed.R.Civ.P. 23(e)(2). Inclusion of a *cy pres* provision by itself does not render a settlement unfair, unreasonable, or inadequate.

[3][4][5] We caution, however, that direct distributions to the class are preferred over *cy pres* distributions. The private causes of action aggregated in this class action—as in many others—were created by Congress to allow plaintiffs to recover compensatory damages for their injuries. *See* 15 U.S.C. § 15. *Cy pres* distributions imperfectly serve that purpose by substituting for that direct compensation an indirect benefit that is at best attenuated and at worse illusory.[FN8] *Mirfasihi v. Fleet Mortg. Corp.,* 356 F.3d 781, 784–85 (7th Cir.2004). *Cy pres* distributions also present a potential conflict of interest between class counsel and their clients because the inclusion of a *cy pres* distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to

the class. Where a court fears counsel is conflicted, it should subject the settlement to increased scrutiny.[FN9]

*5 To account for the inferiority of *cy pres* distributions, the ALI has published guidelines limiting them to instances where further individual distributions are infeasible. Those guidelines provide in pertinent part:

> If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

ALI, *supra*, § 3.07(b). The ALI does not explain further what "other specific reasons" would justify a *cy pres* distribution.

[6][7][8] Although we agree with the ALI that *cy pres* distributions are most appropriate where further individual distributions are economically infeasible, we decline to hold that *cy pres* distributions are only appropriate in that situation. Settlements are private contracts reflecting negotiated compromises. *Sullivan,* 667 F.3d at 312. The role of a district court is not to determine whether the settlement is the fairest possible resolution—a task particularly ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly. The Court must determine whether the compromises reflected in the settlement—including those terms relating to the allocation of settlement funds—are fair, reasonable, and adequate when considered from the perspective of the class as a whole.

[9] To assess whether a settlement containing a *cy pres* provision satisfies this requirement, courts should employ the same framework developed for assessing other aspects of class action settlements. In *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975), we set out nine factors that courts should consider when deciding whether to approve a settlement. *Id.* at 157. In *In re Prudential Insurance Co. of America Sales Practices Litigation,* 148 F.3d 283 (3d Cir.1998), we expanded that analysis to include what may be termed the *Pru-*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

dential considerations. *Id.* at 323. Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive, "illustrat[ing] ... [the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *See In re Pet Food,* 629 F.3d at 350.

[10][11] We add today that one of the additional inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class. In making this determination, a district court may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards. Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds.

*6 [12] We note that this inquiry needs to be, as much as possible, practical and not abstract. If "the parties have not" on their own initiative "supplied the information needed" to make the necessary findings, the court should "affirmatively seek out such information." *In re Pet Food,* 629 F.3d at 351 (citation omitted). Making these findings may also require a court to withhold final approval of a settlement until the actual distribution of funds can be estimated with reasonable accuracy. Alternatively, a court may urge the parties to implement a settlement structure that attempts to maintain an appropriate balance between payments to the class and *cy pres* awards. For instance, it could condition approval of a settlement on the inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund.

[13] Turning to the particular *cy pres* distribution in this case, Young asserts that the District Court failed to fulfill its oversight responsibility by approving a class action settlement containing a *cy pres* provision that permits the distribution of funds to a third party without first fully compensating all claimants. As noted above, the settlement directs a *cy pres* award after claimants receive cash distributions via a three-tiered compensation structure: claimants with valid documentary proof of purchase and pur-

chase price receive up to three times 20% of the actual price of the product they purchased; claimants with valid documentary proof of purchase receive up to three times 20% of the estimated price; and claimants without any valid proof receive a $5 payout. Young does not object to the 20% figure or argue that the first two categories of claimants will be undercompensated. Instead, he asserts that the *cy pres* award is inappropriate because the third category of claimants—those receiving a $5 payout regardless of price of the product they purchased—will not be fully compensated for their losses.

[14][15][16] We review a district court's decision to approve a settlement for abuse of discretion. *Girsh,* 521 F.2d at 156 & n. 7. " 'An appellate court may find an abuse of discretion where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " *In re Prudential,* 148 F.3d at 299 (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 783 (3d Cir.1995)). Mindful that we are dealing with a settlement, we remain hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation. *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir.2004). "Because class actions are rife with potential conflicts of interest between class counsel and class members," however, "district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlement in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi,* 356 F.3d at 785 (collecting cases); *see also In re Gen. Motors,* 55 F.3d at 785.

*7 We vacate the District Court's orders approving the settlement and the fund allocation plan because it did not have the factual basis necessary to determine whether the settlement was fair to the entire class. Most importantly, it did not know the amount of compensation that will be distributed directly to the class. Removing attorneys' fees and expenses, approximately $21,500,000 (less costs of administration) of the settlement was designated for the class, but only around $3,000,000 of that amount actually will be distributed to class members, with the remainder going to *cy pres* recipients after expenses relating to the administration of the fund are paid.

Though the claims period had concluded, counsel

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

did not provide this information to the Court, preventing it from properly assessing whether the settlement was in the best interest of the class as a whole. The Court approved the $5 cap on compensation for those without documentary proof of their claims in part because it believed the standard of proof required to receive a higher award was "fairly low." *McDonough v. Toys "R" Us, Inc.*, 834 F.Supp.2d 329, 352 (E.D.Pa.2011). According to counsel, however, the vast majority of claimants have not submitted documentary proof entitling them to a greater award, casting doubt on this assumption. Similarly, the Court found the $5 cap was justified by the need to "avoid encouraging fraud." *Id.* While without doubt this is a good goal, we do not believe the Court could have reasonably assessed whether these concerns justified the cap without knowing the resulting allocation of funds. Other means of preventing fraud could have been explored.

Based on the information we now have, we remand for the Court to reconsider the fairness of the settlement. The parties may wish to alter its terms on remand to provide greater direct benefit to the class, such as by increasing the $5 payment or lowering the evidentiary bar for receiving a higher award. [FN10] After allowing them that opportunity, we ask the Court to make the factual findings necessary to evaluate whether the settlement provides sufficient direct benefit to the class.

[17] We place no absolute requirement on the amount of direct compensation the third category of claimants must receive. Courts of appeals have approved *cy pres* distributions where all class members submitting claims have already been fully compensated for their damages by prior distributions. *See, e.g., In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 34–35 (1st Cir.2012). A *cy pres* distribution is considered appropriate in that circumstance because additional individual distributions would "overcompensat [e] claimant class members at the expense of absent class members." *Id. at 35* (citing *In re Pharm. Indus.*, 588 F.3d at 34–36). We agree, but do not limit *cy pres* distributions to instances where all claimants have received 100% of their estimated damages. As the parties explain, the $5 payment to claimants in the third category can be seen as compensation for a full release of their claims rather than as an attempt to compensate them for their damages. Indeed, provided the class as a whole received sufficient direct benefit,

it would not have been unreasonable to eliminate the $5 category altogether and require class members to submit documentary proof to receive any award. We do not intend to raise the bar for obtaining approval of a class action settlement simply because it includes a *cy pres* provision.

*8 What we are concerned with in this case is that the Court approved the settlement without being made aware that almost all claimants would fall into the $5 compensation category, resulting in minimal (and we doubt sufficient) compensation going directly to class members. The baby products at issue cost up to $300, resulting in damages, at the estimated 18% overcharge, of over $50. Combined with the possibility of treble damages, we doubt that this is the type of small claims case where the potential awards were necessarily insufficient to motivate class members to file claims. We think it more likely that many class members did not submit claims because they lacked the documentary proof necessary to receive the higher awards contemplated, and the $5 award they could receive left them apathetic. This casts doubt on whether agreeing to a settlement with such a restrictive claims process was in the best interest of the class. If Defendants decline to raise the $5 cap or alter the documentary proof requirement on remand, the Court will need to determine whether the class received sufficient direct benefit to justify the settlement as fair, reasonable, and adequate. Before doing so, though, it must have the requisite factual basis.

**III. Attorneys' Fees**
[18] "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). Courts generally use one of two methods for assessing the reasonableness of attorneys' fees—a percentage-of-recovery method or a lodestar method. The former "resembles a contingent fee in that it awards counsel a variable percentage of the amount recovered for the class." *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 n. 38 (3d Cir.1995). The latter "calculates fees by multiplying the number of hours expended by some hourly rate appropriate for the region and for the experience of the lawyer." *Id.* at 819 n. 37. Whichever method is chosen, "we have noted previously that 'it is sensible for a court to use a second method of fee approval to cross check' its initial fee calculation." *In re Prudential Ins. Co. of Am. Sales*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
**(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))**

*Practices Litig.*, 148 F.3d 283, 333 (3d Cir.1998) (quoting *In re Gen. Motors*, 55 F.3d at 820).

[19] The District Court—as is "generally favored in cases involving a common fund," *id.*—awarded fees on a percentage-of-recovery basis. We have identified a number of factors to aid courts in evaluating the reasonableness of percentage fee awards. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir.2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000); *In re Prudential*, 148 F.3d at 336–40). Applying these factors, the Court approved counsel's requested fees of $11,833,333.33 (one-third of the entire settlement fund) as reasonable. In addition to using a percentage of recovery method, the Court applied a lodestar method crosscheck. It calculated, at counsel's regular billing rates, a total lodestar of $31,839,355.33, representing a negative lodestar multiplier of .37 (*i.e.*, class counsel's fee request equaled 37 percent of what they would have received at their regular billing rates).

**\*9** We vacate the District Court's order awarding fees and costs because it is based on a settlement that is no longer in effect and may be altered on remand. Although in this circumstance we need not (and do not) resolve whether the awarded fees were reasonable, we note that the Court did not address an issue raised by Young we believe worthy of discussion. He objected to the requested fees on the ground that the Court should not consider the *cy pres* award as a class benefit for purposes of calculating attorneys' fees. On appeal, Young has softened his approach, asking instead that we require districts courts to discount—rather than to ignore entirely—the value of *cy pres* distributions for purposes of calculating percentage awards. *See* Young Reply Br. at 22. Take, for example, a settlement fund whereby $20,000,000 will be distributed for *cy pres* purposes. Under Young's approach, if a court believes that the *cy pres* award provides half the benefit of direct distributions, it should value the portion of the settlement being distributed *cy pres* at $10,000,000 for purposes of calculating attorneys' fees as a percentage of the recovery.

Although the Supreme Court has not addressed whether attorneys' fees should be reduced when a portion of a settlement fund is distributed *cy pres,* it has confronted essentially the same issue when calculating percentage fee awards against a settlement fund that will partially revert to the defendant. In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), the Supreme Court confirmed the permissibility of using the entire fund as the appropriate benchmark, at least where each class member needed only to prove his or her membership in the injured class to receive a distribution. [FN11] *Id.* at 480–81. *Boeing,* however, did not address whether a district court abuses its discretion by taking the converse approach, basing attorneys' fees on only the amount of the fund claimed by class members.

Courts of appeals have taken a similar approach when they have addressed this issue in the *cy pres* context. In *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301 (9th Cir.1990), the District Court had calculated attorneys' fees as a percentage of the total fund even though unclaimed funds would be distributed to *cy pres* recipients. The Court of Appeals for the Ninth Circuit, relying on *Boeing,* held that the District Court did not abuse its discretion in using the total fund amount as its benchmark. *Id.* at 1311. In *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir.2007), the Court of Appeals for the Second Circuit reviewed a percentage-fee award based on funds claimed by class members rather than on the entire settlement fund, some of which would ultimately be distributed to a *cy pres* recipient. Finding that the District Court abused its discretion, the Circuit Court held that the percentage fee should have been calculated on the basis of the total fees made available because "[t]he entire [settlement] [f]und, and not some portion thereof, [was] created through the efforts of counsel." *Id.* at 437. It noted, however, that a court may within its discretion decrease the percentage of the fund awarded (rather than the benchmark value of the settlement) in appropriate circumstances to prevent attorneys from being improperly enriched. *Id.*

**\*10** We think it unwise to impose, as Young requests, a rule requiring district courts to discount attorneys' fees when a portion of an award will be distributed *cy pres.*[FN12] There are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims. Class counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided. Nor do we want to discourage counsel from filing class actions in cases where few claims are

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

likely to be made but the deterrent effect of the class action is equally valuable.

We appreciate, however, that awarding attorneys' fees based on the entire settlement amount rather than individual distributions creates a potential conflict of interest between absent class members and their counsel. "Arrangements such as [these] ... decouple class counsel's financial incentives from those of the class.... They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224, 120 S.Ct. 2237, 147 L.Ed.2d 265 (2000) (denial of *cert.*) (O'Connor, J.) (discussing a percentage fee calculated against the entire settlement fund even though a significant portion would revert to the defendant). Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either.

[20] Where a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, we therefore think it appropriate for the court to decrease the fee award. See *Masters*, 473 F.3d at 437; *Williams v. MGM–Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) (stating that although the entire common fund was the appropriate benchmark for attorneys' fees, the percentage of the fund awarded may be decreased "to account for any unusual circumstances"); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1077 (S.D.Tex.2012) ("The class benefit conferred by cy pres payments is indirect and attenuated. That makes it inappropriate to value cy pres on a dollar-for-dollar basis."); cf. *Dennis v. Kellogg Co.*, 697 F.3d 858, 867–68 (9th Cir.2012) (vacating an attorneys' fees award because the District Court did not sufficiently scrutinize the valuation of a *cy pres* distribution consisting of "$5.5. million worth" of food, and noting that "[t]his issue is particularly critical with a cy pres product settlement that has a tenuous relationship to the class allegedly damaged by the conduct in question").[FN13]

[21] For the reasons discussed, our approach is case by case; providing courts discretion to determine whether to decrease attorneys' fees where a portion of a fund will be distributed *cy pres*. The ALI has adopted a similar approach. According to its Principles of the Law of Aggregate Litigation, "[a]ttorneys ' fees in class actions, whether by litigated judgment or by settlement, should be based on both the actual value of the judgment or settlement to the class and the value of cy pres awards...." ALI, Principles of the Law of Aggregate Litig. § 3.13. The comment to that section clarifies, however, that "because *cy pres* payments ... only indirectly benefit the class, the court need not give such payments the same full value for purposes of setting attorneys' fees as would be given to direct recoveries by the class." *Id.* § 3.13, comment a.

*11 In this case, class counsel, and not their client, may be the foremost beneficiaries of the settlement. Some class actions are based on so-called negative value claims, that is, claims that could not be brought on an individual basis because the transaction costs of bringing an individual action exceed the potential relief. While aggregating these claims in a class action may have an important deterrent value, there is a concern that those actions are brought primarily to benefit class counsel, and awarding disproportionate class counsel fees only incentivizes that behavior. *Cy pres* awards—by ensuring that a settlement fund is sufficiently large to command a substantial attorneys' fee—can exacerbate this problem. See *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784–85 (7th Cir.2004); Martin H. Redish et al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L.Rev. 617, 621–22, 649 (2010). Although, as noted, this class action had the potential to compensate class members significantly, the current distribution of settlement funds arguably overcompensates class counsel at the expense of the class.

[22][23] We recognize the difficulty a district court faces in deciding when attorneys' fees should be reduced on this basis. In evaluating a fee award, it should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process. This may require it "to delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete." Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed.2008). That court should then, relying on the *Gunter/Prudential* factors and its experience, determine whether the level of distribution provided to the class by the settlement reflects a failure of class counsel to represent ade-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))

quately the interests of the entire class. We note that the use of a lodestar cross-check may be helpful, although not necessarily determinative, in making this determination. [FN14] Having framed the relevant inquiry, we leave the determination of the appropriate fee award to the District Court, which is more familiar with the performance and skill of counsel, the nature and history of the litigation, and the merits of the lawsuits.

**IV. Class Notice**

[24] After initially approving the settlement, but before giving final approval, Federal Rule of Civil Procedure 23(e)(1) requires a district court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Although the Rule provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process. Zimmer Paper Prods., Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir.1985). Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 962–63 (9th Cir.2009); Masters, 473 F.3d at 438; Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1153 (8th Cir.1999); In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 326 (3d Cir.1998); 3 Herbert B. Newberg et al., Newberg on Class Actions § 8:32 (4th ed.2012).

*12 [25] Young contends that the settlement notice was inadequate because it did not identify the cy pres recipients who will receive excess settlement funds. [FN15] His primary concern is that unnamed class members will not have the opportunity to object to the selection of the cy pres recipients, who are intended to serve as proxies for the class members' interests. While a valid concern, failure to identify the cy pres recipients is not a due process violation. Class members know there is a possibility of a cy pres award and that the Court will select among recipients proposed by the parties at a later date. This knowledge is adequate to allow any interested class member to keep apprised of the cy pres recipient selection process. We are confident the Court will ensure the parties make their proposals publicly available and will allow class members the opportunity to object before it makes a selection. [FN16]

The delayed naming of cy pres recipients presents a more nuanced issue with respect to the opportunity of class members to appeal the Court's selection of cy pres recipients. As the Court of Appeals for the First Circuit has recently explained,

> [o]nly parties to a civil action may appeal from a final judgment.... The Supreme Court has recognized only one exception to this rule: that "nonnamed class members ... who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." ... The question then becomes whether Devlin [v. Scardelletti], which created an exception for unnamed class members who have objected to settlement agreements, extends to this situation in which unnamed class members have objected to a cy pres distribution.

In re Lupron, 677 F.3d at 29–30 (second alteration in original) (quoting and citing Devlin v. Scardelletti, 536 U.S. 1, 7, 14, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002)). The First Circuit did not resolve whether class members objecting to a cy pres distribution are permitted to appeal without intervening, and we are unaware of any court of appeals that has done so.

[26] Despite this uncertainty, we believe the notice provided to class members here satisfies the requirements of due process. Even without a Devlin exception, to the extent putative class members have a property interest in the unclaimed funds and object to the cy pres recipients selected, they may typically intervene in the lawsuit for purposes of appealing an eventual order directing a cy pres distribution. See Fed.R.Civ.P. 24(a)(2); see also Devlin, 536 U.S. at 20 (Scalia, J., dissenting) (describing the Devlin exception as unnecessary because "class members will typically meet the requirements for intervention as of right under Federal Rule of Civil Procedure 24, including intervention only for the purpose of appeal, and even after the class judgment has been entered"). We believe intervention will prove sufficient to protect the interests of unnamed class members in appealing the selection of cy pres recipients. And if it does not, they may ask us to determine whether it is appropriate to create a new Devlin exception allowing them to appeal.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
**(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))**

**V. Conclusion**
    **\*13** We summarize our rulings.

    1. We vacate the District Court's orders approving settlement and the fund allocation plan because the Court did not have the necessary factual information to determine whether the settlement will provide sufficient direct benefit to the class.

    2. We vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement. We confirm that the Court may, in its discretion, reduce attorneys' fees based on the level of direct benefit provided to the class.

    3. We do not require that a corrected notice be sent to class members because we do not believe that the notice provided was inadequate. We note, however, that supplemental notice should be provided to the class if the settlement is materially altered on remand.

    FN* Honorable Kathleen M. O'Malley, United States Court of Appeals for the Federal Circuit, sitting by designation.

    FN1. Although Judge Weis briefly discussed the desirability of *cy pres* distributions in a partial concurrence and dissent, the majority in that case did not address the issue. *See In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 363–64 (3d Cir.2010) (Weis, J., concurring in part and dissenting in part).

    FN2. The *cy pres* doctrine originated in trusts-and-estates law as a rule of construction used to preserve testamentary charitable gifts that otherwise would fail. "When it becomes impossible to carry out the charitable gift as the testator intended, the doctrine allows the 'next best' use of the funds to satisfy the testator's intent 'as near as possible.' " *Id.* (quoting Natalie A. DeJarlais, Note, *The Consumer Trust Fund: A Cy Pres Solution to Undistributed Funds in Consumer Class Actions,* 38 Hastings L.J. 729, 730 (1987)).

    FN3. Three of the objectors to the settlement—Young, Clark Hampe, and Allison Lederer—have appealed, but only Young has filed briefing. Because the underlying suits alleged violations of the Sherman and Clayton Acts, the District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 & 1337.

    Our Court has appellate jurisdiction because this is a timely filed appeal from a final judgment. 28 U.S.C § 1291. Although the objectors were not parties to the underlying action, as class members who timely objected to the approval of the settlement at a fairness hearing, they are permitted to appeal the settlement without the need to intervene formally. *See Devlin v. Scardelletti,* 536 U.S. 1, 14, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002).

    FN4. The settlement class is comprised of all persons and entities who bought certain baby products from Babies "R" Us and Toys "R" Us during prescribed time periods dating back to 1999.

    FN5. Under the allocation plan, valid documentary proof "may include but is not limited to receipts, cancelled checks, credit card statements, records from Toys 'R' Us or Babies 'R' Us, or other records that show the Authorized Claimant purchased the Settlement Product(s) from Toys 'R' Us or Babies 'R' Us, and when the purchase was made."

    FN6. As we discuss directly below, the parties may also agree to make further distributions to class members (*e.g.,* expand eligibility for payments and/or lower the requirements for making a successful claim).

    FN7. In contrast with *cy pres* distributions agreed to by the parties as part of a settlement, courts of appeals have greeted with more skepticism *cy pres* distributions imposed by trial courts over the objections of the parties. *See, e.g., Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468, 479 (5th Cir.2011) (*en banc* ) ("Where the terms of a settlement agreement are sufficiently clear, or, more

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
**(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))**

accurately, insufficient to overcome the presumption that the settlement provides for further distribution to class members, there is no occasion for charitable gifts, and *cy pres* must remain offstage." (footnote omitted)). We do not deal with that situation here.

FN8. Federal Rule of Civil Procedure 23, under which this class settlement was approved, is a procedural mechanism permitting the aggregation of claims in federal court. Pursuant to the Rules Enabling Act, it does not and cannot alter the underlying substantive law being asserted. 28 U.S.C. § 2072. Because "a district court's certification of a settlement simply recognizes the parties' deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of the underlying causes of action," *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 312 (3d Cir.2011), we do not believe the inclusion of a *cy pres* provision in a settlement runs counter to the Rules Enabling Act. *But see Klier,* 658 F.3d at 481 (Jones, J., concurring) (suggesting that *cy pres* distributions arguably violate the Rules Enabling Act and present Article III problems); *In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 362 (3d Cir.2010) (Weis, J., concurring and dissenting) (suggesting that excess funds should escheat to the state instead of being distributed to *cy pres* recipients). The Rules Enabling Act, however, provides further support for the proposition that courts should favor class settlements that provide direct compensation to the class through individual distributions.

FN9. As discussed in the next section, *see infra* Part III, it may also be appropriate to decrease attorneys' fees in those circumstances.

FN10. Class members should be notified of any material alterations to the settlement and permitted to object to them before the Court approves the settlement.

FN11. In *Boeing,* the fund was created following the determination of plaintiffs' claims

rather than pursuant to a settlement. *Id.* at 474–75. We do not believe this significantly alters the analysis.

FN12. Young also asks us to hold that fee awards exceeding the amount directly distributed to class members are presumptively unreasonable. For substantially similar reasons, we do not adopt such a rule.

FN13. We note that, in enacting the Class Action Fairness Act, Congress required courts to base attorneys' fees in coupon (as opposed to cash) settlements "on the value to class members of the coupons that are redeemed" rather than on the face value of the coupons. 28 U.S.C. § 1712(a). Although we do not deal with a coupon settlement, this statutory provision further supports the proposition that the actual benefit provided to the class is an important consideration when determining attorneys' fees.

FN14. This case demonstrates why use of the lodestar is helpful but not outcome determinative. As noted, the District Court calculated a lodestar of $31,839,355.33 at regular billing rates, and the fees awarded represented a negative lodestar multiplier of .37. This suggests that class counsel would not be overpaid for their services if compensated as requested, but it also suggests that counsel has a significant financial incentive to cut its losses and settle the lawsuits.

FN15. Young also asserts that the settlement notice fails because it indicates that a potentially valid proof of purchase—certain forms of photographic evidence—is invalid. Young became aware of that photographic evidence might be permissible at the fairness hearing several months before the District Court gave final approval to the settlement. Because he failed to raise this issue before the Court, it is waived on appeal. *Franki Found. Co. v. Alger–Rau & Assocs., Inc.,* 513 F.2d 581, 586 (3d Cir.1975). We are unclear, however, whether photographic evidence actually is valid proof of purchase under the settlement. On remand, the Court, taking into account any changes to the settlement, should clarify

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))
**(Cite as: 2013 WL 599662 (C.A.3 (Pa.)))**

the types of evidence that are valid. If that evidence materially differs from the evidence described as valid in the class notice, the Court should require that a supplemental notice be provided to the class.

FN16. Courts generally require the parties to identify "a recipient whose interests reasonably approximate those being pursued by the class." ALI, Principles of the Law of Aggregate Litig. § 3.07. In this case, the Court indicated that it would select a *cy pres* recipient (from among the organizations proposed by the parties) that satisfies this standard. "[H]aving judges decide how to distribute cy pres awards both taxes judicial resources and risks creating the appearance of judicial impropriety." *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 38 (1st Cir.2012). The judicial role is better limited to approving *cy pres* recipients selected by the parties. While we do not decide today whether approving a settlement with the *cy pres* selection process envisioned by the parties in this case is an abuse of discretion, we join other courts and commentators in expressing our concern with district courts selecting *cy pres* recipients. *See id.* at 38–39; *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1039 (9th Cir.2011) ("[T]he specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety."); ALI, Principles of the Law of Aggregate Litig. § 3.07(c) ("The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class.").

C.A.3 (Pa.),2013.
In re Baby Products Antitrust Litigation
--- F.3d ----, 2013 WL 599662 (C.A.3 (Pa.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.





US POSTAGE

neopost

03/07/2013
$1.520
045J83087226

Mailed From 60606

**KRISLOV & ASSOCIATES, LTD.**

*Attorneys at Law*

CIVIC OPERA BUILDING, SUITE 1350
20 NORTH WACKER DRIVE
CHICAGO, IL 60606

Honorable Edward J. Davila
United States District Court
Northern District of California
280 S. First Street
San Jose, CA  95113