SEAN P. REIS (SBN 184044)
sreis@edelson.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Phone: 949.459.2124
Fax: 949.459.2123

JAY EDELSON (jedelson@edelson.com)*
RAFEY S. BALABANIAN (rbalabanian@edelson.com)*
ARI J. SCHARG (ascharg@edelson.com)*
CHANDLER R. GIVENS (cgivens@edelson.com)*
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Phone: 312.589.6370
Fax: 312.589.6378
*Admitted *pro hac vice*

*Attorneys for Plaintiffs JEFF MILANS and PETER COMSTOCK and the CLASS*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

*IN RE: NETFLIX PRIVACY LITIGATION*

Case No. 5:11-cv-00379-EJD

[Hon. Edward J. Davila]

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ADDITIONAL DISCOVERY**

Date: October 11, 2013
Time: 9:00 a.m.
Location: Courtroom 4, 5th Floor

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 11, 2013 at 9:00 a.m., or as soon as thereafter as this matter may be heard,[1] Plaintiffs Jeff Milans and Peter Comstock will appear, through counsel, before the Honorable Edward J. Davila, or any judge sitting in his stead, in Courtroom 4, 5th floor of the United States District Court for the Northern District of California, San Jose Division, located at the United States Courthouse, 280 South 1st Street, San Jose, California 95113, and then and there move the Court to reopen discovery.

After the Court granted the instant class action settlement final approval, four serial objector attorneys, purportedly representing nine class members, appealed the Court's final approval order. Given the attorneys' history of improper conduct and misusing the appellate process for their personal financial gain, Plaintiffs respectfully request that the Court follow other courts in this District and allow Plaintiffs to conduct limited discovery into the merits of the objectors' appeals, their motivations, and their financial arrangements with their attorneys. Plaintiffs' proposed discovery requests are attached hereto as Exhibits A through I.

This motion is based upon this Notice, the authorities cited in the Motion, and the record in this case, along with any oral argument that may be presented to the Court and any evidence submitted in connection therewith.

May 31, 2013

Respectfully Submitted,

**JEFF MILANS and PETER COMSTOCK**, individually and on behalf of classes of similarly situated individuals,

By: /s/ Rafey S. Balabanian
One of Plaintiffs' Attorneys

[1] Given the time-sensitive nature of Plaintiffs' motion and the appellate briefing process, Plaintiffs respectfully request that the Court either decide Plaintiffs' motion without hearing, or move the hearing date forward.

# TABLE OF CONTENTS

I. Introduction ... 1

II. Background ... 1

A. Litigation and the Settlement ... 1

B. The Professional Objector-Appellants and their Histories of Improper Tactics ... 3

1. Objectors Stephen C. Griffis and Hugh Ramsey ... 3

2. Objector Bradley Schulz ... 5

3. Objector Tracey Klinge ... 6

4. Objectors Denis Bono, Andrew Cesare, William Ford, Judith Mallory, and Katherine Strohlein ... 7

C. Final Approval and Appeals ... 8

III. Argument ... 9

A. The proposed discovery will likely produce evidence relevant to the merits and motivations behind the Objectors' appeals. ... 10

B. Plaintiffs' proposed additional discovery is procedurally proper and reasonable, and will not unduly prejudice the Objectors. ... 11

IV. Conclusion ... 11

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ........................................................ 10

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Direct Purchaser v. Smithkline*, No. 06-01272 (1st Cir.)............................................................. 3

**UNITED STATES DISTRICT COURT CASES:**

*Arthur v. Sallie Mae, Inc.*, No. C10-198JLR (W.D. Wash. Sept. 14, 2012) .................................. 7

*Bleek v. Supervalu, Inc*, 95 F. Supp. 2d 1118 (D. Mont. 2000) .................................................. 10

*Conroy v. 3M Corp.*, No. C 00-2810 CW,
2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006) ................................................. 5

*Embry v. ACER Am. Corp.*, C 09-01808 JW,
2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) .................................................................. 5

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006)....................................................... 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
281 F.R.D. 531 (N.D. Cal. 2012) ................................................................... *passim*

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
MDL No. 1999 (E.D. Wis.).............................................................................................. 3

*In re Mut. Funds Inv. Litig.*, MDL 1586, 2011 1102999 (D. Md. Mar. 23, 2011) ........................ 6

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 07-md-1819-CW (N.D. Cal. Sept. 24, 2011) ............................................................. 7

*In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729,
2009 WL 937158 (N.D. Ill. Apr. 6, 2009) ......................................................................... 3

*In re Yahoo! Litig.*, No. 06-cv-2737 CAS (FMOx) (C.D. Cal.)................................................... 3

*Itel Sec. Litig.*, 596 F. Supp. 226 (N.D. Cal. 1984) *aff'd*, 791 F.2d 672 (9th Cir. 1986) ............... 9

*Meijer, Inc. et al. v. Smithkline Beecham, et al.*, No. 1:01-cv-12239 (D. Mass.) .......................... 3

*Milliron v. T-Mobile, USA, Inc.*, No. 08-cv-04149 (JLL) (ES) (D. N.J.)...................................... 3

*New Motor Vehicles Canadian Export Antitrust Litig.*, No. 2:03-md-1532 (D. Me.) .................... 3

*Resolution Trust Corp. v. Keating*, 186 F.3d 1110 (9th Cir. 1999)............................................... 9

*Tyco Thermal Controls LLC v. Redwood Indus.*, no. C 06-7164 JF (PVT),
2010 WL 1526471 (N.D. Cal. Apr. 15, 2010) ...................................................... 9, 10, 11

**STATE COURT CASES:**

*Brown v. Wal-Mart Stores, Inc.*, No. 01 L 85 (Ill. Cir. Ct. Oct. 29, 2009) .................................... 5

*Nguyen v. Cellco P'Ship*, No. A118235 (Cal. Ct. App.)............................................................. 3

**STATUTES AND RULES:**

Fed. R. App. P. 4 ......................................................................................................................... 9

Fed. R. Civ. P. 16 ......................................................................................................................... 9

Fed. R. Civ. P. 26 ....................................................................................................................... 10

Fed. R. Civ. P. 59 ......................................................................................................................... 9

Video Privacy Protection Act, 18 U.S.C. § 2710 (2012) ...................................................... 1, 2, 4

## I. Introduction

On March 18, 2013 the Court granted final approval to the Parties' Settlement in this litigation, creating a $9 million settlement fund, approving roughly $6.5 million in *cy pres* distributions, and providing industry-leading injunctive relief to the more than 62 million Class members involved. From those 62 million Class members, there are now six appeals of the Court's Final Approval Order. Four of those appeals were lodged by "professional" or "serial" objectors—attorneys "who routinely represent[] objectors purporting to challenge class action settlements . . . [not] to effectuate changes to settlements, but . . . for [personal financial gain.]" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012). As explained below, nowhere is the objecting attorneys' purely financial motivation more apparent than this case.

Given the objecting attorneys' clear focus on their own financial interests at the expense of the Class, discovery is called for here to test their clients' motivations and reasons for objecting, to test the financial and professional relationships between the objectors and their attorneys, and to test the objecting attorneys' relationships with each other. If previous litigation is any indication, Plaintiffs' proposed discovery will show that the appeals brought by Stephen Griffis, Hugh Ramsey, Bradley Schulz, Tracey Klinge, Denis Bono, Andrew Cesare, William Ford, Judith Mallory, and Katherine Strohlein (collectively "the Objectors") are being driven solely by their attorneys' desire to leverage the expense and delay of appeal for their own pecuniary gain.

For the reasons detailed more fully below, Plaintiffs Jeff Milans, Peter Comstock, and the Settlement Class ("Plaintiffs") respectfully request that the Court grant their motion for additional discovery and award such further relief as is necessary to protect the integrity of the Settlement.

## II. Background

### A. Litigation and the Settlement

This case began with plaintiff Jeff Milans's Complaint, filed on January 26, 2011, which was the first class action brought for unlawful retention of personally-identifiable information ("PII") in violation of the Video Privacy Protection Act's ("VPPA") "Destruction of Old Records" provision, 18 U.S.C. § 2710(e). (*See* Dkt. 1; *see also* Dkt. 191-3 at ¶ 12.) After a wave of similar

lawsuits alleging the same claim were filed, the Court related the cases and appointed Jay Edelson of Edelson McGuire, LLC (now Edelson LLC) Interim Lead Class Counsel. (*See* Dkts. 14, 59.)

After consolidation, Plaintiffs filed an amended consolidated complaint, adding allegations that Netflix violated the VPPA's non-disclosure provision, 18 U.S.C. § 2710(b), by disclosing Plaintiffs' and the Class's PII to third parties without consent. (*See* Dkt. 61.) The Parties engaged in discovery and, while discovery was ongoing, the Parties—through the Court's ADR program—agreed to mediation in front of former District Judge Layn R. Phillips (ret.) of Irell & Manella, LLP. (*See* Dkts. 70, 191-3 at ¶ 20.)

The mediation took place on February 1, 2012, and the Parties used the mediation to exchange further information and to discuss settlement. (Dkt. 191-3 at ¶ 21.) After a full day of arm's-length negotiations, the Parties reached a settlement and signed a memorandum of understanding. (*Id.* at ¶ 22.) Over the next three months, the Parties exchanged drafts of the Settlement Agreement, before finally executing it on April 30, 2012. (*Id.* at ¶ 25.)

The Settlement Agreement, on behalf of all current or former Netflix subscribers as of the date of Preliminary Approval (July 5, 2012), required Netflix to make industry-leading privacy practice changes by de-personalizing former subscribers' PII and giving current and future subscribers the choice between having their PII de-personalized or retained in identifiable form upon cancellation. (*See* Dkts. 191 at 29, 191-1 at § 2.1.1.) The Settlement also required Netflix to establish a $9 million settlement fund, which would be used to distribute roughly $6.5 million to *cy pres* recipients agreed upon by the parties and approved by the Court, and to pay for Class notice, attorneys' fees, costs, and incentive awards to the class representatives and named plaintiffs. (*See* Dkt. 191 at 29 – 34.)

The Court granted preliminary approval on July 5, 2012, finding that the "settlement appear[ed] fair, non-collusive and within the range of possible final approval," and noting that the "settlement was the product of arm's length negotiation before a mediator and [did] not appear to benefit those who participated at the expense of any other parties." (Dkt. 80 at 4.) The Court found the Settlement "deserving of preliminary approval" "[i]n light of the minimal monetary recovery

that would be realistically recoverable by individual Settlement Class members and the immediate benefits offered to the Class by the injunctive relief and *cy pres* donations." (*Id.*) The Court also found certification proper for settlement purposes, Class Counsel adequate, and Notice to be the best practicable under the circumstances. (*Id.* at 5 – 8.) Immediately following preliminary approval, the Parties and the settlement administrator implemented the Court-approved notice plan, and the Parties solicited potential *cy pres* recipient proposals. (*See* Dkt. 191 at 18 – 19.)

**B. The Professional Objector-Appellants and their Histories of Improper Tactics**

While objections to settlements can play a valuable role in any class action, they often allow individuals (and their attorneys) to abuse the system by filing frivolous appeals in order to command substantial nuisance settlements. (*See* Dkt. 226 at 40 – 41 (detailing common tactics of professional objectors, and several courts' reactions to them).) This case, with 62 million class members, was no different. The last few days leading up to the objection deadline saw several professional objectors stake their claims by filing meritless, boilerplate objections that added nothing to the discussion. Relevant to this motion and to the pending appeals, those professional objectors who appealed, and their objections, are detailed below.

**1. Objectors Stephen C. Griffis and Hugh Ramsey**

As detailed in Plaintiffs' reply in support of their motion for final approval, Objectors Hugh Ramsey and Stephen Griffis (a well-known serial objector attorney in his own right)[2] are represented by Steve A. Miller, an attorney with a long history of using the objection process for personal gain. Like his current client and sometimes co-counsel Griffis, Miller has objected to dozens of class actions throughout the country and regularly appeals final approval orders before dismissing those appeals, presumably in exchange for hush money.[3]

---

[2] *See*, *e.g.*, *Meijer, Inc., et al. v. Smithkline Beecham*, *et al*, No. 1:01-cv-12239 (D. Mass.); *Nguyen v. Cellco P'Ship*, No. A118235 (Cal. Ct. App.); *Direct Purchaser v. Smithkline*, No. 06-01272 (1st Cir.); *Cooper v. Pacific Life Ins.*, No. 2:03-00131 (S.D. Ga.); *New Motor Vehicles Canadian Export Antitrust Litig.*, No. 2:03-md-1532 (D. Me.).

[3] *See*, *e.g.*, *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, MDL No. 1999 (E.D. Wis.) (final approval granted, Miller appealed and then voluntarily dismissed appeal); *In re Yahoo! Litig.*, No. 06-cv-2737 CAS (FMOx) (C.D. Cal.) (final approval granted, Miller appealed and then voluntarily dismissed appeal); *Milliron v. T-Mobile, USA, Inc.*, No. 08-cv-

It should come as no surprise, then, that the objection filed by Miller—at just over two pages in length—had little to say. (*See* Dkt. 196.) Miller contended that the very act of bringing a large nationwide class action with billions of dollars in theoretical liability renders Plaintiffs and Class Counsel inadequate, because full recovery was not a realistic possibility and therefore class members are better off suing individually. (*Id.*) Of course, the Griffis/Ramsey objection ignored the strong value provided by the Settlement's injunctive component as well as the fact that any Class member who truly believed he or she was better off suing individually could do just that by opting out and filing an individual action. (*See* Dkt. 226 at 59.) Further, the objection overlooked the fact that on one of the two claims alleged (unlawful retention of PII), the Seventh Circuit, which is the only Appellate Court to squarely address the issue, found that a plaintiff could not seek statutory damages for violation of § 2710(e) of the VPPA. As for the claim that Netflix unlawfully disclosed its subscribers' PII, as Class Counsel made clear in Plaintiffs' final approval papers that they and the putative class would have little chance of prevailing on that claim. And, ultimately, the notion that statutory damages of $2,500, gives enough of an incentive for individuals to bring suit for Netflix's alleged violations of the VPPA is just not true. *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (finding that actual damages of $10,000 to $15,000 may not be sufficient incentive to litigate individually).[4] The class action mechanism is far superior to 62 million individual suits seeking to recover a relatively modest statutory damage award.

In light of Miller's history of improper objections and appeals and his clients' inadequate objection in this case, the Court should permit the attached discovery, (*see* Exhibits A and B), so that Plaintiffs may test the merits and motivations of Griffis's and Ramsey's appeal.

---

04149 (JLL) (ES) (D. N.J.) (final approval granted, Miller appealed and later stipulated to dismissal of appeal); *In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729, 2009 WL 937158 (N.D. Ill. Apr. 6, 2009) (final approval granted, Miller appealed and voluntarily dismissed the appeal).

[4] Presumably, if $2,500 statutory damages were sufficient to motivate individuals to sue, Griffis and Ramsey would've excluded themselves from the Class and sued individually, rather than remaining in the Class and objecting.

**2. Objector Bradley Schulz**

Objector Bradley Schulz is represented by infamous serial objector Christopher Bandas. As with the Griffis/Ramsey objection, Plaintiffs have already detailed the myriad problems with the Schulz objection. (*See* Dkt. 226 at 70 – 71.) Nonetheless, certain facts warrant reiteration for the purposes of the discovery motion. To start, Schulz's attorney has a long and noted history of improper objections and misconduct, including, as one court put it, "routinely represent[ing] objectors purporting to challenge class action settlements . . . not . . . to effectuate changes to settlements, but . . . for his own personal financial gain . . . [and] has been excoriated by Courts for this conduct." *In re CRT*, 281 F.R.D. at 533; *see also Brown v. Wal-Mart Stores, Inc.*, No. 01 L 85, "Order Denying Objections to the Settlement and Fees and the Motion to Intervene and for Pro Hac Vice Admission" (Ill. Cir. Ct., Fourteenth Judicial Cir. Oct. 29, 2009) ("The Bandas Objection . . . is a generic boilerplate objection prepared and filed by attorneys working for their own personal benefit and not for the benefit of this Class or for those lawyers' client . . . the record before the Court demonstrates that Bandas is a professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hard working counsel . . . ."); *see also Conroy v. 3M Corp.*, No. C 00-2810 CW, 2006 U.S. Dist. LEXIS 96169, at *11 (N.D. Cal. Aug. 10, 2006) (describing Bandas's objections as "patently frivolous"). As a result of this misconduct, Bandas was recently held in contempt by Judge Ware for failing to obey a court order. *See Embry v. ACER Am. Corp.*, C 09-01808 JW, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012).

As with the Griffis/Ramsey objection, the Schulz objection is wholly without merit. (*See* Dkt. 210.) Schultz raised a series of arguments that ignored the facts and law of the case, including that a direct cash payment would have been feasible in this case, (*see* Dkt. 210 at 3 – 5), despite sworn testimony from the Settlement Administrator to the contrary, (*see* Dkt. 226 at 19; Dkt. 226-6); that the proposed *cy pres* recipients were "unnamed," (*see id.* at 3), even though they were listed in Plaintiffs' final approval motion, (*see* Dkt. 191 at 30 – 33), in a separate docket entry,

(*see* Dkt. 192), and in a posting on the Settlement Website.[5] As discussed in regard to other objections, Schulz's attacks on the amount and form of the relief obtained are simply suggestions that the Settlement could have been different or better, and thus, are not valid objections. (Dkt. 256 at 20 – 21.) Likewise, Schulz's objection that there was a conflict between those class members whose PII was disclosed and those whose was not ignores the fact that discovery showed *no* viable theory of disclosure for *any* of the Class members. (*See* Dkt. 191 at 20 – 22; Dkt. 191-3 at ¶¶ 14, 15, 19, 37 – 39.)

Given Schulz's attorney's history of misconduct and the lack of serious argument in the Objection, the attached discovery, (*see* Ex. C), is especially warranted in this case because it will almost certainly produce evidence of improper motive and further attorney misconduct.

**3. Objector Tracey Klinge**

Attorney Thomas Cox, representing Objector Tracey Klinge—or Tracey K. Cox, (*see* Dkt. 226 at 68 n.71), or Tracey C. Klinge (*see* Dkt. 267)—has added yet another frivolous objection to his resume. (*See* Dkt. 226 at 68 n.72.) As in other cases, Cox brings this objection and appeal with little regard for the facts or the law. For instance, Cox's Objection actually includes the following sentence: "Here, the proposed settlement attempts to distribute the funds to *unnamed groups* that advocate for internet privacy, *the recipients were identified on 11/1/2012*." (Dkt. 206 at 9 (emphasis added).) The remainder of Klinge's Objection is similarly mistaken and nonsensical, warrants no further discussion beyond Plaintiffs' existing briefing. (*See* Dkt. 226 at 68 – 70.)

Given that Cox has had trouble even identifying his client—which shows this is all but a joke to him—his blatant disregard for the facts of the case or even ordinary logic, and his previous use of Tracey C. Klinge (or Tracey K. Cox) as a pawn in his serial objection practice, *see In re Mut. Funds Inv. Litig.*, MDL 1586, 2011 WL 1102999 (D. Md. Mar. 23, 2011) (denying Cox's objection brought on behalf of Klinge, and chiding his professional objection practice), Plaintiffs

[5] *See Cy Pres Award Information*, VideoPrivacyClass.com (Nov. 1, 2012), http://videoprivacyclass.com/Portals/0/Documents/Notice%20of%20Proposed%20Cy%20Pres%20Award%20Recipients.pdf

should be allowed to serve the attached discovery, (*see* Ex. D), on Klinge to determine the bases and motivations for her objection.

**4. Objectors Denis Bono, Andrew Cesare, William Ford, Judith Mallory, and Katherine Strohlein**

Finally, five objectors are represented on appeal by notorious serial objector Joseph Darrell Palmer. Palmer is one of the nation's most prolific serial objectors, having unsuccessfully objected to over thirty class action settlements in recent years. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 07-md-01819-CW, Dkt. 1386-2 (N.D. Cal. Sept. 24, 2011) (providing a chart of Mr. Palmer's objections, his clients, and his lack of results obtained) (attached hereto as Ex. E – I); (*see also* Dkt. 226 at 65 n.69 (detailing more of Palmer's failed objection history)).

In addition to making his practice out of filing baseless objections, Palmer has a history of drawing the ire of Courts for his misconduct. *See Arthur v. Salle Mae, Inc.*, No. C10-198JLR, Dkt. 268 at 8 (W.D. Wash. Sept. 21, 2012) ("In fact, Mr. Palmer was temporarily suspended from the Colorado Bar Association, the State Bar of Arizona, and the State Bar of California as a result of a Colorado felony conviction in the 1990s . . . Here, Mr. Palmer improperly certified and declared under penalty of perjury that he did not have a disciplinary history. As such, he violated the Standards of Professional Conduct set forth in the local rules and is subject to disciplinary action."); *id.* at 10 ("Mr. Palmer has apparently submitted false pro hac vice applications in at least three other cases . . . [and] the false statement in the pro hac vice application is not the only misrepresentation Mr. Palmer has made to this court. It is impossible to reconcile a declaration submitted to this court under penalty of perjury, dated May 17, 2012, with the court record . . . [and] Mr. Palmer made several other misrepresentations in his motions for attorneys' fees."); (*see also* Dkt. 226 at 65 n.68).

Although two of Palmer's current clients—Bono and Mallory—were originally represented by different counsel, none of his current clients lodged a meaningful objection. Palmer's original clients (Cesare, Ford, and Strohlein) made a series of unsupported and conclusory arguments against approval, including the wholly inaccurate claim that Plaintiffs' suit

"does not involve any novel legal questions," (Dkt. 209 at 4), despite being the first class action brought under 18 U.S.C. § 2710(e). Palmer's new clients' objections fared no better, asserting that the Settlement is *per se* inadequate because it does not provide direct monetary payment to the Class members, and that "the agreement and notice were drawn to intimidate absent Settlement Class members from objecting." (Dkt. 212 at 4 – 5.) Bono and Mallory also erroneously contended that Netflix can avoid the injunctive relief provided by the Settlement "if Netflix gets out of the DVD by mail business within 4 years," (which blatantly misreads the Settlement), and "Class Counsel have failed to submit or post on the settlement website a motion for attorneys[' fees]" (which Class Counsel did, as provided by the Settlement, two weeks before the objection deadline). (*Id.*)

In light of Palmer's history of misconduct, his clients' meritless objections, and his adoption of another attorney's clients, Plaintiffs should be entitled to discovery into the propriety of Palmer's appeal.

**C. Final Approval and Appeals**

Over the objections, the Court granted final approval on March 18, 2013, finding that the relief obtained in the Settlement was reasonable, the class certification was still proper, that notice was adequate, that the requested attorneys' fees and incentive awards were reasonable, and that none of the objections warranted denying approval. (*See generally* Dkt. 256.) In so doing, the Court rejected the arguments raised in the objections, rejecting contentions that the *cy pres* recipients were improper, (*id.* at 20), finding that various objectors' proposals of in-kind relief were not shown to be economically feasible and were also simply suggestions for "a different or arguably better settlement award rather than sufficiently calling into question the fairness or adequacy of the Agreement," (*id.* at 21), finding the settlement fund size sufficient, (*id.* at 22), finding that the injunctive relief "seeks to prevent Netflix from engaging in precisely the activity which underlies this class action," (*id.* at 22), and finding that the objections to the attorneys' fees and incentive awards "ignored well-established Ninth Circuit law," and were merely "generalized quarrels with the law regarding such fees and awards in class action settlements, the process used

to calculate such fees, and whether the fees and awards are justified in light of [the] Settlement Agreement." (*Id*. at 23.)

**III. Argument**

Plaintiffs request that the Court allow additional discovery so that Plaintiffs can determine whether the Objectors are legitimately representing the best interests of the Class, or whether they are simply in it for their attorneys' gain. The Court has the inherent power to reopen discovery, despite the Objectors' appeals, because "the Final Judgment from which [they] appeal[] expressly provides for the Court's continuing jurisdiction to implement, enforce and administer the settlement, and to manage the Class Action itself," *In re CRT*, 281 F.R.D. at 533; (*see also* Dkt. 257 at ¶ 19), because "it is well settled that following a notice of appeal, the Court retains jurisdiction 'to preserve the integrity of this Court's judgments in general, and specifically to protect the Court's final judgment . . .'"; *In re CRT*, 281 F.R.D. at 533 – 34 (quoting *In re Itel Sec. Litig.*, 596 F. Supp. 226, 233 (N.D. Cal. 1984), *aff'd*, 791 F.2d 672 (9th Cir. 1986)). The Court also has jurisdiction because "Rule 4(a)(4) of the Federal Rules of Appellate Procedure provides that a district court retains the power to alter or amend an appealable order or judgment pursuant to Fed. R. Civ. P. 59, even if a notice of appeal has been filed." *In re CRT*, 281 F.R.D. at 534 (citing *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 n.1 (9th Cir. 1999)).

Here, Plaintiffs should be allowed to reopen discovery because the Objectors voluntarily injected themselves into this litigation after the close of fact discovery. Plaintiffs move under Fed. R. Civ. P. 16(b)(4), which "provides that a court may modify or extend a discovery deadline upon a showing of good cause." *Tyco Thermal Controls LLC v. Redwood Industrials*, No. C 06-7164 JF (PVT), 2010 WL 1526471, at *4.

> In determining whether or not to reopen discovery for the limited purpose requested here, the court considers: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that discovery will lead to relevant evidence."

*Id.* at **4 – 5 (*quoting Bleek v. Supervalu, Inc.*, 95 F. Supp. 2d 1118, 1120 (D. Mont. 2000)).

In this case, fact discovery closed before the Objectors involved themselves, and Plaintiffs had no opportunity to seek discovery from the Objectors regarding the merits of their appeals, their motivations and interests in appealing, and their financial arrangements with their counsel relevant to appeal. Because the Objectors only recently appealed, Plaintiffs should be allowed to seek additional discovery into the merits and motivations behind their appeals.

**A. The proposed discovery will likely produce evidence relevant to the merits and motivations behind the Objectors' appeals.**

Plaintiffs' proposed discovery seeks information regarding the merits and propriety of the Objectors' appeals, (*see* Exs. A – I), and that information will most certainly meet the liberal "relevance" standard established by the Federal Rules. "The scope of permissible discovery, sought by subpoena or otherwise, is ultimately governed by Rule 26(b), which permits the discovery of any non-privileged material 'relevant to the claim or defense of any party,' even if inadmissible, as long as it 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *In re CRT*, 281 F.R.D. at 532 (citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal. 2006); Fed. R. Civ. P. 26(b)(1)). "For purposes of Rule 26(b)(1), relevance is broadly construed." *In re CRT*, 281 F.R.D. at 533 – 43 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). And where an objector "voluntarily appear[s] in . . . litigation by objecting to the [settlement]," information seeking "the bases for [the] objection and [the objector's] claimed standing to object, are clearly relevant to the Settlement now before the Court," even where final approval has been granted and appeal taken. *See In re CRT*, 281 F.R.D. at 533.

Here, Plaintiffs seek limited discovery on issues relevant to the merits and motivations of the Objectors' appeals. For instance, Plaintiffs seek to depose the objectors regarding their motivations in objecting and appealing, and their financial and professional arrangements and relationships with their attorneys. (*See* Exs. A – I.) To supplement the deposition testimony, Plaintiffs also seek relevant documents, including those bearing on the Objectors' retention of counsel (including whether or not the Objectors were solicited for employment by their attorneys),

their financial arrangements with their counsel, and their (and their counsel's) communications and financial arrangements with other firms. (*See id.*). These requests bear directly on the propriety, and thus merit, of the Objectors' appeals, and "[a]s such, the requested information and documents are relevant, needed and reasonably tailored." *In re CRT*, 281 F.R.D. at 533.

Because Plaintiffs' proposed discovery is narrowly tailored to focus on the Objectors' motivations, purposes, objection histories, and relationships with counsel, it is likely to lead to the production of relevant evidence, and should be allowed.

### B. Plaintiffs' proposed additional discovery is procedurally proper and reasonable, and will not unduly prejudice the Objectors.

Not only will Plaintiffs' discovery requests lead to the production of relevant evidence showing the impropriety of their Objections, the other "good cause" factors favor additional discovery. The first factor, imminence of trial, *see Tyco*, 2010 WL 1526471, at *4, favors additional discovery—the Parties have settled and trial isn't on the horizon. Further, the Objectors would not be prejudiced, as each Objector "voluntarily appeared in this litigation by objecting to the [settlement] . . . and is properly subject to discovery." *In re CRT*, 281 F.R.D. at 533.

Moreover, Plaintiffs have diligently pursued discovery in this case. Plaintiffs sought and obtained the discovery necessary to evaluate their claims and negotiate the Settlement during the discovery period set out by the Court, and fact discovery closed before any of the Objectors appeared in this litigation, (*see* Dkts. 196, 206, 209, 210, 212). Further, until the settlement was given final approval and the appeal deadline passed, Plaintiffs could not have sought discovery regarding the merit and propriety of the appeals. If anything, the only factor weighing against discovery is that the Objectors oppose the additional discovery. But mere opposition to a motion is not a sufficient reason to deny the motion.

## IV. Conclusion

The professional objectors who have now appealed voluntarily involved themselves in this litigation and appealed for their own financial gain. Plaintiffs' requested discovery will likely show that the Objectors have no personal interest in their objections or appeals, but are instead (at

their attorneys' behest) maintaining appeals solely to extract a payoff in exchange for dropping their meritless appeals. For these reasons, the Court should grant Plaintiffs' motion to reopen discovery, and any other such relief as is necessary and proper.

May 31, 2013

Respectfully Submitted,

**JEFF MILANS and PETER COMSTOCK**, individually and on behalf of classes of similarly situated individuals,

By: /s/ Jay Edelson
One of Plaintiffs' Attorneys

SEAN P. REIS (sreis@edelson.com) – SBN 184044
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: 949.459.2124
Fax: 949.459.2123

JAY EDELSON (jedelson@edelson.com)*
RAFEY S. BALABANIAN (rbalabanian@edelson.com)*
ARI J. SCHARG (ascharg@edelson.com)*
CHANDLER R. GIVENS (cgivens@edelson.com)*
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
*Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I filed the foregoing using the Court's CM/ECF system and caused the same to be served via electronic mail where available and by United States mail otherwise, and addressed to the following counsel of record on May 31, 2013.

Keith E. Eggleton
Rodney G. Strickland, Jr.
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304
keggleton@wsgr.com
rstrickland@wsgr.com

*Attorneys for Defendant Netflix, Inc.*

Steve A. Miller
Steve A. Miller, P.C.
1625 Larimer St., Suite 2905
Denver, Colorado 80013
Sampc01@gmail.com

*Attorney for Objectors-Appellants Stephen Griffis and Hugh Ramsey*

Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401-0353
cbandas@bandaslawfirm.com

Timothy R. Hanigan
21021 Ventura Blvd., Ste. 450
Woodland Hills, California 91364-2206
trhanigan@gmail.com

*Attorneys for Objector-Appellant Bradley Schulz*

Joseph Darrell Palmer
Law Offices of Darrell Palmer PC
603 North Highway 101, Suite A
Solana Beach, California 92075
darrell.palmer@palmerlegalteam.com

*Attorney for Objectors-Appellants Andrew Cesare, Denis Bono, Judith Mallory, William Ford, and Katherine Strohlein*

Christopher T. Cain
SCOTT & CAIN
Bank of America Center, Suite 601
550 Main Street
Knoxville, Tennessee 37902

*Attorney for Objector-Appellant Denis Bono and Judith Mallory*

Thomas L. Cox, Jr.
4934 Tremont
Dallas, Texas 75214
tcox009@yahoo.com

*Attorney for Objector-Appellant Tracey C. Klinge*

/s/ Rafey S. Balabanian