1 | Christopher T. Cain (TN BPR# 19997)
**SCOTT & CAIN**
2 | Bank of America Center, Suite 601
550 Main Street
3 | Knoxville, Tennessee 37902
Tel: 865-525-2131
4 |
*Counsel for Objectors Denis Bono*
5 | *and Judith Mallory*

6 |

7 | **IN THE UNITED STATES DISTRICT COURT**

8 | **FOR THE NORTHER DISTRICT OF CALIFORNIA**

9 | **SAN JOSE DIVISION**

10 | IN RE: NETFLIX PRIVACY LITIGATION )       No. 5:11-cv-00379-EJD
        )
11 |                                          )       [Hon. Edward J. Davila]
        )
12 |                                          )       **RESPONSE OF DENIS BONO**
        )       **AND JUDITH MALLORY IN**
13 |                                          )       **OPPOSITION TO MOTION FOR**
        )       **APPEAL BONDS**
14 | _____ )

15 | **NOW COME** Denis Bono and Judith Mallory (hereinafter, "Tennessee Objectors"), by and

16 | through the undersigned counsel, and respond to and opposes the Motion for Appeal Bonds [Doc.

17 | 281] as follows:

18 | **I.   PRELIMINARY STATEMENT**

19 | Plaintiffs seek to impose appeal bonds under Rule 7 of the Federal Rules of Appellate

20 | Procedure on each individual Objector in the sum of $21,694 ($21,519 in settlement administration

21 | costs and $175 for taxable costs). Of course, there is no binding precedent in the United States Court

22 | of Appeals for the Ninth Circuit which would permit such a staggering bond to be imposed on

23 | ordinary consumers. Indeed, the only costs which may be properly included in an appeal bond in this

24 | instance are essentially those minimal costs associated with printing the appellate briefs, and

25 | Plaintiffs and the Tennessee Objectors agree that $175 is an appropriate amount to cover those costs.

26 | Applying well-settled law to the bond application here demonstrates that Plaintiffs' request

27 | to include delay damages, or what they refer to as future settlement administration costs, has no basis

28 | within this Circuit. Accordingly, requiring each Objector to post a $21,694 bond (a collective bond

of about $43,388 by the two Tennessee Objectors) would be clear legal error and a manifest injustice

1  which the Court should not countenance.

2       At its core, Plaintiffs bond request, as well as their discovery motion [Doc. 282] is a tissue

3  of machinations, the real purpose of which is to pressure the Objectors and their counsel into

4  abandoning their appeals by artificially-inflating their costs and to otherwise manufacture

5  unreasonable procedural obstacles to their appeals.  It is respectfully submitted that while the Court

6  may, in its discretion, rightfully require an appellant to post an appeal bond under appropriate

7  circumstances, this case does not present such circumstances, and if a bond is deemed appropriate,

8  a bond in the amount of $175, covering the undisputed taxable costs, is plainly sufficient to secure

9  the costs on appeal.

10      Introductorily, it is important to recognize that Rule 7 of the Federal Rules of Appellate

11  Procedure does not condition the right to an appeal on the filing of an appeal bond.  Moreover, it

12  appears that on its face, the amount of the bond is exorbitant, as it is highly unlikely that, in an era

13  of electronic case management and e-filings, costs associated with a very limited appeal of a

14  judgment approving a class action settlement will reach such an amount.

15      Courts apply and analyze several factors to determine whether an appeal bond is proper.

16  First, there is nothing in the record before this Court to suggest that either Objector could post a bond

17  of $21,694.   Second, there is no evidence before this Court that supports the conclusion that any

18  Objector or their counsel will shirk their responsibility to pay any costs which might be assessed

19  against them by the Ninth Circuit if their appeal is unsuccessful.  Third, the Tennessee Objectors and

20  their counsel respectfully submit that the question of whether their appeal has merit is one for the

21  Ninth Circuit and not for this Court, which has previously overruled their objections, since Rule 7

22  does not provide that the district court should consider the merits of an appeal in determining

23  whether to impose an appeal bond.  And while this Court intimated its disagreement with the issues

24  raised by the Tennessee Objectors, the Court should nonetheless be mindful of the novelty of this

25  area of law and that some of the arguments present substantive issues that warrant additional

26  consideration on appeal.  Fourth, while Plaintiffs raised a concern that any appeal would be instituted

27  in bad faith or vexatiously, it is significant that they fail to cite a single instance where the Tennessee

28  Objectors or the undersigned  counsel have been found to have filed a frivolous appeal in the past.

What's more, the question of whether, or how, to deter a frivolous appeal is one best left to the Ninth Circuit, which may dispose of an appeal at the outset through a screening process, grant a well-taken motion to dismiss, or even impose sanctions under Rule 38. <u>Fifth</u>, numerous public policy reasons exist to reject the appeal bond sought here. For instance, a Rule 7 bond including a large amount is more likely to "chill an appeal" than a bond covering the other smaller, and more predictable, costs on appeal. When faced with a large bond requirement, many appellants, especially individuals like the Objectors here, may simply be unable to post the bond to pursue an appeal. And thus, imposition of a large bond would effectively cut off any right to appeal, take away that right altogether, and force abandonment of an otherwise meritorious appeal.

In the last analysis, imposition of an appeal bond under the circumstances presented by this case would be clear error and a manifest injustice. The Court should not burden the Tennessee Objectors with an appeal bond of any amount, or in the alternative, set the appeal bond to secure the actual anticipated costs on appeal, which should be no more than $175.

## II. LEGAL ARGUMENT

### A.    Standard of Review

"The power to impose an appeal bond under Rule 7 has been specifically given to the discretion of the district court." *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998). Rule 7 provides in relevant part that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." The purpose of a Rule 7 bond is to "ensure that the appellee will be paid any costs that are awarded to him if the appellant is unsuccessful on the appeal." 20 James Wm. Moore et al., *Moore's Federal Practice* § 307.10[1] (3d ed. 2010).

### B.    Relevant Factors Weigh Heavily Against Imposition of a Bond.

Neither Rule 7 nor the Ninth Circuit have provided explicit guidance in enumerating the factors a court should consider in determining whether to require a bond. In applying relevant Ninth Circuit precedent, district courts have articulated three relevant elements of the inquiry: (1) appellant's financial ability to post bond; (2) the risk that appellant would not pay the costs if the appeal loses; and (3) an assessment of the likelihood that appellant will lose the appeal and be

1   subject to costs. *See Schulken v. Wash. Mut. Bank*, 2013 U.S. Dist. LEXIS 48175, at \*12-13 (N.D.
2   Cal. Apr. 2, 2013); *see Fleury*, 2008 U.S. Dist. LEXIS 88166, 2008 WL 468033, at \*6-7.

3       Examination of these factors in this case inescapably demonstrates that a bond exceeding
4   $175 would be excessive.

5       ***It has not been demonstrated that the Tennessee Objectors have the financial wherewithal***
6   ***to post a $21,694 bond.*** The first factor, ability to pay, is grounded in due process concerns. *See*
7   *Azizian v. Federated Department Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) (noting
8   constitutional concern regarding unduly burdening the right to appeal). District courts have found
9   this factor weighs in favor of a bond, absent an indication that a plaintiff is financially unable to post
10  bond. *Fleury*, 2008 U.S. Dist. LEXIS 88166, 2008 WL 4680033, at \*7; *Embry v. ACER Am. Corp.*,
11  2012 U.S. Dist. LEXIS 78068, 2012 WL 2055030, at \*1 (N.D. Cal. June 5, 2012). Here, there is no
12  evidence indicating that either of the Tennessee Objectors would be able or unable to post a bond.
13  Consequently, this factor weighs against requiring a bond in any amount.

14      ***Plaintiffs failed to demonstrate a reasonable risk of nonpayment.*** Plaintiffs feigned that
15  a risk of nonpayment exists because the objecting class members are represented by attorneys who
16  are "professional objectors" – *i.e.*, attorneys who specialize in objecting to large class-action
17  settlements. For certain, this argument is wrong. In fact, in the event that the Tennessee Objectors
18  are unsuccessful on appeal and fail to pay costs assessed against them, Plaintiffs would merely need
19  to institute a single collection action in Tennessee to recover such costs. Besides, just as one court
20  recently (and rightly) concluded in resolving this very argument:

21          the geographic location of the objectors does not raise an inference
            that they will not pay costs on appeal. Further, the fact that the
22          objectors are represented by counsel who specialize in objecting to
            class-action settlements is not a reason to think that they will shirk
23          their liability for costs on appeal.

24  *In re Lawnmower Engine Horsepower Marketing & Sales Prac. Litig.,* 2010 U.S. Dist. LEXIS
25  123761, at \*18 (E.D. Wisc. Nov. 2, 2010) (footnote omitted).

26

27      In short, Plaintiffs have produced nothing to this Court which could permit the Court to
28  assess whether, much less conclude, that there is a risk of nonpayment of costs. As a result, there

is not a significant risk of non-payment and this factor weighs against requiring a bond in any amount.

***The issue of whether an appeal has merit does not render an appeal bond proper.*** Plaintiffs suggest, as the class plaintiffs did in *In re Lawnmower*, that an appeal bond was proper because the appeals are purportedly "without merit." But, as the *In re Lawnmower* court correctly observed, Rule 7 does not provide that the Court should consider the merits of an appeal in determining whether to impose an appeal bond. *Id*. at *18-19. Moreover, this Court, while overruling the objections and intimating its disagreement with the issues raised therein, should nevertheless be mindful of the novelty of this area of law, and that the Tennessee Objectors present substantive issues that could warrant additional consideration on appeal. *See Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 2008 U.S. Dist. LEXIS 45726, at *2 (E.D. Mich. June 12, 2008) (district court noting that although it disagrees with the plaintiff's claims on appeal, "the claims raised are viable and substantial issues").

***Plaintiffs' allegations of bad faith are unwarranted.*** To be sure, legitimate issues exist in this appeal. The evidence in this Court's record simply does not enable the Court to conclude – definitively or otherwise – that the Tennessee Objectors are pursuing their appeal for an improper purpose.

What's more, the Ninth Circuit has made clear that "the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Circ. 2007). As the Ninth Circuit held:

> "Allowing district courts to impose high Rule 7 bonds on where the appeal might be found frivolous risks impermissibly encumbering appellants' right to appeal and effectively preempting this court's prerogative to make its own frivolousness determination."

*Id*. (emphasis and quotations omitted).

Significantly, Plaintiffs are not without recourse if an appeal is determined to be frivolous. For instance, the amount of the bond set by the district court is also subject to review on appeal. *See,*

1    *e.g., Azizian*, 499 F.3d at 955.  Also, the parties may move to dismiss or expedite the appeal or move

2    the Ninth Circuit to impose monetary sanctions, if the appeal is found to be frivolous.  *See* Fed. R.

3    App. P. 38 (2008); 28 U.S.C. § 1912.  *See, e.g., Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d

4    504, 514 (9th Cir. 1978).  And *see generally, Fleury*, 2008 U.S. Dist. LEXIS 88166, at *25-30.

5         In the end analysis, Plaintiffs cannot point to any direct evidence of ill will or dishonest

6    purpose on the part of Tennessee Objectors or their counsel.  And although the Court may disagree

7    with the arguments made by them, and while the Tennessee Objectors and their counsel might

8    disagree with the Court's decision to grant final approval of the settlement, the fact remains that the

9    "purpose of the appeals process is to permit objectors to challenge such rulings." *In re Countrywide*

10   *Fin. Corp. Customer Data Security Breach Litig.*, 2010 U.S. Dist. LEXIS 131775 (W .D. Ky. Dec.

11   13, 2010).  Accordingly, there is no evidence before the Court to support the notion that the present

12   appeal was filed for purposes of harassment or in bad faith.  Therefore, this matter is best left to the

13   discretion of the Ninth Circuit.  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 U.S. Dist.

14   LEXIS 27242, at *7 (E.D. N.Y. Mar. 22, 2010) ("it is for the court of appeals and not the district

15   court to decide whether Rule 38 costs and damages should be allowed in any given case").

16        Additionally, granting an excessive appeal bond on the supposition that an appeal is frivolous

17   would create precisely the sort of multiple levels of review of an appeal that the Supreme Court

18   rejected in *Devlin v. Scardelletti*, 536 U.S. 1 (2002).  *Devlin* established the right of class action

19   objectors to appeal without first seeking intervention.  In doing so, the Court expressly rejected the

20   formality which had been adopted by several circuits "to require class members to intervene for

21   purposes of appeal." *Devlin*, 536 U.S. at 11.  The court found no purpose to the formal barrier to

22   appeal given "the ease with which nonnamed class members who have objected at the fairness

23   hearing could intervene for purposes of appeal." *Id*. at 12.

24        The Supreme Court found the formal intervention rule impractical due to the numerous issues

25   "which should be easily addressable by a court of appeals." *Id*. at 13.  The requirement to intervene

26   required district courts to consider issues normally considered by the appellate court such as

27   "standing to appeal, waiver of objections below, and consolidation of appeals." *Id*. at 14. Should

28   parties be dissatisfied with a district court's decision on intervention, "such determinations still

1  would most likely lead to an appeal." *Id*.  Appellate courts would then consider the same issues

2  analyzed by the district court.  Thus, the formal intervention rule "would only add an additional layer

3  of complexity before the appeal of the settlement approval may finally be heard." *Id*.

4         Similarly, punitive appellate bonds imposed to block supposedly vexatious appeals require

5  district courts to consider issues (such as the frivolousness of an appeal) best suited to appellate

6  courts.  Should appellant-objectors be dissatisfied with their appeal bond, they can simply appeal the

7  bond determination itself, adding another layer of complexity, which the *Devlin* court repudiated.

8  Such tactics were employed in cases that the plaintiffs cite favorably.[1]

9                  **C.      The Amount of the Bond Requested Is Exorbitant.**

10        Based on the plain language of Rule 7, neither party disputes that this Court may set the bond

11  at the "amount necessary to ensure payment of costs on appeal," Fed. R. App. P. 7.  These costs

12  clearly include the costs taxable under Federal Rule of Appellate Procedure 39(e) for "(1) the

13  preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the

14  appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal;

15  and (4) the fee for filing the notice of appeal."  Fed. R. App. P. 39(e).  *See Azizian*, 499 F.3d 950,

16  955-59.

17        However, although Fed. R. App. P. 7 allows the district court to require an appellant to post

18  a bond to cover "costs," the rule fails to define "costs."  Two divergent lines of cases appear to have

19  arisen.  The first holds that costs under Rule 7 include only those that may be taxed against an

20

21

---

22        [1]Consider the $500,000 bond ordered from objectors in *In re Wal-Mart*
*Wage & Hour Empl. Practices Litig.*, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010).

23  Instead of discouraging meritless appeals, the bond forced the Objectors to litigate the issue
before the Ninth Circuit in a separate appeal.  The district court's order to require bond was

24  eventually stayed pending resolution of the appeal.  *See In re Wal-Mart Wage & Hour Empl.*
*Practices Litig.*, 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010) (citing *Vaughn v. Am. Honda*

25  *Motor Co.*, 507 F.3d 295 (5th Cir. 2007)).  The appeals on the merits were eventually summarily

26  dismissed by the Ninth Circuit.  *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 09-17648,
Dkt. No. 47 (9th Cir. Aug. 10, 2010).  And so, by requiring a bond, the district court actually

27  multiplied the number of appeals taken, when the issue could have been resolved by appellate
motion practice.  *Devlin* warns against such unnecessary complexity.

28

unsuccessful litigant under Fed. R. App. P. 39(e)[2] or 28 U.S.C. §1920,[3] and therefore, include neither "delay damages" nor attorney's fees.  The second line of cases, on the other hand, hold that Fed. R. App. P. 39 does not define "costs" at all; rather, it merely lists which costs can be "taxed" by the district court.  Nor, this line of cases holds, does 28 U.S.C. §1920 purport to define "costs;" rather, it lists those costs that a court may properly "tax" for its own benefit.  Thus, according to these courts, "costs" under Rule 7 may include "costs" as defined by a relevant underlying substantive statute, and are not limited to the "costs" enumerated in Rule 39.  There is no such underlying substantive statute in this case.  Thus, under either line of cases, there is no legal basis in this case to include an amount more than $175 necessary to secure actual costs on appeal, as described below, in the bond amount.

Plaintiffs seek a bond for costs beyond those taxable under Federal Rule of Appellate Procedure 39(e) – the administrative costs of delaying settlement.  Under *Azizian*, it is clear that this Court may include such expenses in the appeal bond if an applicable rule or statute defines them as "costs."  *Id*.  By contrast, if such delay expenses are more properly deemed "damages" of delay, the

---

[2]Under Rule 39, the following costs on appeal are taxable in the district court:

(1) the preparation and transmission of the record;
(2) the reporter's transcript, if needed to determine the appeal;
(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
(4) the fee for filing the notice of appeal.

[3]Under 28 U.S.C. §1920, taxable costs are:

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title; and
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation on services under section 1928 of this title.

Court may not include them in the appeal bond. *See Fleury*, 2008 U.S. Dist. LEXIS 88166, 2008 WL 4680033 at *8 (finding that "delay damages" may not be included as "costs" for the purposes of Rule 7, especially because such damages may fall within the purview of 28 U.S.C. § 1912 (allowing prevailing party to recover just damages for delay following affirmance on appeal)). *Cf. In re IPO Sec. Litig.*, 721 F.Supp.2d 210 (2010) (excluding delay expenses from the amount of an appeal bond, absent authorization by an applicable fee-shifting statute). *Fleury* explicitly distinguished cases to the contrary that preceded the Ninth Circuit's decision in *Azizian*. 2008 U.S. Dist. LEXIS 88166, 2008 WL 4680033 at *8.[4]

*Cost on appeal should be limited to $175.* Plaintiffs have the "burden of justifying the amount of [their] request or providing a reasonable estimate of the actual costs [they] may incur on appeal." *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 2008 U.S. Dist. LEXIS 45726, at *2 (E.D. Mich. June 12, 2008) (citing *Lundy v. Union Carbide Corp.*, 598 F. Supp. 451, 452 (D. Or. 1984). They have suggested that $175 will cover the printing and administrative expenses related to filing briefs in the Ninth Circuit. The Tennessee Objectors submit that this amount is reasonable.

**D.    Public Policy Reasons Exist to Minimize the Hurdles to a Litigant's Right to Appeal Imposed by an Appeal Bond.**

While Rule 7 leaves the question of whether a bond should be imposed, and if so, the amount of the bond, to the sound discretion of the district court, *Page v. A. H. Robins Company*, 85 F.R.D. 139, 140 (E.D. Va. 1980), the Court should be mindful of the ramifications of an excessive bond:

> These decisions are not without consequence. Requiring too large a
> bond may have the undesirable effect of discouraging meritorious

---

[4]Plaintiffs note that some courts have recognized administrative expense of delay as "costs" for the purpose of Rule 7, even without identifying an authorizing fee-shifting statute. For instance, they cite *Miletak v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 125426, 2012 WL 3686785, at *1 (N.D. Ca. Aug. 27, 2012), where the court distinguished between "delay damages" (caused by the delay in recovering the award) and the "administrative costs" of responding to class members' needs pending the appeal, and included the latter in assessing the amount of an appeal bond. However, this opinion did not identify any fee-shifting statute authorizing administrative expenses as "costs," yet interpreted such expenses as falling within the meaning of "costs" in Rule 7.

-9-

> appeals.   Requiring too small a bond, or no bond at all, may
> encourage frivolous, time-consuming, harassing appeals.

*Id. And see Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) (stating that "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated").  After all, while the purpose of an appellate cost bond is "to protect the rights of appellees . . . ." *Pedraza*, 313 F.3d at 1333, a Rule 7 bond is not designed "to impose an independent penalty on the appellant." *Capizzi v. States Res. Corp.*, 2005 U.S. Dist. LEXIS 7338, at *4 (D. Mass. Apr. 26, 2005); *Azizian,* 499 F.3d at 960 (Rule 7 is not intended to provide a penalty to address the frivolity of an appeal).

In conclusion, it is axiomatic that a district court may not impose a bond in an amount beyond what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal.  *Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972) (holding statute conditioning appeal on posting of double bond unconstitutional under Fourteenth Amendment equal protection clause).

For all of this, requiring a large Rule 7 bond is more likely to "chill an appeal" than a bond covering the other smaller, and more predictable, costs on appeal.  *Id*. at 960.

### E.   The Tennessee Objectors Adopt and Incorporate By Reference Any Responses and Oppositions to the Motion for Appeal Bonds Made By Other Objectors.

At least two responses to Plaintiffs' bond motion have been filed by other Objectors.  The Tennessee Objectors adopt and incorporate those responses in opposition to the bond motion and also adopt and incorporate any responses in opposition to the bond motion which are timely and otherwise properly submitted to the Court.

## III.  CONCLUSION

In conclusion, the appeal bond requested by Plaintiffs is plainly excessive.   For all of the foregoing reasons, the Court should limit any appeal bond to $175.

Respectfully submitted, this 14th day of June, 2013.

/s/ Christopher T. Cain
Christopher T. Cain (TN BPR# 19997)
**SCOTT & CAIN**
Bank of America Center, Suite 601
550 Main Street
Knoxville, Tennessee 37902
Tel: 865-525-2131

## CERTIFICATE OF SERVICE

-10-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I certify that on June 14, 2013, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to counsel of record.

/s/ Christopher T. Cain
Christopher T. Cain