1  Mark Eisen (SBN – 289009)
   meisen@edelson.com
2  EDELSON PC
   555 West Fifth Street, 31st Floor
3  Los Angeles, California 90013
   Tel: 213.533.4100
4  Fax: 213.947.4251

5  Jay Edelson (Admitted *Pro Hac Vice*)
   jedelson@edelson.com
6  Rafey S. Balabanian (Admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
7  Ari J. Scharg (Admitted *Pro Hac Vice*)
   ascharg@edelson.com
8  Chandler R. Givens (Admitted *Pro Hac Vice*)
   cgivens@edelson.com
9  J. Dominick Larry (Admitted *Pro Hac Vice*)
   nlarry@edelson.com
10 EDELSON PC
   350 North LaSalle Street, Suite 1300
11 Chicago, Illinois 60654
   Tel: 312.589.6370
12 Fax: 312.589.6378

13 *Attorneys for Plaintiffs JEFF MILANS and PETER
   COMSTOCK and the SETTLEMENT CLASS*
14

15            **UNITED STATES DISTRICT COURT**

16          **NORTHERN DISTRICT OF CALIFORNIA**

17                **SAN JOSE DIVISION**

18
                                    | Case No. 5:11-cv-00379-EJD
19
                                    | [Hon. Edward J. Davila]
20
                                    | **PLAINTIFFS' REPLY MEMORANDUM
21                                  | IN SUPPORT OF MOTION FOR
                                    | CONTEMPT AGAINST OBJECTORS
22                                  | GARY WILENS, MATTHEW TANNER,
                                    | ANDREW CESARE, KATHERINE
23 *IN RE: NETFLIX PRIVACY LITIGATION* | STROHLEIN, WILLIAM FORD, DENIS
                                    | BONO, JUDITH MALLORY, AND
24                                  | TRACEY COX KLINGE**

25                                  | Date:      May 23, 2014
                                    | Time:      9:00 a.m.
26                                  | Location: Courtroom 4, 5th Floor

27

28

Plaintiffs filed the motion for contempt currently under consideration ("Motion") because Objectors willfully failed to comply with this Court's Appeal Bond Order ("Order") requiring them each to either post a bond to secure the costs Plaintiffs and the Class will incur during the pendency of their appeals, or dismiss their appeals.[1] In response to the Motion, none of the Objectors deny that they engaged in contempt of this Court, *i.e.*, failed to comply with the Appeal Bond Order. Indeed, six of the eight Objectors (Cesare, Strohlein, Ford, Bono, Mallory, and Cox Klinge) failed to respond at all, and the Court should not hesitate to find them in contempt.[2] The other two Objectors, Gary Wilens and Matthew Tanner, collectively make three arguments to

---

[1]    As in Plaintiffs' motion for contempt, "Plaintiffs" refers to Plaintiffs Jeff Milans, Peter Comstock, and the Settlement Class; "Objectors" refers to Objectors Gary Wilens, Matthew Tanner, Andrew Cesare, Katherine Strohlein, William Ford, Denis Bono, Judith Mallory, and Tracey Cox Klinge; and "Appeal Bond Order" or "Order" refer to this Court's November 25, 2013 Order stating that "On or before December 20, 2013, each Objector shall either post a $21,519 bond or file a notice of dismissal of his or her appeal." (Dkt. 307.) It should also be noted that, in the copy of Plaintiffs' Motion filed with the Court, an explanatory footnote was inadvertently truncated. (Dkt. 322 at 1 n.1.) That footnote explained that while Bradley Schulz, Stephen C. Griffis, and Hugh Ramsey, like the Objectors, appealed this Court's final approval of the class action settlement, they were not included in the contempt motion because, unlike the Objectors, they each complied with the Appeal Bond Order: Mr. Schulz posted an appeal bond on December 16, 2013 (Dkts. 310, 310-1), and the Griffis and Ramsey appeals were dismissed on December 20, 2013. (Dkt. 313.)

[2]    While Objectors Bono and Mallory ultimately filed a response to the contempt motion (Dkt. 330), it was three days late, filed by Tennessee counsel not admitted *pro hac vice*, and consisted of just a single sentence adopting and incorporating the responses of the other Objectors. A likely reason for this belated filing came out during the deposition of Objectors Bono and Mallory that both occurred the day this Reply was filed, the substance of which will be the subject of a further filing when the Court-ordered discovery has been completed. These depositions confirmed that Bono and Mallory are merely puppets for their professional objector counsel. Mr. Bono, whose last name is properly spelled Bonneau, testified, *inter alia*, that he was unaware this Court had issued the Appeal Bond Order, was similarly unaware of any other occurrences in this case, that he only saw his objection after it was filed (wherein he noted the misspelling of his name, which has yet to be corrected), that he did not know of, have a retainer agreement with, or ever speak with his counsel on appeal Joseph Darrell Palmer, and was unaware that Mr. Palmer had appealed the bond issue purportedly on his behalf. Ms. Mallory's testimony was in accord: she too had been unaware before the deposition that this Court had issued the Appeal Bond Order, did not know of, speak to, or have an agreement with Mr. Palmer or her Tennessee counsel—whom she "trusted" would give her a fair share of whatever fees they can extract—was unaware of the appellate proceedings, and was unaware the Appeal Bond Order had also been appealed. As such, it is confusing why their counsel have joined the arguments presented by the other Objectors as to why they should not be held in contempt.

1   avoid contempt despite their admitted failure to comply with this Court's Order. First, Tanner

2   argues that this Court lacks jurisdiction to hold him in contempt for violating the Appeal Bond

3   Order because that Order has been appealed, and both Objectors assert that Plaintiffs should

4   instead have sought relief in the appellate court. Second, Tanner asserts that the Court's Appeal

5   Bond Order was wrong so he need not comply because this Court will be reversed. Third,

6   Objector Wilens belatedly asserts that he cannot afford to pay an appeal bond. As discussed

7   below, however, each of these arguments is without merit, is irrelevant to the contempt motion,

8   and does not excuse Objectors' undisputed willful failure to comply with this Court's Order.

9   **I.      THIS COURT HAS JURISDICTION TO HOLD OBJECTORS IN CONTEMPT AND PLAINTIFFS PROPERLY SOUGHT RELIEF HERE.**

10          As noted in the Motion, this Court has the inherent authority to enforce compliance with its

11   orders through civil contempt proceedings. (Mot. at 3.) As a result, this Court has jurisdiction to

12   do so. *See Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1393 (9th Cir. 1991) ("The

13   district court had jurisdiction over this case … because district courts have power to enforce their

14   own orders and to adjudge anyone in civil contempt who willfully violates such orders."). Further,

15   contrary to Objector Tanner's assertion, the fact that the Appeal Bond Order has been appealed in

16   no way divests this Court of its jurisdiction to enforce compliance with that Order through

17   contempt proceedings. While Objector Tanner correctly notes that "[t]he filing of a notice of

18   appeal generally divests the district court of jurisdiction over those matters appealed," (Tanner

19   Resp. at 1), his argument misses the point. Whether he or any of the other Objectors is in contempt

20   for violating the order on appeal is not one of the matters he appealed. *See Union Oil Co. of Cal. v.*

21   *Leavell*, 220 F.3d 562, 566 (7th Cir. 2000) ("A notice of appeal divests the district court of its

22   control over those aspects of the case *involved in the appeal,* but whether the addressee of an

23   injunction has complied is not a subject involved in the appeal.") (emphasis in original, internal

24   quotations omitted).

25          To the contrary, it is firmly established that district courts retain their jurisdiction to

26   enforce their orders—including through contempt proceedings—even if those orders have been

27   appealed. As the Ninth Circuit has stated, "[a] District Court [has] the power to enforce its

28

unstayed orders while they [are] on appeal." *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976).[3] This is the universal view of courts and commentators. *See Acevedo-Garcia v. Vera-Monroig*, 368 F.3d 49, 58 (1st Cir. 2004) ("If a party violates an unstayed execution order, the fact that the underlying judgment is on appeal does not deprive the district court of its normal contempt powers."); *Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir. 1979) ("Since [appellant] failed to ask the district court for a stay pending appeal … the district court retained power to enforce its order by civil contempt proceedings."); *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 440 (6th Cir. 1985) ("Where, as here, the district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes."); *Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 638 (7th Cir. 2006) ("[O]ne exception to the rule against simultaneous exercise of jurisdiction [by district and appellate courts] is that the district court may enforce its judgment while an appeal to test that judgment's validity proceeds."); *In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d 372, 375-76 (8th Cir. 1996) ("[N]otwithstanding an appeal, the district court retains jurisdiction to the extent necessary to enforce its judgment which has not been stayed."); 16A Charles Alan Wright, et al. Federal Practice & Procedure § 3949.1 (4th ed.) ("Unless the judgment is stayed, the district court may act to enforce it despite the pendency of an appeal."). Indeed, this Court has itself already recognized this principle once before in this very case, holding that it has jurisdiction to "preserve the integrity" of an order even where an appeal has been filed. (Dkt. 307 at 7.)

The cases cited by Objector Tanner (Tanner Resp. at 2) are not to the contrary. As noted above, where an order is on appeal, the district court is divested of jurisdiction "*over those aspects of the case involved in the appeal.*" *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (emphasis added). Here, even though the Appeal Bond Order is on appeal, this motion for contempt does not involve the merits of that Order, only Objectors' compliance with it. Objectors' compliance with the Order (or lack thereof) is not "an aspect of the case involved in the appeal,"

---

[3]   As noted in the Motion, none of the Objectors sought—let alone received—a stay of the Appeal Bond Order from either this Court or the Ninth Circuit. (Mot. at 2.)

1    and this Court thus retains jurisdiction over it. In contrast, the cases cited by Tanner each involved

2    a district court attempting to rule on an aspect of the case that *was* part of the appeal. In each of

3    those cases, the orders on appeal were themselves contempt orders. Consequently, in *Donovan v.*

4    *Mazzola*, 761 F.2d 1411 (9th Cir. 1985) and *Shuffler v. Heritage Bank* 720 F.2d 1141 (9th Cir.

5    1983), the Ninth Circuit held that the district courts lacked jurisdiction to quantify sanctions for

6    those contempt findings while the contempt orders were on appeal. In *In re Thorp*, 655 F.2d 997

7    (9th Cir. 1981), an attorney was held in contempt for refusing to answer a question. While that

8    contempt order was on appeal, the district court again held him in contempt for refusing to answer

9    the same question. *Id.* at 998. The appellate court there held that, because the issue of whether the

10   attorney was privileged not to answer the question was on appeal, the district court lacked

11   jurisdiction to find him in contempt the second time. *Id*. at 998-99. Here, unlike *Donovan*,

12   *Shuffler*, and *Thorp*, the issue involved in the contempt proceeding (*i.e.*, did Objectors fail to

13   comply with the Appeal Bond Order and what should be done about it) is not a question involved

14   in the appeal (*i.e.*, was the Appeal Bond Order proper). *See infra* Part II.

15           Having missed this point entirely, Tanner and Wilens both argue that, instead of seeking an

16   order of contempt before this Court, the proper recourse for Objectors' failure to comply with the

17   Appeal Bond Order—which, again, they do not dispute—was for Plaintiffs to file a motion in the

18   Ninth Circuit to dismiss the appeal. (Tanner Resp. at 3; Wilens Resp. at 3.) Objectors are

19   mistaken. This Court—not the appellate court—entered the Appeal Bond Order for Plaintiffs'

20   protection. Consequently, in response to Objectors' willful failure to comply with the Appeal

21   Bond Order, Plaintiffs asked this Court—not the appellate court—to use its contempt power to

22   coerce compliance with the Order. The proper recourse for a party's failure to comply with a court

23   order is to move for contempt before the court that issued that order, not some other court. *See* 18

24   U.S.C. § 401 ("A court of the United States shall have power to punish … contempt of *its*

25   authority, *and none other*….") (emphasis added).[4] That is exactly what Plaintiffs did here.

26           Further, Objectors' assertion that relief should have been sought in the appellate court

27   _____

     [4]    This statute applies to both civil and criminal contempt. *U.S. v. Powers*, 629 F.2d 619, 624

28   (9th Cir. 1980).

1    rather than here displays Objectors' profound misunderstanding of federal jurisdiction, as well as

2    the mistaken notion that Plaintiffs are asking this Court to dismiss the appeals. While the Motion

3    requested that this Court either fine Objectors until they comply with the Appeal Bond Order or

4    strike Objectors' objections—a remedy other courts in this district have used (*see* Mot. at 5)—

5    Plaintiffs did not (nor could they) ask this Court to dismiss the appeals. Consequently, Objectors

6    Wilens's and Tanner's assertions that the appeals should not be dismissed, and their reliance on

7    *Azizian v. Federated Department Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007) for support, are

8    misplaced. Quite simply, their "district-courts-can't-dismiss-appeals" argument is fighting a straw

9    man of their own creation, not responding to anything requested or argued by Plaintiffs.

10        In short, contrary to Objectors' assertion, this Court has jurisdiction to enforce the Appeal

11   Bond Order through contempt proceedings notwithstanding the fact that the Order has been

12   appealed, and Plaintiffs properly sought relief from this Court for Objectors' undisputed failure to

13   comply with it. This Court therefore should not hesitate to exercise its authority and hold

14   Objectors accountable for their willful violation of its Order.

15   **II.    THE MERITS OF THE APPEAL BOND ORDER ARE IRRELEVANT TO
     OBJECTORS' DUTY TO COMPLY WITH IT.**

16

17        In addition, Tanner seeks to avoid a finding of contempt by arguing that this Court was

18   wrong to enter the Appeal Bond Order and that he need not comply with the Court's directive

19   because of his subjective belief that he will prevail in the Ninth Circuit. (Tanner Resp. at 3.) This

20   argument too is misplaced. The merits of the Appeal Bond Order appeal are no longer before this

21   Court and have *nothing* to do with whether Objectors are in contempt of this Court for their

22   undisputed failure to comply with the Appeal Bond Order.[5] While Objectors may believe that the

23   Court's Appeal Bond Order is incorrect, they cannot simply ignore it. That is not how our Court

24   system works. As explained in Plaintiffs' contempt Motion, the law is clear: absent a stay of the

25   Appeal Bond Order—which Objectors neither sought nor obtained—they must obey it unless and

26   until it is reversed. (*See* Mot. at 4) (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir.

27        [5]    Indeed, if there is one issue over which this Court *was* divested of jurisdiction by
28   Objectors' appeal of the Appeal Bond Order, it is the question of whether the Appeal Bond Order
     was appropriate.

1983); *United States v. UMWA*, 330 U.S. 258, 293 (1947); *Maness v. Meyers*, 419 U.S. 449, 458

(1975)). The merits of the Appeal Bond Order, and whether or not the Ninth Circuit may

ultimately reverse it, are simply irrelevant to Objectors' duty to comply with it. As the Supreme

Court has stated, "Persons who make private determinations of the law and refuse to obey an order

generally risk … contempt even if the order is ultimately ruled incorrect." *Maness*, 419 U.S. at

458. Hence, appealing the Appeal Bond Order does not absolve Objectors from complying with it.

*Id*. ("If a person to whom a court directs an order believes that order is incorrect the remedy is to

appeal, but, absent a stay, he must comply promptly with the order pending appeal."). Even if the

Appeal Bond Order were incorrect—which it is not—Objectors can't expect not to be held in

contempt when they violate it. Tanner's argument regarding the merits of Objectors' appeal of the

Appeal Bond Order misses the mark and has absolutely no relevance to the question at issue here.

### III.   MR. WILENS'S ABILITY TO PAY THE APPEAL BOND IS IRRELEVANT TO HIS ABILITY TO COMPLY WITH THE APPEAL BOND ORDER.

Finally, Objector Wilens asserts that he is unable to pay the $21,519 appeal bond.[6] Like

Tanner's argument about the merits of the Appeal Bond Order appeal, however, Wilens's ability

to pay the appeal bond is irrelevant to the contempt proceedings here.

First, Wilens failed to provide any evidence of his inability to pay a bond when this Court

---

[6]   Objector Wilens also accuses Plaintiffs of filing the contempt Motion solely to harass the Objectors, (Wilens Resp. at 1), and asserts that Plaintiffs are not prejudiced by the Objectors' failure to post the bond (*Id*. at 5.) Plaintiffs are not trying to harass the Objectors, but are instead trying to prevent harm resulting from the Objectors' willful failure to comply with the Appeal Bond Order. The Appeal Bond Order was expressly entered to protect Plaintiffs from the real risk of nonpayment of costs to which they will be entitled in the likely event that Objectors' appeal is unsuccessful, and Plaintiffs are thus seeking to enforce that Order for their own protection. In any case, Wilens's charge of harassment is particularly ironic in light of a recent, and grossly improper, offer his counsel made to drop his objection in exchange for $50,000. (*See* Declaration of J. Dominick Larry, ¶ 4 submitted concurrently with this Reply.) This "offer" reveals Wilens's (or at least his counsel's, who is his brother) true motive for objecting to the settlement: to extort money from Class Counsel and defendant Netflix and not for the purpose of creating a better settlement for the Class. *See, generally, Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) (noting that objecting "not to increase the value of the settlement, but in order to get paid to go away" is improper extortion); *Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 4903680, at *4 (S.D. Cal. Oct. 15, 2012) (describing objector's counsel's attempt to extract $30,000 from class counsel in exchange for not pursuing objections as "bold and improper").

1   was actually deciding whether to order an appeal bond. (Dkt. 307) ("[W]hile Objectors contend

2   that the appeal bond would be burdensome, they do not provide any evidence indicating a

3   financial inability to pay.") Nor did he move for a stay of the Appeal Bond Order pending appeal

4   of that Order on the grounds that he was unable to pay the bond.[7] This Court having entered an

5   order, and Wilens not having sought or received a stay of that order, Wilens was bound to obey it.

6   He cannot now, in response to a motion to compel, argue that he is unable to pay it. That ship has

7   sailed.[8] The issue here is not whether Wilens can pay the appeal bond, but only whether Wilens

8   and the other Objectors complied with the Appeal Bond Order. *See Donovan*, 716 F.2d at 1240

9   ("The sole question [on a contempt motion] is whether a party complied with the district court's

10  order."). As noted above, it is undisputed that the Objectors did not.

11        Further, even if it is true that Wilens is unable to post an appeal bond of $21,519, he is not

12  unable to comply with the Appeal Bond Order. The Appeal Bond Order expressly offers each

13  Objector a choice: pay the appeal bond *or file a notice of dismissal of his or her appeal*. Parties

14  asserting that they cannot comply with a district court order have the burden of demonstrating

15  categorically and in detail why they cannot comply, *Donovan*, 716 F.2d at 1240, and thus, even if

16  Wilens had made such a showing with respect to his ability to pay the appeal bond, he did not (nor

17  could he) show that he is unable to file a notice of dismissal of his appeal. Having willfully

18  refused to comply with this Court's Order—despite his ability to do so—he (along with the other

19  _____

20        [7]   Wilens asserts that moving for a stay would have been futile (Wilens Resp. at 5), but cites
     absolutely no authority to support the incredible proposition that failure to comply with an order of
21   a district court is excused if it would be futile even to ask either the district or appellate court to
     stay the order pending appeal. To the contrary, the fact that no court would stay the Appeal Bond
22   Order pending its appeal only further undermines Wilens's position that he (or any other Objector)
     was free to ignore it.
23

24        [8]   Wilens's attorney—his brother, Jeffrey Wilens—should have known that his client needed
     to present evidence of his inability to pay at the time this Court was deciding whether to order an
25   appeal bond since he has made this exact mistake before. In 2012, Jeffrey Wilens represented his
     mother, Phyllis Wilens, in her objection to a class action settlement. *See Miletak v. Allstate Ins.*
26   *Co.*, No. 06-cv-03778, 2012 WL 3686785, at *1, *2 n.9 (N.D. Cal. Aug. 27, 2012). In that case,
     Judge Ware ordered an appeal bond, specifically noting that "Objector Wilens has presented no
27   evidence that she would be unable to pay an appeal bond." *Id.* at *2. Jeffrey Wilens has confirmed
     that his mother's appeal of the denial of her objection was subsequently voluntarily dismissed in
28   exchange for a monetary payment.

1 Objectors) should be held in contempt.

2 **IV.   CONCLUSION.**

3     For the reasons discussed in the Motion and above, Plaintiffs respectfully request that this

4 Court find the Objectors in contempt for their undisputed failure to comply with the Appeal Bond

5 Order. Because Objectors Cesare, Strohlein, Ford, Bono, Mallory, and Cox Klinge have not even

6 opposed Plaintiffs' Motion and Objectors Tanner's and Wilens's excuses for non-compliance are

7 without merit, Plaintiffs request that the Court strike each Objector's objections or, alternatively,

8 impose a coercive daily fine on each Objector until they comply with the Order, and award such

9 other and further relief as this Court deems equitable and just.

10 Dated: February 3, 2014                        Respectfully Submitted,

11                                                **JEFF MILANS and PETER COMSTOCK**,
12                                                individually and on behalf a class of similarly
                                                 situated individuals,
13
14                                                By:  /s/  *J. Dominick Larry*
                                                      One of Plaintiffs' Attorneys
15
16 Mark Eisen (SBN – 289009)
   meisen@edelson.com
17 EDELSON PC
   555 West Fifth Street, 31st Floor
18 Los Angeles, California 90013
   Tel: 213.533.4100
19 Fax: 213.947.4251

20 Jay Edelson (Admitted *Pro Hac Vice*)
   jedelson@edelson.com
21 Rafey S. Balabanian (Admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
22 Ari J. Scharg (Admitted *Pro Hac Vice*)
   ascharg@edelson.com
23 Chandler R. Givens (Admitted *Pro Hac Vice*)
   cgivens@edelson.com
24 J. Dominick Larry (Admitted *Pro Hac Vice*)
   nlarry@edelson.com
25 EDELSON PC
   350 North LaSalle Street, Suite 1300
26 Chicago, Illinois 60654
   Tel: 312.589.6370
27 Fax: 312.589.6378

28 *Attorneys for Plaintiffs JEFF MILANS and PETER*
   *COMSTOCK and the SETTLEMENT CLASS*

1

2

## CERTIFICATE OF SERVICE

3
     The undersigned certifies that, on February 3, 2014, I caused this document to be
electronically filed with the Clerk of the Court using the CM/ECF system, thus effectuating
4 service of such filing on all ECF registered attorneys in this case. I further certify that I caused the
foregoing document to be sent by USPS first class mail to the following participants, postage
5 prepaid, at the address listed below:

6

Thomas L. Cox, Jr.
7 4934 Tremont
Dallas, Texas 75214
8

9
*Attorney for Objector-Appellant Tracey Cox Klinge*
10

11 Dated: February 3, 2014               */s/  J. Dominick Larry*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28